IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

LEROME HILSON,

                          Plaintiff,

        v.

S. BEAURY, *et al.,*

                          Defendants.

_____

Civil Action No.
9:13-CV-0606 (LEK/DEP)

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

LEROME HILSON, *Pro Se*
05-A-1881
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN          ADRIENNE J. KERWIN, ESQ.
New York State Attorney General    Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Lerome Hilson, a New York State prison inmate, has commenced this action pursuant to 42 U.S.C. § 1983 against three employees stationed at the correctional facility in which he was confined at the relevant times alleging they violated his civil rights. In his complaint, Hilson contends that he was retaliated against for filing a grievance against a corrections officer who is not a defendant in this action, and was deprived of his First Amendment right to freely exercise his chosen religion when one of the defendants delayed in processing his request to change religions, and another defendant refused to permit him to attend religious education classes.

In response to plaintiff's complaint, defendants have filed a motion seeking dismissal of certain claims for failure to state a cause of action upon which relief may be granted. For the reasons set forth below, I recommend that the motion be granted, in part, but otherwise denied.

I.    BACKGROUND[1]

Plaintiff is a prison inmate being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and is currently confined at the Great Meadow Correctional Facility ("Great Meadow"), located in Comstock, New York, where the incidents forming the basis for his claims allegedly occurred. *See generally* Dkt. No. 1. Plaintiff's complaint asserts separate causes of action against Corrections Officers Beaury, Payne, and Ely, all of whom were stationed at Great Meadow at the relevant times, arising from three independent incidents.

A.    Retaliation by Defendant Beaury

On March 25, 2012, while being escorted within Great Meadow, plaintiff became involved in a dispute with Corrections Officers Collins and Robinson, neither of whom is a named-defendant in the action. Dkt. No. 1 at 3. Although the details of the dispute are not relevant to this action, the disagreement, in general, stemmed from plaintiff's belief that Corrections

---

[1]    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964). Portions of the background have also been derived from the exhibits attached to plaintiff's complaint, which may also properly be considered in connection with a dismissal motion. See *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-8 (2d Cir. 1991) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."); *accord, Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

Officer Collins harassed him without provocation, and Corrections Officer Robinson conducted an inappropriate pat-search of him. *Id.* On March 27, 2012, plaintiff submitted a grievance complaining of those corrections officers' actions. *Id.*; Dkt. No. 1-1 at 1-4.

According to plaintiff, his grievance against Corrections Officers Collins and Robinson triggered retaliatory actions taken by defendant Beaury against him. Specifically, on June 19, 2012, while plaintiff was performing his assigned duties preparing breakfast trays for inmates at the facility, defendant Beaury requested cereal from plaintiff for his personal consumption. Dkt. No. 1 at 3-4. Plaintiff informed defendant Beaury that all of the cereal available on the trays was reserved for inmates. *Id.* at 4. Defendant Beaury responded by yelling at plaintiff, using expletives, and adding, "'Now write a Grievance on that.'" *Id.* Plaintiff alleges that, prior to this incident, defendant Beaury had harassed him with threats to retaliate against him for filing a grievance against Corrections Officers Collins and Robinson. *Id.*

As a result of that incident, defendant Beaury issued plaintiff a misbehavior report charging him with violating four prison rules. Dkt. No. 1 at 4. According to plaintiff, the misbehavior report was based on false allegations and issued in further retaliation of plaintiff's grievance against

Corrections Officers Collins and Robinson. *Id.* at 3-4. As a result of the misbehavior report, plaintiff received thirty days of disciplinary keeplock confinement, and lost his prison job.[2] *Id.* at 4. Plaintiff maintains that, while he was confined in keeplock, defendant Beaury disconnected the electrical power in his cell and prevented him from eating for four days. *Id.*

B.    Converting to Islam

In late June 2012, plaintiff submitted a formal request to defendant Payne, the Protestant Chaplain at Great Meadow, to change his religion from Protestant to Islam.[3] Dkt. No. 1 at 6. On August 2, 2012, defendant Payne wrote plaintiff a memorandum acknowledging his request to change his religion from Protestant to Islam, and attaching a form to be signed with an instruction to return it for processing to effectuate the change. Dkt. No.

---

[2]    "Keeplock" is a form of confinement through which an "inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates.*" Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989); *accord*, *Warburton v. Goord*, 14 F. Supp. 2d 289, 293 (W.D.N.Y. 1998); *Tinsley v. Greene,* No. 95-CV-1765, 1997 WL 160124, at *2 n.2 (N.D.N.Y. Mar. 31, 1997) (Pooler, J., *adopting report and recommendation by* Homer, M.J.) (citing *Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir. 1995)). "The most significant difference between keeplock and general population inmates is that the former do not leave their cells for out-of-cell programs unless they are a part of mandatory educational programs and general population inmates spend more time out of their cells on weekends." *Lee v. Coughlin*, 26 F. Supp. 2d 615, 628 (S.D.N.Y. 1998).

[3]    The record does not include a copy of the change of designation form used by plaintiff in June to request the change. Attached to plaintiff's complaint, however, are two identical affidavits from Damon Vincent, an inmate working as a Chaplain Clerk at Great Meadow. Dkt. No. 1-1 at 70-73. In those affidavits, one of which is typed and the other handwritten, inmate Vincent states that he recalls plaintiff submitting two change of religion forms during the months of July and August 2012. Dkt. No. 1-1 at 70, 73.

1-1 at 75. Plaintiff submitted the completed form, entitled "CHANGE OF RELIGIOUS DESIGNATION FORM," to defendant Payne on August 9, 2012. Dkt. No. 1-1 at 76. On August 14, 2012, defendant Payne also signed the form, and six days later the Chaplain of Islam at Great Meadow completed the form. *Id.*

Plaintiff alleges that, because he submitted his request to change religions in late June 2012, but did not receive a response from defendant Payne until August 14, 2012, he was precluded from participating in Islamic religious practices, including fasting during Ramadan and attending seven Juma prayer services. Dkt. No. 1 at 6. In support of their motion to dismiss, defendants have submitted a copy of DOCCS Directive 4202, which governs changes in inmate religious designations. Dkt. No. 15-1 at 14. According to that document, which is dated January 18, 2008, inmates could expect a request to change religions to be processed within thirty days.[4] *Id.* at 14.

---

[4]    According to publicly available sources, the version of DOCCS Directive 4202 submitted by defendants in support of their motion was superseded by a revised version dated July 24, 2012. State of New York Department of Corrections and Community Supervision DIRECTIVE, "Religious Programs and Practices," available at http://www.doccs.ny.gov/directives/4202.pdf (last visited July 31, 2014). According to the revised version of the directive, DOCCS inmates can now expect the change in religious designation to "be accomplished within 14 business days." *Id.*

### C. Missed Call-Outs

The third set of circumstances giving rise to this action centers upon defendant Ely's failure to provide plaintiff with call-outs for religious education classes on "numerous" occasions, including, specifically, on October 13, 2012 and November 3, 2012. [Dkt. No. 1 at 8](#). On those dates, defendant Ely was a block officer at Great Meadow whose duties included providing inmates with call-outs. *Id.* Plaintiff's grievance complaining of missing the call-outs on October 13, 2012, and November 3, 2012, was ultimately determined in his favor by the superintendent at Great Meadow on December 18, 2012. [Dkt. No. 1-1 at 84-87](#).

## II. PROCEDURAL HISTORY

Plaintiff commenced this action on May 28, 2013, and was thereafter granted leave to proceed *in forma pauperis*. Dkt. Nos. 1, 6. In his complaint, plaintiff asserts claims against defendants Beaury, Payne, and Ely, in their individual and official capacities, under the First and Eighth Amendments, and seeks damages as well as injunctive relief. *See generally* [Dkt. No. 1](#).

On September 27, 2013, defendants filed a motion seeking dismissal of certain of plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Dkt. No. 15](#). In their motion, defendants request dismissal of (1) all claims asserted against them for damages in their official

capacities and (2) plaintiff's First Amendment free exercise claims asserted against defendants Payne and Ely. *See generally* Dkt. No. 15-1. In addition, while noting that plaintiff has failed to formally move for a preliminary injunction, defendants contend that plaintiff's complaint fails to satisfy the requirements for granting that relief. *Id.* at 5-7. Plaintiff has since responded in opposition to defendants' motion. Dkt. No. 17.

Defendants' motion, which is now fully briefed, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

   A.   Standard of Review Governing Motions to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain

statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). However, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened

fact pleading of specifics, it does require enough facts to 'nudge plaintiffs'

claims across the line from conceivable to plausible.'" *In re Elevator

Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at

570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop,

particular deference should be afforded to a *pro se* litigant, whose complaint

merits a generous construction by the court when determining whether it

states a cognizable cause of action. *Erickson*, 551 U.S. at 94 ("'[A] *pro se*

complaint, however inartfully pleaded, must be held to less stringent

standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v.

Gamble*, 429 U.S. 97, 106 (1976)) (citation omitted)); *Sealed Plaintiff v.

Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff

proceeds *pro se*, a court is obliged to construe his pleadings liberally."

(quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida

Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd,

J.) ("A pro se complaint must be read liberally.").

B.    Eleventh Amendment Immunity

As was noted above, the three named defendants in this action are

sued in both their individual and official capacities. Dkt. No. 1 at 1-2. In their

motion, defendants request dismissal of the damage claims asserted

against them in their official capacities. [Dkt. No. 15-1 at 3](Dkt. No. 15-1 at 3).

The Eleventh Amendment protects a state against suits brought in federal court by "private parties seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Cory v. White*, 457 U.S. 85, 90-91 (1982); *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993). This absolute immunity, which states enjoy under the Eleventh Amendment, extends to both state agencies and state officials sued for damages in their official capacities when the essence of the plaintiff's claim seeks recovery from the state as the real party in interest. *See, e.g., Daisernia v. State of N.Y.*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.) ("[A] suit which seeks a money judgment 'which must be paid from the state treasury is barred by the Eleventh Amendment,' even though it is nominally asserted against an individual official." (quoting *Edelman*, 415 U.S. at 663)); *see also Richards v. State of N.Y. App. Div., Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (*citing, inter alia, Cory v. White*, 457 U.S. 85, 89-91, (1982)). "To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan*, 996 F.2d at 529; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits

against state officials in their official capacity therefore should be treated as suits against the State.").

Plaintiff's damage claims in this action against the named-defendants in their official capacities are, in reality, claims against the State of New York, and therefore are subject to dismissal. *Daisernia*, 582 F. Supp. at 798-99. Accordingly, I recommend that those claims be dismissed with prejudice.

While plaintiff's damage claims asserted against defendants in their official capacities are subject to dismissal, any claims for injunctive relief against them would not be precluded by the Eleventh Amendment, and, accordingly, could proceed. *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) ("A plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers. . . in their official capacities, provided that his complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective."). In this case, however, plaintiff does not seek injunctive relief in connection with his first three claims. Dkt. No. 1 at 5, 6, 8. Because plaintiff's fourth cause of action is subject to dismissal, *see* Part III.D., *post*, there is no basis upon which plaintiff's claims against defendants in their official capacities may survive the pending motion.

C.    Plaintiff's First Amendment Claims

At the center of defendants' motion to dismiss are plaintiff's First Amendment free exercise claims asserted against defendants Payne and Ely. Dkt. No. 15-1 at 3-5. Defendants contend that the claim against defendant Payne is subject to dismissal because "plaintiff has not alleged any reason for the delay in processing his request [to change his religious designation], and it can be assumed that any delay was for administrative purposes." *Id.* at 4. With respect to defendant Ely, defendants argue that, assuming defendant Ely did deny plaintiff an opportunity to attend religious education classes on two occasions, that is not sufficient to give rise to a cognizable First Amendment claim. *Id.* at 4. In his response, plaintiff reiterates the allegations set forth in his complaint, including with respect to his retaliation claim against defendant Beaury, which is not the subject of defendants' motion. *See generally* Dkt. No. 17.

1.    Legal Principles Applicable to Free Exercise Claims

While inmates confined within prison facilities are by no means entitled to the full gamut of rights guaranteed under the United States Constitution, the free exercise clause of the First Amendment does afford them at least some measure of constitutional protection. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974) ("In the First Amendment context . . . a

prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."). The protections afforded under the First Amendment, however, are not without limits, and the task of defining the contours of that right in a prison setting requires striking a delicate balance between the rights of inmates and the legitimate interests of prison officials tasked with maintaining prison security. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348-49 (1987); *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003); *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990).

A plaintiff asserting a First Amendment free exercise claim must, as a threshold matter, "show . . . that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006).[5] In evaluating this factor, the court must be wary of

---

[5]     I acknowledge that the Second Circuit yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S. 872, 887 (1990). *See Holland v. Goord*, --- F.3d ----, No. 13-2694, 2014 WL 3360615 (2d Cir. July 10, 2014) ("It has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a 'prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.'" (quoting *Salahuddin*, 467 F.3d at 274-75)); *Salahuddin*, 467 F.3d at 275 n.5 (declining to address whether "a prisoner's First Amendment free-exercise claim is [] governed by the 'substantial burden' threshold requirement"). Because, however, the Second Circuit continues to apply the test, even when squarely faced with the question of its continued viability, I will assume a plaintiff must establish a substantial burden on his sincerely held beliefs to demonstrate a *prima facie* First Amendment free exercise claim. *See, e.g., Holland*, 2014 WL 3360615, at *4 ("[W]e need not decide the issue here, as even assuming the continued vitality of the substantial burden requirement, our precedent squarely dictates that [the plaintiff's] religious exercise was unconstitutionally

"'question[ing] the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.'" *McEachin v. McGuinnis*, 357 F.3d 197, 201 (2d Cir. 2004) (quoting *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989)). Instead, a court should consider only whether the particular plaintiff has "demonstrate[d] that the beliefs professed are sincerely held and in the individual's own scheme of things, religious." *Ford*, 352 F.3d at 588 (quotation marks omitted). Once a plaintiff satisfies this burden, defendants must then "bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." *Salahuddin*, 467 at 275. "[T]he burden[, however,] remains with the prisoner to 'show that these penological concerns were irrational.'" *Ford*, 352 F.3d at 595 (quoting *Fromer v. Scully*, 874 F.2d 69, 74 (2d Cir. 1989)) (alteration omitted).

At this juncture the court next inquires into whether a defendant's conduct, which allegedly deprives the plaintiff of his free exercise rights, is reasonably related to some penological interest. *Ford*, 352 F.3d at 594; *see also Washington*, 538 F. App'x at 26 ("Even if Defendants-Appellees substantially burdened [the Plaintiff-Appellant]'s sincerely held religious

---

burdened[.]"); *Salahuddin*, 467 F.3d at 274-75 ("The prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs."); *accord, Smith v. Goord*, 541 F. App'x 133, 134 (2d Cir. 2013); *Washington v. Gonyea*, 438 F. App'x 23, 26 (2d Cir. 2013); *Hall v. Ekpe*, 408 F. App'x 385, 388 (2d Cir. 2010).

beliefs, their actions do not constitute a constitutional deprivation if they were reasonably related to legitimate penological interests." (quotation marks omitted)). To determine whether a challenged regulation or decision by prison officials is reasonable,[6] courts must evaluate the following four factors:

> [(1)] [W]hether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; [(2)] whether prisoners have alternative means of exercising a burdened right; [(3)] the impact on the guards, inmates, and prison resources of accommodating the right; and [(4)] the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests.

*Salahuddin*, 467 F.3d at 274 (footnote omitted).

### 2. Plaintiff's Claim Against Defendant Payne

Plaintiff alleges that defendant Payne violated his First Amendment rights by delaying the processing of his request to change his religious designation. Dkt. No. 1 at 6. Plaintiff contends that as a result of that delay, he was unable to participate in some religious exercises, including fasting during Ramadan and attending prayer services on seven days. *Id.*

As was noted above, at the time of the incident, DOCCS Directive

---

[6]     Indeed, the Second Circuit has held that "[a]n individualized decision to deny a prisoner the ability to engage in religious exercise is analyzed in the same ways as a prison regulation denying such exercise." *Salahuddin*, 467 F.3d at 274 n.4.

4202, concerning religious programs and practices, contemplated that an inmate's request to change religions would be processed and acted upon within thirty days of the request.[7] Dkt. No. 15-1 at 14. In this instance, plaintiff alleges that he submitted his formal request to change his religion "[d]uring the end of the Month of June [2012]." Dkt. No. 1 at 6. The change was effectuated on August 20, 2012, after both defendant Payne and the Islam Chaplain at Great Meadow signed the necessary form. Dkt. No. 1-1 at 76. Thus, liberally construing plaintiff's complaint, he alleges that the delay in processing his request to change religions amounted to fifty-one days,

---

[7]    Although plaintiff does not challenge the constitutionality of the registration process in general, I note, as defendants do in support of their motion, that the requirement that a prison inmate register his religious affiliation is one that serves legitimate penological interests. *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997). The Second Circuit has explained that

> [r]egistration eliminates speculation and guesswork on the part of prison officials and makes it less likely that a prisoner will manipulate the system by asserting various religions at different times. Registration also allows prison officials to gauge the interest in any particular religion on the part of the inmate population and thus decide whether a 'congregation' should be allowed. Registration puts the institution on notice that certain religious accommodations will likely be sought and thereby provides the institution with time to consider if and how to implement them. This, in turn, makes such accommodations more likely and thereby reduces the circumstances in which judicial intervention will be needed. In short, registration places, at most, a slight burden on an inmate's right to religious freedom while serving as an important and beneficial 'bright line' that enables prison officials to ascertain the seriousness of the inmate's religious commitment and respond accordingly.

*Jackson-Bey,* 115 F.3d at 1097.

from June 30, 2012, to August 20, 2012.[8] This delay is exactly three weeks beyond the thirty days contemplated in the version of DOCCS Directive 4202 in effect at the time.[9] Although defendants "assume[] that [the] delay was for administrative purposes," nothing in plaintiff's complaint or elsewhere in the record supports this assumption. Dkt. No. 14-1 at 4. Defendants have otherwise neglected to offer any reason for the delay in processing plaintiff's request. Under these circumstances, and mindful of plaintiff's allegation that, as a result of the delay in processing his request, he was precluded from participating in Ramadan and attending seven prayer services, I find that plaintiff has alleged sufficient facts plausibly suggesting that his religious beliefs were substantially burdened by defendant Payne. Accordingly, I recommend that defendants' motion to

---

[8] The court recognizes the possibility, based on the record, that plaintiff did not file the proper form requesting a change in religious designation until sometime in July or August of 2012. Dkt. No. 1-1 at 76. The attachments to plaintiff's complaint include (1) an affidavit from the clerk for the Islam Chaplain at Great Meadow, in which the clerk stated that plaintiff submitted "[t]wo [c]hange of [r]eligion forms" in July and August of 2012; and (2) a copy of a completed change-of-religious-designation form, which is signed by plaintiff on August 9, 2012. Dkt. No. 1-1 at 76. Although plaintiff alleges that he submitted the form at the end of June 2012, he did not submit a copy of that form (with the June date) to the court. Dkt. No. 1 at 6. Mindful that, at this juncture, plaintiff's allegations must be accepted as true, I have calculated the time for delay based upon the assumption that plaintiff submitted the form to DOCCS officials on June 30, 2012.

[9] As was noted above, on July 24, 2014, which post-dates the commencement of this action, DOCCS Directive 4202 was revised to advise inmates that they should expect their request for a religious designation change to "be accomplished within 14 business days." State of New York Department of Corrections and Community Supervision DIRECTIVE, "Religious Programs and Practices," available at http://www.doccs.ny.gov/directives/4202.pdf (last visited July 31, 2014).

dismiss the First Amendment claim asserted against defendant Payne be denied.[10]

###### 3.    Plaintiff's Claim Against Defendant Ely

In his third cause of action, plaintiff alleges that defendant Ely caused him to "[m]iss [n]umerous [c]all outs for [e]ducation [classes] in the Islamic [r]eligion, and [n]umerous congregational [p]rayers," and specifically identifies October 13, 2012, and November 3, 2012, as dates on which he missed religious education classes. Dkt. No. 1 at 8. Although defendants are correct that allegations of two missed call-outs for religious programming over a period of three weeks is not constitutionally significant,[11] plaintiff alleges defendant Ely caused him to miss "numerous" classes and services. Because I am obligated to accept plaintiff's factual allegations as true at this stage of the proceedings, and because there is nothing in the record suggesting defendant Ely was justified in precluding

---

[10]    Although the court takes no position with respect to the ultimate merits of plaintiff's claims at this juncture, it is worth noting that the plausibility of plaintiff's claim against defendant Payne is more tenuous the proof establishes that his request was filed in late July or early August. If that is proven to be the case, then plaintiff's request was acted upon by DOCCS officials and effectuated within the thirty-day response time period envisioned by DOCCS Directive 4202.

[11]    *See Simmons v. Adamy*, 987 F. Supp. 2d 302, 309 (W.D.N.Y. 2013) ("[A]lthough there is no bright-line rule concerning the frequency with which missing religious services and classes become a burden of constitutional significance, limits on an inmate's religious exercise which prevent attendance at classes or services once a week or less have routinely been held not to comprise a burden on religious exercise." (citing cases)).

plaintiff from his call-outs, I find that plaintiff has alleged a cognizable constitutional claim against that defendant. Accordingly, I recommend that the court deny defendants' motion to dismiss plaintiff's First Amendment claim asserted against defendant Ely.

### D. Preliminary Injunction

In his complaint plaintiff seeks a temporary restraining order and preliminary injunction, but requests that relief by purporting to assert it as a distinct cause of action. Dkt. No. 1 at 9. A request for a temporary restraining order or preliminary injunction, however, is not an independently cognizable cause of action, but instead a form of interim relief. While a complaint may seek an injunction as a form of relief, any application for interim injunctive relief, pursuant to Rule 65 of the Federal Rules of Civil Procedure, must comply with the rules governing the local practice of this court. N.D.N.Y. L.R. 7.1(f), 65.2. The local rules require that a party seeking a temporary restraining order do so either by a notice of motion or order to show cause. N.D.N.Y. L.R. 7.1(f). Moreover, motions for a temporary restraining order or preliminary injunction must be supported by the submission of a memorandum of law and an affidavit. N.D.N.Y. L.R. 5.1(a), 7.1(a), (f). In this case, because plaintiff's request for injunctive relief is not an independently cognizable cause of action, and plaintiff has failed to comply with the rules

governing motion practice, his "fourth cause of action" is ripe for dismissal.

In any event, even if I were to overlook the deficiencies accompanying plaintiff's request for injunctive relief, I would recommend it be denied. Plaintiff's request is directed toward anticipated, future retaliation by defendants "and/or their 3rd [p]arty actors." Dkt. No. 1 at 9. Because the relief plaintiff seeks is unrelated to the allegations contained in his complaint, his request should be denied. *Ariola v. LaClair*, No. 07-CV-0057, 2007 WL 1026365, at *1 (N.D.N.Y. Apr. 2, 2007) (Sharpe, J.); *Chavis v. Ryan*, No. 05-CV-0100, 2007 WL 446440, at *1 (N.D.N.Y. Feb. 7, 2007) (Scullin, J.). Moreover, plaintiff is also precluded from seeking injunctive relief against a non-party. *Ariola*, 2007 WL 1026365, at *1; *Chavis*, 2007 WL 446440, at *1.

For all of these reasons, I recommend that plaintiff's fourth cause of action be dismissed.

E.      Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see*

*also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). In this instance, the deficiencies identified in this report with respect to plaintiff's damage claims asserted against defendants in their official capacities are substantive in nature, and extend beyond the mere sufficiency of plaintiff's complaint. Accordingly, because I find that any amendment regarding those claims that might be offered by plaintiff would be futile, I recommend against granting him leave to amend.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

The portions of plaintiff's complaint seeking damages against the defendants in their official capacities, and a temporary restraining order and preliminary injunction, are subject to dismissal. Plaintiff's other claims, however, against defendants Payne and Ely in their individual capacities have been adequately pleaded, and are not subject to dismissal at this procedural stage.

Based upon the foregoing, it is hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 15) be granted, in part, and that plaintiff's damage claims asserted against the defendants in their official capacities, as well as his fourth cause of action, be DISMISSED, but that the motion otherwise be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's

local rules.

Dated:      August 13, 2014
               Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

Not Reported in F.Supp.2d, 2007 WL 1026365 (N.D.N.Y.)
**(Cite as: 2007 WL 1026365 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Christopher D. ARIOLA, Petitioner,
v.
Darwin LaCLAIR, Respondent.

No. 9:07-CV-0057 (GLS)(DRH).
April 2, 2007.

Christopher D. Ariola, Petitioner, pro se.

**ORDER**

GARY L. SHARPE, U.S. District Judge.

**\*1** This is a habeas proceeding, brought pursuant to 28 U.S.C. § 2254, challenging the validity of petitioner's convictions for manslaughter and attempted robbery. Docket No. 4. The Court recently ordered the amended petition served, and the respondent has not yet filed a response to the petition. FN1 Presently before this Court is a motion by the petitioner Christopher Ariola ("Ariola" or "petitioner") for injunctive relief. Docket No. 7.

> FN1. The respondent in this action is Darwin LaClair, the Superintendent of Great Meadow Correctional Facility where petitioner was incarcerated at the time this action was filed. The amended petition contains no challenges to petitioner's parole or the conditions thereof.

Petitioner's motion for a preliminary injunction seeks a injunction against the Division of Parole "estopping them from unconstitutional deprivations of liberty ...." *Id.* In support of his motion for injunctive relief, Ariola states that the Division of Parole has imposed conditions on his living arrangements and have required him to pay a fee for a psychological assessment. *Id.*

The standard a court must utilize in considering whether to grant a request for injunctive relief is well-settled in this Circuit. As the Second Circuit noted in *Covino v. Patrissi,* 967 F.2d 73 (2d Cir.1992), the movant must show: (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief. *Id.* at 77 (affirming district court's denial of inmate's request for preliminary injunction); *see also Roucchio v. LeFevre,* 850 F.Supp. 143, 144 (N.D.N.Y.1994) (McAvoy, C.J.) (adopting Report-Recommendation of Magistrate Judge that denied inmate's request for injunctive relief).

However, the Court need not reach the merits of petitioner's motion because it is clear that the relief that petitioner seeks in his motion for injunctive relief is not related to the claims in his amended petition. *See Chavis v. Ryan,* 9:05-CV-100, 2007 WL 446440, at \*1 (N.D.N.Y. Feb. 7, 2007). In addition, except in limited circumstances not relevant here, a court may not order injunctive relief as to nonparties to an action. *See* Fed.R.Civ.P. 65(d) (providing that "[e]very order granting an injunction ... is binding only upon the parties to the action ..."); *Chavis,* 2007 WL 446440, at \*2 (citation omitted). The Division of Parole is not a party to the underlying habeas proceeding. Thus, this Court may not issue an injunction in this action with respect to any actions of the Division of Parole.

WHEREFORE, on the basis of the above, it is hereby

ORDERED, that petitioner's motion for injunctive relief (Docket No. 7) is denied, and it is further

ORDERED, that the Clerk serve a copy of this Order on the petitioner.

IT IS SO ORDERED.

N.D.N.Y.,2007.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1026365 (N.D.N.Y.)
**(Cite as: 2007 WL 1026365 (N.D.N.Y.))**

Ariola v. LaClair
Not Reported in F.Supp.2d, 2007 WL 1026365
(N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)
**(Cite as: 2008 WL 508694 (N.D.N.Y.))**

**C**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
George M. CHAVIS, Plaintiff,
v.
K. CURLEE, Prison Counselor, Great Meadow C.F.,
e.g., Defendants.

No. 9:06-CV-0049 (LEK/GHL).
Feb. 21, 2008.

George M. Chavis, Dannemora, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Adele M. Taylor-Scott, Esq., Assistant Attorney General, of Counsel, Albany, NY.

### DECISION AND ORDER
LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a Report-Recommendation filed on January 28, 2008 by the Honorable George H. Lowe, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3 of the Northern District of New York. Report-Rec. (Dkt. No. 36). After ten days from the service thereof, the Clerk has sent the entire file to the undersigned, including the objections by Plaintiff George M. Chavis, which were filed on February 13, 2008. Objections (Dkt. No. 37).

It is the duty of this Court to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* This Court has considered the objections and has undertaken a de novo review of the record and has determined that the Report-Recommendation should be approved for the reasons stated therein.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt. No. 36) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED,** that Plaintiff's *in forma pauperis* status is **revoked as having been improvidently granted** and that Plaintiff is given **TEN (10) DAYS** from the date of this Order to pay the Court's filing fee of $250. Should Plaintiff fail to make that payment, his Complaint will be dismissed without further order of this Court; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

### *REPORT-RECOMMENDATION*
GEORGE H. LOWE, United States Magistrate Judge.

This prisoner civil rights action, commenced *pro se* pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Generally, Plaintiff's Amended Complaint alleges that, between July of 2005, and July of 2006, at Auburn C.F., and Great Meadow C.F., fourteen employees of the New York State Department of Correctional Services ("Defendants") violated his constitutional rights by retaliating against him or subjecting him to cruel and unusual prison conditions. (*See generally* Dkt. No. 6 [Plf.'s Am. Compl.].) Currently pending before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint on the ground that the action is barred by the "three strikes" rule established by 28 U.S.C. § 1915(g). (Dkt. No. 31.) For the reasons that follow, I recommend that Defendants' motion be granted or, in the alternative, that Plaintiff's Amended Complaint be *sua sponte* dismissed as a sanction pursuant to Fed.R.Civ.P. 11 for making a material misrepresentation to the Court in his sworn pleadings about his prior litigation history.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)
**(Cite as: 2008 WL 508694 (N.D.N.Y.))**

# I. ANALYSIS OF DEFENDANTS' MOTION

## A. Acquisition of "Three Strikes" Warranting Dismissal

**\*2** Under the so-called "Three Strikes Rule" set forth in the federal statute governing *in forma pauperis* proceedings,

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is *frivolous, malicious, or fails to state a claim upon which relief may be granted,* unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g) [emphasis added]. Defendants are correct when they argue that the power of a federal district court to invoke this rule is not limited to the outset of a litigation but extends all throughout the pendency of the proceeding. (Dkt. No. 31, Part 13, at 2-3.) In other words, a federal district court has the authority to rescind or revoke the *in forma pauperis* status that it has previously bestowed upon a plaintiff, if the court discovers that the status had been improvidently granted.FN1

> FN1. *See, e.g., Eady v. Lappin,* 05-CV-0824, 2007 WL 1531879, at \*1 & n. 1 (N.D.N.Y. May 22, 2007) (Mordue, C.J., adopting Report-Recommendation by Lowe, M.J.); *Gill v. Pidlypchak,* 02-CV-1460, 2006 WL 3751340, at \*5 (N.D.N.Y. Dec.19, 2006) (Scullin, J.); *Polanco v. Burge,* 05-CV-0651, 2006 WL 2806574, at \*2 (N.D.N.Y. Sept.28, 2006) (Kahn, J., adopting Report-Recommendation by Homer, M.J.); *Demos v. John Doe,* 118 F.Supp.2d 172, 174 (D.Conn.2000); *McFadden v. Parpan,* 16 F. Supp.2d 246, 247 (E.D.N.Y.1998); *see also Rolle v. Garcia,* 04-CV-0312, Report-Recommendation (N.D.N.Y. Jan. 29, 2007) (Lowe, M.J.), *adopted on other grounds,* 04-CV-0312, 2007 WL 672679 (N.D.N.Y. Feb.28, 2007) (Kahn, J.).

The first thing we must do is determine the date when Plaintiff "brought" this action for purposes of 28 U.S.C. § 1915(g). The Complaint in this action was signed by Plaintiff on September 12, 2005, postmarked on January 12, 2006, and received (and docketed) by the Clerk's Office on January 13, 2006. (Dkt. No. 1.) Ordinarily, under the "prison mailbox rule," the date of *filing* is deemed to be the date that the prisoner-plaintiff is presumed to have handed his complaint to a prison guard for *mailing,* which is the date that the complaint was *signed.*FN2 The problem here is that there appears to have been a four-month delay between the date of signing of the Complaint and the date of mailing (or post-marking) of the Complaint. As a result, the question arises: was Plaintiffs Complaint "filed" on the date of signing (i.e., September 12, 2005) or on the date of mailing (i.e., January 12, 2006)? Fortunately, the Court need not decide whether Plaintiff's action was "brought," for purposes of 28 U.S.C. § 1915(g)-on September 12, 2005, or on January 12, 2006-because an analysis under either finding would yield the same conclusion.

> FN2. *See Shaw v. Superint., Attica Corr. Facility,* 03-CV-0610, 2007 WL 951459, at \*3 n. 3 (N.D.N.Y. March 28, 2007) (McCurn, J.) (habeas corpus proceeding) [citations omitted]; *Garraway v. Broome County, N.Y.,* 03-CV-0681, 2006 WL 931729, at \*3-4 (N.D.N.Y. Apr.7, 2006) (McAvoy, J.) (prisoner civil rights action) [citation omitted].

After carefully reviewing Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, I have determined that, as of September 12, 2005 (the earlier of the two aforementioned dates), he had acquired at least three "strikes" for purposes of 28 U.S.C. § 1915(g) .

Plaintiffs "first strike" came in the case of *Chavis v. Charnes,* 99-CV-5072 (S.D.N.Y.). In *Charnes,* Plaintiff's *pro se* prisoner rights complaint was

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)
**(Cite as: 2008 WL 508694 (N.D.N.Y.))**

dismissed by the Southern District of New York *sua sponte,* on July 14, 1999. *See Chavis v. Charnes,* 99-CV-5072, Docket Sheet (S.D.N.Y.) (attached as Exhibit 1 to this Report-Recommendation). The Docket Sheet does not expressly state whether the dismissal was for frivolousness, maliciousness or merely failure to state a claim. *Id.* However, clearly the dismissal was for one of those three reasons since the Order of Dismissal expressly cited 28 U.S.C. § 1915 and was issued *sua sponte* immediately after filing. *Id.* The only authority under 28 U.S.C. § 1915 to issue such an order *sua sponte* immediately after filing is if the dismissal is frivolousness, maliciousness or failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a), (b). Furthermore, the Chief District Judge issuing the Order (Thomas P. Griesa) certified that any appeal from his Order of Dismissal would not be taken in good faith for purposes of 28 U.S.C. § 1915(a)(3). *See Chavis v. Charnes,* 99-CV-5072, Docket Sheet (S.D.N.Y.) (attached as Exhibit 1 to this Report-Recommendation). Such a certification, which occurs when a district judge finds the lack of an arguable basis in law or fact in the losing party's claims or arguments, indicates a finding of frivolousness with regard to Plaintiff's claims.[FN3] Thus, there was clearly at least one "strike" for purposes of 28 U.S.C. § 1915(g) before he "brought" this action on September 12, 2005.

FN3. *See Coppedge v. United States,* 369 U.S. 438, 445, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962) ("We consider a [losing party's] good faith ... demonstrated when he seeks appellate review of any issue not frivolous. In so doing, we note that if in forma pauperis litigation is attempted for reasons that may genuinely be characterized as the litigant's 'bad faith,' express authority exists in 28 U.S.C.1915(d) for dismissal of the cause as frivolous."); *accord, Pytel v. U.S.,* 378 F.Supp. 294, 296-97 (N.D.N.Y.1974) (MacMahon, J.) ("This Court will not authorize an appeal *in forma pauperis* under 28 U.S.C. § 1915(a) and hereby certifies that any appeal is not taken in good faith. In this context, good faith is judged by an objective standard, and where, as here, an appeal would be frivolous, it

is not taken in good faith.") [citations omitted]; *S.E.C v. Broadwell Securities, Inc.,* 64-CV-3995, 1981 WL 1655, at *1 (S.D.N.Y. July 8, 1981)* ("An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith. 28 U.S.C. § 1915. Good faith, in this context, is an objective standard that measures whether the issues on appeal are frivolous.") [internal quotation marks and citations omitted].

**\*3** Plaintiff's "second strike" came during his appeal from the aforementioned order of dismissal. Despite Chief Judge Griesa's certification that any appeal from his Order of Dismissal would not be taken in good faith for purposes of 28 U.S.C. § 1915(a)(3), Plaintiff took an appeal anyway, on August 12, 1999. *See Chavis v. Charnes,* 99-CV-5072, Docket Sheet (S.D.N.Y.) (attached as Exhibit 1 to this Report-Recommendation). The appeal, which was to the Second Circuit, was assigned docket number 99-265. *Id; see also Chavis v. Charnes,* No. 99-265, Docket Sheet (2d Cir.) (attached as Exhibit 2 to this Report-Recommendation). On February 25, 2000, the Second Circuit issued an Order denying Plaintiff's request to proceed *in forma pauperis* during the appeal, and dismissed Plaintiff's appeal. (*Id.*) Although the copy of the Order of Dismissal is not available on-line, the Second Circuit Docket Sheet expressly quotes the Order. *See Chavis v. Charnes,* No. 99-265, Docket Sheet (2d Cir.) (attached as Exhibit 2 to this Report-Recommendation). According to the Docket Sheet, the Order stated:

> Motions having been made by appellant pro se for in forma pauperis status and for damages, upon due consideration it is ordered that said motions be and hereby are denied, and the appeal is dismissed as frivolous. See 28 U.S.C.1915(e); *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

(*Id.*) [FN4] I can find no record of any appeal pending (or having been actually filed) with the Supreme Court. Thus, there was clearly a "second strike" for purposes of 28 U.S.C. § 1915(g) before

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)
**(Cite as: 2008 WL 508694 (N.D.N.Y.))**

Plaintiff "brought" this action on September 12, 2005. I note that a second strike may result from the dismissal of a federal appeal, even though the appellant had already incurred a strike during the dismissal of the federal district court action underlying the appeal.[FN5]

> FN4. I note that this express finding of "frivolousness" is also reflected in the district court docket sheet's identification of the Second Circuit's Order of Dismissal. *See Chavis v. Chames,* 99-CV-5072, Docket Sheet (S.D.N.Y.) (attached as Exhibit 1 to this Report-Recommendation).

> FN5. *See Cait v. Beto I Unit,* 04-CV-40848, 126 Fed. App'x 645, 646 (5th Cir. Feb.23, 2005) ("The magistrate judge's dismissal of Cain's complaint as frivolous and for failure to state a claim and our dismissal of Cain's appeal both count as strikes for purposes of 28 U.S.C. § 1915(g)."); *Smith v. Bruce,* No. 04-3043, 103 Fed. App'x 324, 344 (10th Cir. June 29, 2004) ("Dismissal of Smith's appeal as frivolous counts as a strike against him, as does the district court's dismissal of his complaint.") [citations omitted]; *Mains v. Washington,* 131 F.3d 1248, 1250 (7th Cir.1997) ("A frivolous complaint (or as in this case a complaint that is dismissed under § 1915 A for failure to state a claim) followed by a frivolous appeal leads to two 'strikes' under 28 U.S.C. § 1915(g)."); *cf. Bea v. Doe,* 401 F.Supp.2d 538, 540 & n. 5 (E.D.Va.2005) (because district court proceeding and appellate proceeding arising out of district court proceedings were "distinct" for purposes of PLRA's "three strikes" rule, the plaintiffs voluntary withdrawal of his appeal did not effect the fact that the dismissal of the district court action constituted a "strike").

Plaintiffs "third strike" came in the case of *Chavis v. Struebel,* No. 04-2814 (2d Cir.). In *Struebel,* Plaintiff's *pro se* prisoner rights complaint was dismissed by the Western District of New York on March 29, 2004, for failure to state claim *and* failure to adduce evidence pursuant to Fed.R.Civ.P. 56. *Chavis v.*

*Struebel,* 317 F.Supp.2d 232, 236-39 (W.D.N.Y. March 29, 2004). As a result, no strike resulted from that dismissal. However, during the dismissal, the United States Magistrate Judge (assignment to whom the parties had consented) certified that any appeal from his order of dismissal would not be taken in good faith, for purposes of 28 U.S.C. § 1915(a)(3). *Struebel,* 317 F.Supp.2d at 239. Plaintiff took an appeal anyway. On June 2, 2005, the Second Circuit dismissed the appeal because it "lack[ed] an arguable basis in law or fact" pursuant to 28 U.S.C. § 1915(e)(2) (B)(l), expressly citing that statute and *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). *Chavis v. Struebel,* No. 04-2814, Mandate (2d Cir. filed March 11, 2005) (attached as Exhibit 3 to this Report-Recommendation). *Neitzke v. Williams,* and its progeny, explain that use of such language is an unequivocal finding of frivolousness for purposes of 28 U.S.C. § 1915.[FN6] I can find no record of any appeal pending (or having been filed) with the Supreme Court. Thus, there was clearly a "third strike" for purposes of 28 U.S.C. § 1915(g) before he "brought" this action on September 12, 2005.

> FN6. *See Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("[A]n appeal on a matter of law is frivolous where none of the legal points are arguable on their merits.... By logical extension, a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or fact.") [internal quotation marks and citation omitted]; *Tavarez v. Reno,* 54 F.3d 109, 109 (2d Cir.1995) ("An appeal is frivolous where it lacks an arguable basis in law or fact.") (citing *Neitzke v. Williams,* 490 U.S. 319, 325 [1989] ).

**\*4** Even if one of the above dismissals did not constitute a "strike" for some reason, Plaintiff incurred yet another strike before he filed the current action. Plaintiff's "fourth strike" came in the case of *Chavis v. New York,* UID 2001-013-019 (N.Y.Ct.CI.). In *Chavis v. New York,* Plaintiff, as a prisoner proceeding *pro se,*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

filed a claim against New York State for the "loss of travel expenses [incurred] by [his] family members" as a result of "false information given them over the phone by [his] vindictive SHU-Counselor" regarding the authorized time during which they could visit Plaintiff at Lakeview Prison. *Chavis v. New York,* UID 2001-013-019, Decision (N.Y. Ct. Cl. filed Sept. 19, 2001) (Patti, J.) (attached as Exhibit 4 to this Report-Recommendation). The defendant moved to dismiss on the ground that the claim was inappropriately brought in that (1) Plaintiff was not the one who incurred the property loss and (2) he was not authorized to represent them in court (as a practicing attorney). *Id.* The Court of Claims judge assigned to the case, Judge Philip J. Patti, agreed with defendant and dismissed Plaintiffs claim on September 19, 2001. *Id.* Notably missing from the decision is any mention of evidence. This is because the decision was based solely on the allegations of Plaintiff's complaint. As a result, the dismissal was much like one for failure to state a claim upon which relief may be granted under Fed.R.Civ.P. 12(b)(6).[FN7] I can find no record of any appeal from this decision anywhere pending (or having been filed). Thus, there appears to have been a "fourth strike" for purposes of 28 U.S.C. § 1915(g) before he "brought" this action on September 12, 2005.

> FN7. I note that, even if the dismissal of Plaintiff's claim in *Chavis v. New York* was not simply caused by a failure to state a claim but was also caused partially by a lack of standing, case law exist holding that such a dismissal would still constitute a "strike" for purposes of 28 U.S.C. § 1915(g). *See Jones v. Edgar,* 3 F.Supp.2d 979, 981-82 (C.D.Ill.1998) (dismissal of prisoner's claim relating to alleged Fifteenth Amendment violation for failure to state claim, coupled with dismissal of prisoner's judicial-voting-districts claim for lack of standing, counted as a "strike" for purposes of PLRA), cited with approval in *Eady v. Lappin,* 05-CV-0824, 2007 WL 1531879, at *2, n. 4 (N.D.N.Y. May 22, 2007) (Mordue, C.J., adopting Report-Recommendation by Lowe, M.J.) [collecting

cases]; *cf. Comeaux v. Cockrell,* 72 F. App'x 54, 55 (5th Cir.2003) ("The district court could dismiss part of [the plaintiff's] complaint as malicious, which counted as a strike under 28 U.S.C. § 1915(g), even though the case was ultimately dismissed for failure to comply with court orders."); *Cross v. Harris,* 06-CV-0236, 2006 WL 3834270, at *3 & n. 1 (E.D.Ark. Dec.29, 2006) (counting as a strike a prior partial dismissal on ground of frivolousness, even though rest of action was dismissed for failure to exhaust administrative remedies); *President v. Duplichan,* 05-CV-1178,2006 WL 2540362, at *5 (W.D.La. June 14, 2006) (considering fact that "Plaintiff has had at least three previous civil actions filed in this Court dismissed in whole *or in part* as frivolous, malicious, or for failing to state a claim" in determining whether he had acquired "three strikes" pursuant to Section 1915[g] ) [emphasis added]; *Townsend v. Walker,* 06-CV-0361, 2006 U.S. Dist. LEXIS 37723, at *3-4, 2006 WL 1663713 (S.D. Ill. June 8, 2006) (rejecting plaintiff's argument that "[b]ecause [his] entire case was not dismissed for failure to state a claim, ... the ... [partial dismissal] should not count as a strike."); *Shaw v. Weaks,* 06-CV-2024, 2006 WL 1049307, at *6 n. 13 (W.D.Tenn. Apr.20, 2006) (counting as a strike a prior partial dismissal on ground of firivolousness or failure to state claim, even though rest of action was dismissed for failure to exhaust administrative remedies); *demons v. Young,* 240 F.Supp.2d 639, 640-641 (E.D.Mich.2003) (ruling that "a complaint dismissed in part as frivolous and in part without prejudice because of the failure to exhaust administrative remedies is ... a 'strike' for purposes of 28 U.S.C. § 1915(g)").

Having said all of this, I note that, for the most part, I am not persuaded by Defendants' argument that various of Plaintiffs actions or appeals resulted in "strikes" for purposes of 28 U.S.C. § 1915(g). (Dkt. No. 31, Part 13, at 4-5.) Generally, either the particular

dismissals cited by Defendants occurred after the "bringing" of Plaintiff's action (on September 12, 2005, or perhaps January 12, 2006), or those dismissals simply did not occur on the ground that the action was "frivolous, malicious, or fails to state a claim" under 28 U.S.C. § 1915(g). I note that I do not read 42 U.S.C. § 1915(g), or the cases applying it, as suggesting that a dismissal solely because of discovery abuses pursuant to Fed.R.Civ.P. 37, or a failure to serve pursuant to Fed.R.Civ.P. 41, constitutes a dismissal for frivolousness, maliciousness or failure to state a claim. FN8 Failures during discovery and failures to serve are failures based on something other than the four corners of a plaintiff's complaint-which is essentially the only thing looked at when determining frivolousness, maliciousness and failure to state a claim. Finally, I read 42 U.S.C. § 1915(g) as not encompassing a dismissal that is based partially upon the absence of genuine issues of material fact determined after a review of record evidence pursuant to Fed.R.Civ.P. 56. Apart from the fact that 28 U.S.C. § 1915(g), which is very specific, does not speak of such dismissals, such a review of record evidence generally only occurs when a litigant has survived any argument that his claim is frivolous, malicious or fails to state a claim.

> FN8. *See, e.g.,* Marjorie A. Shields, "Validity and Construction of 'Three Strikes' Rule Under 28 U.S.C.A. § 1915(g) Barring Prisoners from In Pauperis Filing of Civil Suit After Three Dismissals for Frivolity," 168 A.L.R. Fed. 433, §§ III.5. III.6 (2001 & Cumulative Supplement) (discussing cases addressing what constitutes a "frivolous" or "malicious" action for purposes of 28 U.S.C.A. § 1915[g] ).

**\*5** For all of these reasons, I find that Plaintiff had earned at least three "strikes" for purposes of 28 U.S.C. § 1915(g) before he "brought" this action on September 12, 2005. However, that does not end our inquiry, because the "Three Strikes Rule" contains an exception for prisoners who are "in imminent danger of serious physical injury" when they bring their action. 28 U.S.C. § 1915(g).

**B. Non-Applicability of Imminent Danger Exception**

As stated earlier, the "Three Strikes Rule," set forth in the federal statute governing *in forma pauperis* proceedings, reads,

> *In no event shall a prisoner bring a civil action* or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, *unless the prisoner is under imminent danger of serious physical injury.*

28 U.S.C. § 1915(g) [emphasis added].

Because 28 U.S.C. § 1915(g) creates an exception for prisoners who are under imminent danger of serious physical injury when they "bring a civil action," the imminent-danger exception applies only when such danger exists *at the time the action is brought. See Malik v. McGinnis,* 293 F.3d 559, 562-63 (2d Cir.2002). As the Second Circuit explained in *Malik,*

> We agree with our sister circuits that § 1915(g) allows prisoners to escape the three strikes rule only if "the prisoner *is* under imminent danger of serious physical injury." (emphasis added). Because § 1915(g) uses the present tense in setting forth the imminent danger exception, it is clear from the face of the statute that the danger must exist at the time the complaint is filed. Further, "[b]y using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred." *Abdul-Akbar [v. McKelvie],* 239 F.3d [307] at 315 [3d Cir.2001]. Accordingly, the language of § 1915(g) makes clear that the "imminent danger" exception only applies to danger existing at the time the complaint is filed.

> *Malik v. McGinnis,* 293 F.3d 559, 562-63 (2d Cir.2002), *accord, Polanco v. Hopkins,* No. 07-1739, 2007 WL 4258724, at *2-3 (2d Cir. Dec.6, 2007) (declining to overturn the Second Circuit's time-of-filing interpretation set forth in *Malik* ).

As a result, as in the Court's analysis of the assessment-of-strikes issue, the first thing the Court must do when analyzing the imminent-danger issue is to determine the date when Plaintiff "brought" this action for purposes of 28 U.S.C. § 1915(g). As explained above in Part I.A. of this Report-Recommendation, because of the "prison mailbox rule," an issue exists regarding precisely when Plaintiff "brought" this action for purposes of 28 U.S.C. § 1915(g). He signed his original Complaint on September 12, 2005. However, he apparently did not mail that Complaint until on January 12, 2006. What further complicates matters is the fact that Plaintiff signed what he characterized as an "Amended" Complaint in this action on July 24, 2006. (Dkt. No. 6.) Ordinarily, this fact would not present a real problem, since an amended complaint contains allegations arising out of the same events as the events giving rise to the allegations contained in the original complaint. However, here, the "Amended" Complaint was, in actuality, an Amended and *Supplemental* Complaint, asserting, for the first time, allegations arising out of events occurring *after* the date he originally "brought" the action, specifically events occurring between May and July of 2006, at Auburn C.F. (*Compare* Dkt. No. 1 *with* Dkt. No. 6.) As a result, a sort of paradox arises: If a court considers the new allegations presented in a plaintiff's supplemental complaint when resolving the imminent-danger issue (presented by 28 U.S.C. § 1915 [g] ), the court will be determining whether the plaintiff was in imminent danger *after,* not before, he brought the action-unless the court re-characterizes the date on which the action was "brought" to coincide with the filing of the supplemental complaint.

**\*6** Fortunately, again, the Court need not resolve this issue because the Court would reach the same conclusion about the applicability of the imminent-danger exception regardless of whether the Court assumed Plaintiff "brought" this action on July 24, 2006, on January 12, 2006, or on September 12, 2005. This is because Plaintiff has not, in either his original Complaint or his Amended Complaint, alleged facts plausibly suggesting that he was under imminent danger of serious physical injury on any of the referenced dates. FN9

> FN9. I note that, when determining whether a prisoner has qualified for the "imminent danger" exception, courts look at the non-conclusory allegations in the prisoner's complaint. *Welch v. Fisher,* 07-CV-0929, 2007 WL 3231992, at *1-2 (N.D.N.Y. Oct.30, 2007) (McAvoy, J.) (concluding that plaintiff had failed to allege imminent danger of serious physical injury) [citations omitted]; *see also Andrews v. Cervantes,* 493 F.3d 1047, 1053 (9th Cir.2007) ("[A]ll [circuits] maintain a singular focus on the facts alleged in the complaint in deciding whether a prisoner faced the requisite harm.") [collecting cases]; *Ibrahim v. Dist., of Columbia,* 463 F.3d 3, 6 (D.C.Cir.2006) ("In determining whether he qualifies [for the 'imminent danger' exception], we look to the complaint"); *Brown v. Johnson,* 387 F.3d 1344, 1350 (11th Cir.2004) ("[T]he issue [under § 1915(g) ] is whether his complaint, as a whole, alleges imminent danger of serious physical injury."); *Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) ("Before denying leave to proceed IFP, courts must review a frequent filer's well-pled allegations to ensure that the prisoner is not in imminent danger.") [citation omitted]; *Rivera v. Allin,* 144 F.3d 719, 726 (11th Cir.1998) ("Prior to denying leave to proceed IFP, courts must review a frequent filer prisoner's well-pled allegations to ensure that the prisoner is not under imminent danger of serious physical injury.") [internal quotation marks and citation omitted], *abrogated on other grounds, Jones v. Block,* 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

For example, liberally construed, Plaintiff's Amended Complaint (signed on July 24, 2006) alleges that, between July of 2005, and July of 2006, at Auburn C.F., and Great Meadow C.F., the fourteen Defendants in this action violated his constitutional rights in the following ways:

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

(1) **Defendant Curlee** (a) filed false disciplinary charges against Plaintiff on July 7, 2005, in retaliation for his providing her with written notice that he intended to take legal action against her, at Auburn C.F., and (b) intentionally ignored Plaintiff's "mandatory program" request on or about July 11, 2005, at Auburn C.F.;

(2) **Defendant Young** denied Plaintiff a legal assistant prior to his disciplinary hearing on the referenced July 7, 2005, disciplinary charges, at Great Meadow C.F.;

(3) **Defendant Jackowski** (a) also denied Plaintiff a legal assistant prior to his disciplinary hearing on the referenced July 7, 2005, disciplinary charges, at Great Meadow C.F., (b) wrongfully convicted Plaintiff of the referenced charges, and excessively sentenced him to nine months' confinement in the Great Meadow C.F. SHU, and (c) Defendant Jackowski also excessively punished Plaintiff to six months' confinement in the Great Meadow C.F. SHU following another wrongful conviction of false and retaliatory charges filed by Defendant Curlee in July of 2005;

(4) **Defendant Selsky** failed to completely reverse these disciplinary convictions, in September or October of 2005;

(5) **Defendant Green** intentionally ordered wrongful disciplinary hearings against Plaintiff on false disciplinary charges in July and August of 2005, at Great Meadow C.F.;

(6) **Defendant Campbell** (a) filed false disciplinary charges against Plaintiff in July of 2005, in retaliation for his providing her with written notice that he intended to take legal action against her, at Great Meadow C.F., and (b) intentionally ignored Plaintiff's "mandatory program" request five or six months before his Parole Board interview in 2005, at Great Meadow C.F., resulting in his denial of release to parole;

(7) **Defendant Atkinson** wrongfully and intentionally denied Plaintiff's "mandatory program" requests between February and August of 2005, at Great Meadow C.F., resulting in his denial of release to parole;

(8) **Defendant Beebe,** in retaliation against Plaintiff for having provided Defendant Curlee with written notice that he intended to take legal action against her, at Auburn C.F., (a) wrongfully and intentionally inhibited Plaintiff's practice of the Islamic religion by denying him "all religious materials including [his] study lessons" between July and August of 2005, at Great Meadow C.F., (b) wrongfully and intentionally denied Plaintiff his legal work, which was inside his "property bags," at Great Meadow C.F., and (c) wrongfully and intentionally placed him in a Great Meadow C.F. SHU cell that was "dirty, grimy and unsanitized" for a month prior to his transfer to another prison;

**\*7** (9) **Defendant McGuire** either committed the same violations as did Defendant Beebe during the same time period at Great Meadow C.F., or he helped Defendant Beebe commit those violations;

(10) **Defendant Nesmith** callously (a) denied Plaintiff Benadryl over-the-counter allergy medication on "numerous dates" between June of 2005 and August 8, 2005, even though Plaintiff had had an outbreak of hives during that time period, at Great Meadow C.F., which had caused "eye and facial swelling," and (b) visited Plaintiff's cell without actually performing a sick call on several dates during the referenced time period;

(11) **Defendant Laux** denied Plaintiff "all multi-vitamin, Vitamin C and E supplements" on May 23, 2006, without first giving him a personal examination, despite knowing that he suffered from a Hepatitis-B condition, at Auburn C.F.;

(12) **Defendant Hai** filed false disciplinary charges against Plaintiff on June 13, 2006, and June 14, 2006, in retaliation for the grievances that he had filed against Defendant Hai on June 2, 2006, and June 13, 2006, at Auburn C.F.;

(13) **Defendant Wolgzyk** (a) intentionally denied Plaintiff a legal assistant prior to his disciplinary

hearings on June 19, 2006, and June 20, 2006, at Auburn C.F., (b) wrongfully convicted him of the charges against him at those hearings, at Auburn C.F., and (c) callously sentenced him to incarceration in the Auburn C.F. SHU; and

(14) **Defendant Graham** caused Plaintiff to be incarcerated in an Auburn C.F. SHU cell that was dirty and flooded, and where he was deprived of running water, cleaning supplies, personal hygiene items, and his legal papers, in June and July of 2006. (*See generally* Dkt. No. 6.)

I find that these alleged facts do not plausibly suggest that Plaintiff was under an *imminent danger of serious physical injury* when he brought this action. (Indeed, I would have difficulty finding that these allegations plausibly suggest any *deliberate indifference to a serious medical need.*) The closest Plaintiff comes to asserting such factual allegations is when he alleges that (1) Defendant Nesmith denied Plaintiff Benadryl over-the-counter allergy medication on "numerous dates" *between June of 2005 and August 8, 2005,* even though Plaintiff had had an outbreak of hives during that time period at Great Meadow C.F., which had caused "eye and facial swelling," and (2) Defendant Laux denied Plaintiff "all multi-vitamin, Vitamin C and E supplements" *on May 23, 2006,* without first giving him a personal examination, despite knowing that he suffered from a Hepatitis-B condition, at Auburn C.F.

The first problem with these allegations is they do not plausibly suggest that the injuries Defendants Nesmith and Laux caused Plaintiff *between June of 2005 and August 8, 2005,* and *on May 23, 2006,* somehow continued to cause Plaintiff adverse health consequences *at the time this action was "brought"* - whether that date was when Plaintiff dated his original Complaint, on *September 12, 2005,* or when that original Complaint was postmarked, on *January 12, 2006,* or when Plaintiff signed his "Amended" Complaint in this action, *on July 24, 2006,*

**\*8** The Second Circuit recently affirmed a district court's finding of no-imminent-danger under circumstances involving an analogous temporal

disconnect. *See Polanco v. Hopkins,* No. 07-1739, 2007 WL 4258724 (2d Cir. Dec.6, 2007). In *Polanco v. Hopkins,* the plaintiff alleged that (1) defendants were effectively forcing him to breathe "black mold" in a prison shower, exacerbating both his AIDS condition and his Hepatitis-B condition, and (2) defendants had deprived him of hygienic items and a proper diet while in the prison SHU, causing him to lose weight. *Polanco v. Hopkins,* 03-CV-6661, 2007 WL 914023, at \*3-5 (W.D.N.Y. March 23, 2007). With respect to the first claim (regarding the moldy shower), the Western District of New York ruled that the plaintiff had not alleged facts plausibly suggesting that he was in imminent danger of serious physical injury *at the time be "brought" the action,* because he filed the action on December 29, 2003 (while he was incarcerated at Auburn C.F.) long after he had been subjected to the moldy shower on October 10, 2002 (while he was incarcerated at Elmira C.F.). *Polanco,* 2007 WL 914023, at \*3-4. With respect to the second claim (regarding his proper hygiene and diet while in SHU), the Western District ruled there was no "imminent danger" alleged due to a similar temporal disconnect between the date of the injury (on March 25-27, 2003) and the date of the filing (on December 29, 2003). *Id.* at \*5 & n. 1. On appeal, the Second Circuit agreed, affirming the Western District's ruling. *See Polanco v. Hopkins,* No. 07-1739, 2007 WL 4258724, at \*2 (2d Cir. Dec.6, 2007) ("Nor did the District Court err in determining that Polanco's 'allegations cannot support a determination that he was in imminent danger' of serious physical injury with respect to his claims relating to the health risks associated with his exposure to mold or to his claim of unjust discipline.' ").

In any event, even if this temporal disconnect did not plague Plaintiff's allegations, his allegations would still not plausibly suggest "imminent danger" because they lack several critical details. For example, with respect to his Benadryl claim, Plaintiff alleges no physical injury greater than "eye and facial swelling." Nor does Plaintiff allege how many times Defendant Nesmith deprived him of the Benadryl-a number closer to four or forty? With respect to his vitamin claim, Plaintiff alleges no specific physical injury *at all.* How

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

did Defendant Laux's alleged vitamin deprivation on one day exacerbate Plaintiff's pre-existing Hepatitis-B condition? And how did any such exacerbated condition rise to the level of an *imminent danger of serious physical injury?*

Analogous circuit court decisions exist finding that a prisoner had not alleged such an imminent danger due to his failure to provide such critical details. *See, e.g., Skillern v. Paul,* 06-CV-11440, 202 Fed. App'x 343, 344 (11th Cir. Oct.4, 2006) (prisoner was not in imminent danger of serious physical injury for purposes of 28 U.S.C. § 1915[g], where he alleged merely that the deprivation of his heart medication "may result" in his suffering serious physical injury, without "present[ing] any description of the condition giving rise to the prescription for heart disease medication," and without "alleg[ing] that he suffered any physical injury as a result of not receiving the medication"); *White v. Colorado,* 157 F.3d 1226, 1231-32 (10th Cir.1998) (prisoner was not in imminent danger of serious physical injury for purposes of 28 U.S.C. § 1915 [g], where he merely alleged "vague and utterly conclusory assertions" of withheld medical treatment, specifically, that he "ha [s] been deprived of life sustaining medication and medical attention/treatment, ha[s] been beaten, and/or otherwise tortured and allowed to suffer great pain, so that [his] health degenerated to a[n] extremely life threatening degree"). FN10

> FN10. *See also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (prisoner was not in imminent danger of serious physical injury for purposes of 28 U.S.C. § 1915[g], where he merely asserted conclusory allegations that prison officials were trying to kill him by forcing him to work in extreme weather conditions despite "his blood pressure condition").

**\*9** Finally, I note that Plaintiff, in an obvious attempt to respond to Defendants' imminent-danger argument, has asserted some allegations of physical injury in his Opposition Memorandum of Law (described below). As an initial matter, I find that only

the allegations of a prisoner's *pleading* (not a memorandum of law) should be considered in deciding whether such imminent danger existed at the time an action was brought, for the reasons discussed above. FN11 In any event, these allegations asserted in Plaintiff's Opposition Memorandum of Law are, like the allegations asserted in his pleadings, wholly conclusory. (*See* Dkt. No. 33, Plf.'s Opp. Mem. of Law, at 4, 26 [alleging that an excessive use of force, by unidentified Defendants on unidentified dates, caused Plaintiff to experience "internal organ trauma with bleeding-swelling to head and body with lacerations"]; Dkt. No. 33, Plf.'s Opp. Mem. of Law, at 20 [alleging that Defendant Laux caused "a deterioration of Plaintiff's physical condition]; Dkt. No. 33, Plf.'s Opp. Mem. of Law, at 21-22 [alleging that, on July 17, 2006, unidentified correctional officers, physically assaulted Plaintiff]; Dkt. No. 33, Plf.'s Opp. Mem. of Law, at 25 [alleging that, during an unspecified time, unspecified Defendants denied Plaintiff "emergency medical treatment for 2 1/2 weeks"].)

> FN11. *See, supra,* note 9 of this Report-Recommendation.

For these reasons, I find that Plaintiff has not alleged facts plausibly suggesting that he was under imminent danger of serious physical injury when he brought this action. As a result, I recommend that Plaintiff's *in forma pauperis* status be revoked or rescinded as having been improvidently granted, and that Plaintiff be given ten (10) days from the date of the Court's final order with regard to Defendants' motion by which to pay the Court's filing fee of $250 (the fee applicable at the time of filing), upon penalty of dismissal.

Finally, I note that I specifically reject Plaintiff's argument that the Court is somehow estopped from revoking or rescinding his *in forma pauperis* status because it granted that status on July 5, 2006. (Dkt. No. 33, at 24-25 [Plf.'s Opp. Mem. of Law].) It is true that, in my Report-Recommendation of July 5, 2006, I noted, in a footnote, that Plaintiff had filed five other actions in the Northern District. (Dkt. No. 5, at 2.) However, before so noting, I had no occasion to look outside of

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

the Northern District of New York for other cases filed by, or "strikes" earned by, Plaintiff. Simply stated, I was relying on Plaintiff's misrepresentation, in his sworn Complaint, about his litigation history. (*See, infra,* Part II of this Report-Recommendation [describing Plaintiff's misrepresentation].) Having misled the Court about his previous litigation history, Plaintiff cannot be heard to complain about the Court's reconsideration of his entitlement to proceed *in forma pauperis.*

## II. ALTERNATIVE GROUND FOR DISMISSAL

In the alternative, I find that Plaintiff should be sanctioned for making a material misrepresentation to the Court, in both his sworn Complaint and his sworn Amended Complaint, about his previous litigation history.

**\*10** Specifically, in Paragraph 5 of Plaintiff's sworn Complaint, he answered "Yes" to the question, "Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment?" (Dkt. No. 1, ¶ 5[a] [Plf.'s Compl.].) He then listed only *one* case when identifying those cases, even though he was specifically instructed, "If your answer to 5(a) is YES you must describe any and all lawsuits, currently pending or closed, in the space provided on the next page." (Dkt. No. 1, ¶ 5[b] [Plf.'s Compl.].) Paragraph 5 of Plaintiff's sworn Amended Complaint contains the exact same question and answer. (*See* Dkt. No. 6, ¶ 5 [Plf.'s Am. Compl.].)

The problem is that, in answering this question, Plaintiff failed to disclose to the Court *any* of the *fourteen* state and federal court actions relating to his imprisonment that he had filed before the date on which he signed his original Complaint, on September 12, 2005, and/or before the date on which he signed his Amended Complaint, on July 24, 2006. *See Chavis v. Charnes,* 99-CV-5070 (S.D.N.Y.) (filed 7/14/99); *Chavis v. Cunningham,* 00-CV-0097 (W.D.N.Y.) (filed 1/28/00); *Chavis v. Flagler,* 01-CV-0510 (W.D.N.Y.) (filed 7/19/01); *Chavis v. VonHagan,* 02-CV-0119 (W.D.N.Y.) (filed 2/11/02); *Chavis v. Zodlow,* 02-CV-0637 (N.D.N.Y.) (filed 5/9/02); *Chavis v. Kienert,* 03-CV-0039 (N.D.N.Y) (filed 1/9/03); *Chavis*

*v. Ferris,* 03-CV-0743 (W.D.N.Y.) (filed 10/2/03); *Chavis v. Bennett,* 03-CV-0755 (N.D.N.Y.) (filed 6/18/03); *Chavis v. D.N.,* 04-CV-0158 (N.D.N.Y.) (filed 2/12/04); *Chavis v. Woods,* 05-CV-0429 (S.D.N.Y.) (filed 1/14/05); *Chavis v. Woods,* 05-CV-0768 (E.D.N.Y.) (filed 2/9/05); *Chavis v. Goord,* 8 A.D.3d 786, 777 N.Y.S.2d 918 (N.Y.App.Div., 3d Dept.) (appeal dismissed on 6/10/04); *Chavis v. New York,* UID 2001-013-019, Claim No. 100419 (N.Y. Ct CI.) (dismissed on 9/19/01).

Generally, information about a plaintiff's litigation history is material in prisoner civil rights actions since it enables the Court to determine one or more of the following issues: (1) whether any of the issues in the action have been previously litigated and decided (for purposes of the doctrines of res judicata and collateral estoppel); (2) whether the plaintiff had, prior to being granted *in forma pauperis status* in this action, earned "three strikes" for purposes of 28 U.S.C. § 1915(g); (3) whether the plaintiff had a record of frivolous litigation sufficient to warrant either (a) what is known as a "bar order" (i.e., an order barring him from litigating further in that court without meeting certain preconditions) pursuant to 28 U.S.C. § 1651(a), or (b) an order declaring plaintiff to be a "vexatious" litigator pursuant to 28 U.S.C. § 1927; and (4) whether the plaintiff's litigation experience was so extraordinary that it effectively dispenses with the need to afford him special solicitude.

Here, the information omitted by Plaintiff was certainly material since the action proceeded for well over a year on the assumption that Plaintiff was telling the truth when he swore that, as of the dates on which he filed his Complaint and Amended Complaint, he had filed only one other lawsuit in state or federal court otherwise relating to his imprisonment. Had Plaintiff answered truthfully, it is highly likely that either the Court, or defense counsel, would have more promptly explored Plaintiff's prior litigation history and discovered the above-described "strikes." I note that, while a plaintiff is under no duty to provide this information in order to state an actionable civil rights claim, here, Plaintiff *chose* to answer a question on a

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

form complaint calling for such information, and *swore* to the truthfulness of his answer. No amount of special solicitude can excuse such a material misrepresentation to the Court.[FN12]

> FN12. I note that I am doubtful that Plaintiff is even entitled to such special solicitude, since the rationale for extending such solicitude is a *pro se* litigant's inexperience, and, here, Plaintiff is no stranger to the court system. *See Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994) (declining to extend special solicitude to experienced *pro se* civil rights litigant); *see also Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001) (unpublished opinion), *aff'g,* 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting,* Report-Recommendation, at 1, n.l (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson,* 201 F.3d 431, at *2 (2d Cir.1999) (unpublished opinion), *aff'g,* 97-CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting,* Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.). Specifically, from my review of various on-line databases, including the Federal Judiciary's PACER Service, it appears that Plaintiff has filed at least 15 other federal court actions, most of which were followed by an appeal, and at least six state court actions or appeals. *See, supra,* Part II of this Report-Recommendation (listing cases); *see also Chavis v. Ryan,* 05-CV-0100 (N.D.N.Y.); *Chavis v. Goord,* No. 500537, 2007 WL 4335538 (N.Y.App.Div., 3d Dept); *Chavis v. Goord,* 45 A.D.3d 1063, 845 N.Y.S.2d 866 (N.Y.App.Div., 3d Dept.); *Chavis v. Goord,* 43 A.D.3d 1235, 841 N.Y.S.2d 720 (N.Y.App.Div., 3d Dept.).

**\*11** District judges from this Court have recently indicated a willingness to sanction *pro se* litigants for making such material misrepresentations. *See, e.g., Standley v. Dennison,* 05-CV-1033,2007 WL 2406909, at *13-14 (N.D.N.Y. Aug.21, 2007) (Sharpe, J.,

adopting, on *de novo* review, Report-Recommendation by Lowe, M.J., premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *6 & n. 32 (N.D.N.Y. July 11, 2007) (McAcoy, J., adopting, on plain-error review, Report-Recommendation by Lowe, M.J., premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint) [collecting cases].

Certainly, numerous other federal courts have so sanctioned *pro se* litigants. *See, e.g., Greer v. Schriro,* No. 06-15537, 2007 WL 4163413, at *1 (9th Cir. Nov.26, 2007) (affirming district court dismissal that was based on this ground); *Mathis v. Smith,* No. 05-13124, 181 Fed. App'x 808, 809-10 (11th Cir. May 17, 2006) (affirming district court dismissal that was based partially on this ground); *Hudson v. Fuller,* No. 02-1396, 59 Fed. App'x 855, 856-57 (7th Cir. Feb.25, 2003) (affirming district court dismissal that was based on this ground); *Albright v. Holden,,* 99 F.3d 1145, 1145 (9th Cir.1996) (affirming district court dismissal that was based on this ground).[FN13]

> FN13. *See also Hood v. Tompkins,* No. 05-16358, 197 Fed. App'x 818, 819 (11* Cir. Aug.7, 2006) (affirming district court dismissal on this ground), *accord, Dinkins v. Smalley,* 07-CV-0043, 2008 WL 160699, at *3 & n. 3 (S.D.Ga. Jan.14, 2008) (adopting, on *de novo* review, magistrate judge's recommendation that plaintiff's complaint should be dismissed on this ground) [citing cases]. I note that the dismissals in *Hood v. Tompkins* and *Dinkins v. Smalley* were without prejudice since the plaintiffs in those cases had not yet had an opportunity to file an amended complaint. However, here, Plaintiff has had such an opportunity. (*See* Dkt. No. 6.) As a result, the dismissal should be *with prejudice.*

I note that I have carefully considered all less drastic sanctions and found them to be inadequate and inappropriate remedies, given the particular

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

circumstances of this case, and Plaintiff's incorrigible propensity for abusing the litigation process.[FN14] As a result, I recommend that, in the alternative, Plaintiff's Amended Complaint should be dismissed with prejudice as a sanction under Fed.R.Civ.P. 11 for making a material misrepresentation to the Court, in both his sworn Complaint and his sworn Amended Complaint, about his previous litigation history.

> FN14. For example, in addition to the numerous baseless actions that Plaintiff has filed in federal court, and the numerous misrepresentations he has made in those actions about his then-previous litigation history, I note that Plaintiff has, in this action, used abusive language, calling various Defendants "devils" and "satanic," and calling defense counsel "sneaky, wicked, [and] manipulative." (*See, e.g.,* Dkt. No. 6, ¶ 6 at 1, 16 [Plf.'s Am. Compl.]; Dkt. No. 33, at 15 [Plf.'s Opp. Mem. of Law].)

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 31) be ***GRANTED.*** that Plaintiff's *in forma pauperis* status be revoked or rescinded as having been improvidently granted, and that Plaintiff be given ***TEN (10) DAYS*** from the date of the Court's final order with regard to Defendants' motion by which to pay the Court's filing fee of $250 (the fee applicable at the time of filing), upon penalty of ***DISMISSAL;*** and it is further

**RECOMMENDED** that, in the alternative, Plaintiff's Complaint be *sua sponte* **DISMISSED with prejudice** as a sanction pursuant to Fed.R.Civ.P. 11 for making a material misrepresentation to the Court in his sworn pleadings about his prior litigation history; and it is further

**RECOMMENDED** that the Court certify in writing, for purposes of 28 U.S.C. § 1915(a)(3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.

**\*12** Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b); Fed.R.Civ.P. 6(a), 6(e), 72.

*Exhibit 1*
**U.S. District Court**
**United States District Court for the Southern**
**District of New York (Foley Square)**
**CIVIL DOCKET FOR CASE # : 1:99-cv-05072-TPG**
*Chavis v. Charnes,* et al

Assigned to: Judge Thomas P. Griesa

Demand: $0

Cause: 42:1983 Prisoner Civil Rights

Date Filed: 07/14/1999

Date Terminated: 07/14/1999

Jury Demand: Plaintiff

Nature of Suit: 550 Prisoner: Civil

Rights

Jurisdiction: Federal Question

*Plaintiff*

**George M. Chavis**

V.

*Defendant*

**Mr. Allen Charnes**

*Defendant*

**Ms. Irene Springer**

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)
**(Cite as: 2008 WL 508694 (N.D.N.Y.))**

represented by **George M. Chavis**          Pine City, N.Y. 14871-2000

(91-A-3261)                                   PROSE

Southport Correctional Facility

P.O. Box 2000

| Date Filed | # Docket Text |
| --- | --- |
| 07/14/1999 | 1 DECLARATION IN SUPPORT OF REQUEST TO PROCEED IN FORMA PAUPERIS by George M. Chavis (jp) (Entered: 07/19/1999) |
| 07/14/1999 | 2 COMPLAINT filed (jp) (Entered: 07/19/1999) |
| 07/14/1999 | Magistrate Judge Dolinger is so Designated. (jp) (Entered: 07/19/1999) |
| 07/14/1999 | 3 ORDER OF DISMISSAL Accordingly, the complaint, filed in forma pauperis under 28 U.S.C.1915(a), is dismissed pursuant to 28 U.S.C.1915(d). We certify pursuant to 28 U.S.C.1915(a) that any appeal from this order would not be taken in good faith. SO ORDERED. (signed by Chief Judge Thomas P. Griesa) (jp) (Entered: 07/19/1999) |
| 07/14/1999 | 4 JUDGMENT for Allen Charnes, Irene Springer. Ordered, Adjudged and Decreed: That the complaint be and it is hereby dismissed. 28 U.S.C.1915(d). We certify that any appeal from the Court's order would not be taken in good faith. SO ORDERED. (signed by Chief Judge Thomas P. Griesa). entered on 7/19/99. (jp) (Entered: 07/19/1999) |
| 07/14/1999 | Case closed Op) (Entered: 07/19/1999) |
| 08/12/1999 | NOTICE OF APPEAL by George M. Chavis; from [4-1] judgment. Copies of notice of appeal mailed to |

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)

**(Cite as: 2008 WL 508694 (N.D.N.Y.))**

| | |
|---|---|
| | Attorney(s) of Record: .FEES DUE, IFP revoked 7/14/99. (as) (Entered: 09/02/1999) |
| 08/12/1999 | Notice of appeal and certified copy of docket to USCA: [5-1] appeal by George M. Chavis; Copy of notice of appeal sent to District Judge. (as) (Entered: 09/02/1999) |
| 09/08/1999 | 6 Notice that the record on appeal has been certified and transmitted to the U.S. Court of Appeals: [5-1] appeal by George M. Chavis (as) (Entered: 09/08/1999) |
| 03/01/2000 | 7 MANDATE OF USCA (certified copy) Re: Dismiss [5-1] appeal by George M. Chavis. Motions having been made by appellant pro se for in forma pauperis status and for damages, upon consideration it is ordered that said motions be and hereby are denied, and the appeal is dismissed as frivolous. 99-0265 Roseann B. MacKechnie, Clerk (sl) (Entered: 03/02/2000) |
| 05/11/2000 | Record on appeal files (99-265) returned from U.S. Court of Appeals: [5-1] appeal by George M. Chavis. (dt) (Entered: 05/11/2000) |

**PACER Service Center**

**Transaction Receipt**

01/17/2008 11:48:19

| **PACER Login:** | us4417 | **Client Code:** | |
|---|---|---|---|
| **Description:** | Docket Report | **Search Criteria:** | 1:99-cv-05072-TPG |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

*Exhibit 2*

GENERAL DOCKET FOR

Second Circuit Court of Appeals

**\*13** Filed: 9/14/99

Court of Appeals Docket # :99-265

Nsuit: 3550 PRISONER PET-Civil Rights

*Chavis v. Charnes,* et al

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Appeal from: U.S. District Court SDNY

Case type information:

1) Prisoner Petition

2) State

3) Civil Rights

Lower court information:

District: 0208-01: 99-cv-5072

Trial Judge: Thomas P. Griesa, Chief Judge

Date Filed: 7/14/99

Date order/judgment: 7/14/99

Date NOA filed: 8/12/99

Fee status: IFP denied in CA

Prior cases:

None

Current cases:

None

Panel Assignment:

GEORGE M. CHAVIS, Plaintiff-Appellant

George M. Chavis

# 91-A-3261

[COR LD NTC]

Coxsackie Correctional Facility

P.O. Box 2000

Coxsackie, N.Y. 12051

ALLEN CHARNES, Mr., Defendant-Appellee

# 990265, Esq.

[COR LD NTC ret]

Attorney General's Office

State of New York

The Capitol

Albany, N.Y. 12224

IRENE SPRINGER, Ms., Defendant-Appellee

# 990265, Esq.

(See above)

[COR LD NTC ret]

Official Caption [FN15]

    FN15. Fed. R.App. P. Rule 12[a] and 32[a].

Docket No. [s]: 99-0265

GEORGE M. CHAVIS, Plaintiff-Appellant,

v.

MR. ALLEN CHARNES and MS. IRENE SPRINGER, Defendants-Appellees.

Authorized Abbreviated Caption [FN16]

    FN16. For use on correspondence and motions only.

Docket No. [s]: 99-0265

*CHAVIS v. CHARNES*

8/31/99 Copy of district court order RECEIVED.

(ag44)

9/14/99 Copy of notice of appeal and district court docket entries on behalf of Appellant George M. Chavis filed. (COANRQ state-cvrgt;fee due) [99-265] (ag44)

9/14/99 Record on appeal filed. (Original papers of district court.) Number of volumes: 1 (ag44)

9/17/99 Note: This appeal was PRO SE when filed. (ag44)

9/17/99 Letter sent to Appellant George M. Chavis giving 30 days from date to either pay the fee or file a motion for ifp. Fee due on 10/18/99. D Response due financial affidavit on 10/18/99. (ag44)

9/20/99 Appellant George M. Chavis motion to proceed in forma pauperis Satisfy fee or motion for ifp. FILED (w/pfs). [1555668-1] (ag44) 10/6/99 Letter from appellant, regarding submission of pre-argument materials, received. (ag44)

10/12/99 Letter sent to Appellant George M. Chavis instructing him to forward his prisoner fee letter to this court as soon as possible. (ag44)

10/18/99 Appellant George M. Chavis motion to allow damages FILED (w/pfs). [1490706-1] (ag40)

11/24/99 Letter from appellant, regarding the status of his appeal, received. (ag44)

1/4/00 Letter sent to Appellant George M. Chavis informing him of the status of his appeal. (ag44)

2/25/00 Order FILED DENYING motion to allow [1490706-1] by Appellant George M. Chavis, endorsed on motion dated 10/18/99., DENYING motion to proceed in forma pauperis [1555668-1] by Appellant George M. Chavis, endorsed on motion dated 9/20/99. Order states, "Motions having been made by appellant pro se for in forma pauperis status and for damages, upon due consideration it is ordered that said motions be and hereby are denied, and the appeal is dismissed as frivolous. See 28 U.S.C.

S.1915 (e); *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). For the Court: LC." (ag44)

**\*14** 2/25/00 Notice, regarding motion order dated 2/25/00, issued to counsel. (ag44)

2/25/00 Certified copy of order dated 2/25/00 disposing of the appeal issued to district court. (ag44)

3/9/00 Letter from appellant, regarding reinstatement of the appeal, received. (ag44)

3/16/00 Letter sent to Appellant George M. Chavis stating that if he wants to reinstate the appeal, he must file a motion. (ag44)

3/31/00 Appellant George M. Chavis motion for: 2.5 million dollars RECEIVED. (ag44)

5/1/00 Record on appeal RETURNED to lower court. No. of volumes: 1(ref)

5/25/00 Letter from appellant, regarding motion for appointment of counsel and review of medical papers, received. (ag44)

6/22/00 Appellant George M. Chavis motion to reconsider decision FILED (w/pfs). [1652956-1](hh)

7/18/00 Appellant George M. Chavis papers supporting motion # for reconsideration [1652956-1] by Appellant George M. Chavis filed. (ag44)

8/2/00 Order FILED DENYING motion to reconsider decision [1652956-1] by Appellant George M. Chavis, endorsed on motion dated 6/22/00. Order states, "Before CJS, SS, DN Hurd, It is hereby ordered that the motion for reconsideration be and it hereby is denied. For the Court: BJM" (ag44)

8/3/00 Notice, regarding motion order dated 8/2/00, issued to counsel. (ag44)

8/18/00 Appellant George M. Chavis motion to reconsider decision FILED (w/pfs). [1691931-1](hh)

10/6/00 Letter received from G. Chavis re: appeal to

the Supreme Court. (ag42)

11/9/00 Letter from appellant, regarding denial of his motion for reconsideration, received. (ag44)

12/8/00 Letter sent to Appellant George M. Chavis re: Letter received on 10/06/00. (ag42)

6/25/01 Order FILED DENYING motion to reconsider decision [1691931-1] by Appellant George M. Chavis, endorsed on motion dated 8/18/00. (Before: CJS, SS, CJJ, Hurd, DJ) (BJM, AA FOR THE COURT) (ag40)

6/25/01 Notice of motion to denying reconsideration issued to counsel and pro se. (ag40)

6/25/01 Letter sent to Appellant George M. Chavis: reagrding letter he sent to this court. (ag40)

*Exhibit 3*
United States Court of Appeals
FOR THE
SECOND CIRCUIT
At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at Foley Square, in the City of New York, on the 11th Day of MARCH Two thousand and five.

Present:

Hon. Thomas J.

Meskill, Hon. Dennis Jacobs,

Hon. Chester J. Straub,

*Circuit Judges.*

_____

George M. Chavis, Plaintiff-Appellant,

v.

Robert Cunningham, George Struebel, Defendants-Appellees,

D. Waiter, T. Brekon, Wright, John Doe, Glenn S. Goord, Anthony J. Annuci, Walter R. Kelly, Frank McCray, James Conway, Edward Donnerly, Defendants,

_____

Appellant, *pro se,* moves for *in forma pauperis* status. Upon due consideration, it is ORDERED that the motion is DENIED, and the appeal is dismissed, because the appeal "lacks an arguable basis in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *see also* 28 U.S.C. § 1915(e)(2)(B)(i).

**\*15** FOR THE COURT:

Roseann B. MacKechnie, Clerk

By: Lucille Carr

*Exhibit 4*
**New York State Court of Claims**

*CHAVIS v. THE STATE OF NEW YORK,* #
**2001-013-019, Claim No. 100419, Motion No. M-63721**
**Synopsis**
A claim brought by a non-attorney which asserts a cause of action on behalf of family members is dismissed as improperly brought.

**Case Information**

| | |
|---|---|
| **UID:** | 2001-013-019 |
| **Claimant(s):** | GEORGE CHAVIS |
| **Claimant short name:** | CHAVIS |

| | |
|---|---|
| **Footnote (claimant name):** | |
| **Defendant(s):** | THE STATE OF NEW YORK |
| **Footnote (defendant name):** | |
| **Third-party claimant(s):** | |
| **Third-party defendant(s):** | |
| **Claim number(s):** | 100419 |
| **Motion number(s):** | M-63721 |
| **Cross-motion number(s):** | |
| **Judge:** | Philip J. Patti |
| **Claimant's attorney:** | GEORGE CHAVIS, Pro Se |
| | HON. ELIOT SPITZER |
| **Defendant's attorney:** | Attorney General of the State of New York |
| | BY: William D. Lonergan, Esq. Assistant Attorney General |
| **Third-party defendant's attorney:** | |
| **Signature date:** | September 19, 2001 |
| **City:** | Rochester |
| **Comments:** | |
| **Official citation:** | |
| **Appellate results:** | |
| **See also** | |
| **(multicaptioned case)** | |

### Decision

On August 15, 2001, the following papers were read on Defendant's motion for an order of dismissal:

1. Notice of Motion and Supporting Affidavit of William D. Lonergan, Esq. ("Lonergan Affidavit")

2. Affidavit in Opposition: None Received

3. Filed Papers: Claim; Answer

The substantive portion of this claim, which was filed by *pro se* Claimant George Chavis, reads as follows:

On date of 8-22-98, my mother and brothers (2), had visited me at Lakeview Prison, at an "unauthorized" time, due to false information given them over the phone by my vindictive SHU-Counselor, on 8-11-98, resulting in loss of travel expenses by my family members.

Claimant served a Notice of Intention on September 11, 1998 (Lonergan Affidavit, Exhibit A), and the Claim was filed and served in May 1999. In its answer, the State raised the following as its fifth affirmative defense:

The claim is inappropriately brought, as the Claimant is not authorized to practice law under the New York State Judiciary Law. As such, Claimant cannot bring an action on behalf of his family members.

Defendant now moves for an order dismiss the claim on this ground.

CPLR 321(a) provides that an adult party "may prosecute or defend a civil action in person or by attorney," and Judiciary Law § 478 makes it unlawful

Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)
**(Cite as: 2008 WL 508694 (N.D.N.Y.))**

for persons who have not been admitted to practice law to appear as or hold themselves out as attorneys. Claimant has made no submission in opposition to Defendant's motion and, because he expressly indicates that he has brought this action *"pro se,"* I have no option but to conclude that he has neither the authority to represent his family members in this matter nor a claim to assert on his own behalf.

**\*16** Defendant's motion is granted, and Claim No. 100419 is dismissed.

September 19, 2001

Rochester, New York

HON. PHILIP J. PATTI Judge of the Court of Claims

N.D.N.Y.,2008.
Chavis v. Curlee
Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,
v.
Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln
Work-Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe # 1,
Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.
No. Civ.A. 95CV1641RSPDS.

Sept. 22, 1997.
Kenneth Brown, State Court Institute-Greene,
Waynesburg, PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman
Stewart, Doe # 1, Doe # 2, and Williams, Jeffrey M.
Dvorin, Assistant Attorney General, Carl N. Lundberg,
Chief Legal Counsel, South Carolina Department of
Probation, Columbia, SC, for defendants Bishop, Magee,
Barton, McMahan, and Stanford, Carl N. Lundberg, of
Counsel.

## DECISION AND ORDER

POOLER, J.
   *1 The above matter comes to me following a
Report-Recommendation by Magistrate Judge Daniel
Scanlon, Jr., duly filed on April 17, 1997. Following ten
days from the service thereof, the Clerk has sent me the
entire file, including any and all objections filed by the
parties herein.

   Plaintiff Kenneth Brown commenced this Section

1983 civil rights action on November 17, 1995. On
February 12, 1996, Magistrate Judge Scanlon ordered
Brown to submit an amended complaint alleging the
specific acts committed by the individuals named as
defendants which Brown claimed violated his
constitutional rights. Brown filed an amended complaint
on March 21, 1996. In his amended complaint, Brown
alleged that defendants violated his rights under the Eighth
and Fourteenth Amendments by failing to process properly
his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact he
had never violated the conditions of his parole. For a more
complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

   On August 5, 1996, defendants Peters and Williams
made a motion to dismiss for failure to state a claim
pursuant to Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No.
14, at 2. On August 19, 1996, defendants Bishop, Magee,
Barton, and McMahan made a motion to dismiss the
complaint against them or, in the alternative, for summary
judgment. Dkt. No. 20. On October 17, 1996, defendants
Herman, Stewart, and Stanford made a motion to dismiss
for failure to state a claim. Dkt. No 34. On April 17, 1996,
Magistrate Judge Scanlon recommended that all
defendants' motions to dismiss be granted and that the
complaint be dismissed. Dkt. No. 50.

   On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave
to file a second amended complaint and a copy of his
proposed amended complaint. Dkt. No. 53. I turn first to
the last motion filed, Brown's motion for leave to amend
his complaint a second time.

   Brown seeks to file a second amended complaint
"setting forth in detail the personal involvement of each
defendant and how their acts of commission and omission
served to deprive plaintiff of Constitutionally secured
rights." Dkt. No. 53. The district court has discretion
whether to grant leave to amend. Ruffolo v. Oppenheimer

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

& Co., 987 F.2d 129, 131 (2d Cir.1993). In exercising that discretion, the court should freely grant leave to amend when justice so requires. Fed.R.Civ.P. 15(a). However, the court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional allegations against the named defendants. However, the additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss-the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir.1987).

*2 Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." Smiley v. Davis, 1988 WL 78306, *2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to

allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a de novo determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for pro se pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. See Camardo v. General Motors Hourly-Rate Employees Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); Chambrier v. Leonardo, 1991 WL

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

44838, *1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, *2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, *1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, *1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[FN1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

> FN1. I note, however, that the report-recommendation would survive even *de novo* review.

### CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

### ORDER and REPORT-RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

### BACKGROUND

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1-2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5-7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8-10.

In February, 1993, plaintiff was arrested on robbery

charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11-14; Exs. C-J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15-17; Exs. F-I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. See LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir.1991) (citing Ortiz v. Cornette, 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dismiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their]] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.
E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart

and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

N.D.N.Y.,1997.

Brown v. Peters
Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Larry TINSLEY, Plaintiff,
v.
Gary GREENE, Deputy Superintendent of Great
Meadow Correctional Facility; Jim Lanfear,
Maintenance Supervisor, Great Meadow Correctional
Facility; Gary Yule, Corrections Officer, Great Meadow
Correctional Facility; and David Roberts, Senior
Counselor, Great Meadow Correctional Facility,
Defendants.
**No. 95-CV-1765 (RSP/DRH).**

March 31, 1997.

Larry Tinsley, Pro Se.

Dennis C. Vacco, New York State Attorney General,
Darren O'Connor, Assistant Attorney General, of counsel,
for Defendants.

ORDER

POOLER, District Judge.

**\*1** The above matter comes to me following a
report-recommendation and order by Magistrate Judge
David R. Homer, duly filed on the 13th day of September,
1996. Dkt. No. 24. Following ten days from the service
thereof, the clerk has sent me the entire file, including any
objections thereto. Plaintiff Larry Tinsley filed objections.
Dkt. Nos. 25, 26.

In his report-recommendation, Magistrate Judge Homer
advises that Tinsley failed to establish or raise a genuine
issue of material fact regarding the nature of his

confinement. Report-recommendation, Dkt. No. 24, at
9-10. There is no dispute that prison officials confined
Tinsley to keeplock and loss of some privileges for 60
days after they conducted a search of his cell, found a
marijuana cigarette in the cell, and found Tinsley guilty of
possessing a controlled substance after a Tier III
disciplinary hearing. Tinsley's conviction and sentence
were affirmed on administrative appeal. In his lawsuit
under 42 U.S.C. § 1983, Tinsley raises several charges to
the manner in which defendants conducted the search and
disciplinary hearing. However, Tinsley failed to specify in
any manner that his punishment posed an "atypical and
significant hardship on [him] in relation to the ordinary
incidents of prison life." *Sandin v. Connor,* 515 U.S. 472,
----, 115 S.Ct. 2293, 1300, 132 L.Ed.2d 418, ---- (1995).
Without this showing, plaintiff failed to allege a
deprivation of his Fourteenth Amendment due process
liberty interest, and his civil rights claim must fail. *Id.*

In his objections to the report-recommendation, Tinsley
makes general attacks regarding the alleged bias of
Magistrate Judge David Homer and argues that the
magistrate judge has misconstrued his claims. Plaintiff
also asks me to reconsider defendants' summary judgment
motion and review plaintiffs memorandum opposing the
motion. However, Tinsley has not raised any allegation
regarding the nature of his punishment, which is the
threshold issue under *Sandin.* I have reviewed the entire
file in this matter, including plaintiff's many submissions,
and I find that he failed to raised any issue of fact to
support an alleged deprivation of his due process liberty
interests. Magistrate Judge Homer's thorough
report-recommendation is neither biased nor a
mischaracterization of plaintiffs claims.

For the foregoing reasons, it is therefore

ORDERED that the report-recommendation of September
13, 1996, is approved, and

ORDERED that plaintiffs' motion for default summary
judgment is denied as moot, and

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

ORDERED that defendants' motion for summary judgment is granted, and it is further

ORDERED that the clerk serve a copy of this order upon the parties by regular mail.

IT IS SO ORDERED.

HOMER, United States Magistrate Judge.

REPORT-RECOMMENDATION AND ORDER [FN1]

> **FN1.** This matter was referred to the undersigned for report and recommendation by United States District Judge Rosemary S. Pooler pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

The plaintiff a New York State Department of Correctional Services (DOCS) inmate currently confined at the Great Meadow Correctional Facility (Great Meadow), brought this pro se action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendants violated his rights under the Fourth and Fourteenth Amendments in connection with a search of his cell and ensuing disciplinary hearing. Plaintiff seeks compensatory and punitive damages as well as injunctive relief.

**\*2** Presently pending are defendants' motion for summary judgment (Docket No. 17), plaintiff's letter-memorandum requesting summary judgment by default (Docket No. 11), and plaintiff's motions for a pre-trial conference (Docket No. 20) and for appointment of counsel (Docket No. 21). For the reasons stated below, it is recommended that the defendants' motion be granted and that plaintiff's motions be denied.

## I. BACKGROUND

On October 30, 1995, while plaintiff was incarcerated at Great Meadow, defendant Greene received information from a confidential source that plaintiff was concealing escape materials. Defendant Greene ordered the search of plaintiff's prison cell. The search was executed by

Corrections Officer Rando and defendant Yule and was supervised by Sergeant Smith. No escape materials were found. However, the officers found a rolled cigarette in plaintiff's cell. The cigarette tested positive for marijuana. Plaintiff was placed in keeplock [FN2] and was given a contraband receipt for the cigarette that was removed from his cell.

> **FN2.** "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." *Green v. Bauvi,* 46 F.3d 189, 192 (2d Cir.1995); N.Y. Comp.Codes R. & Regs. tit. 7, § 301.6 (1995).

Plaintiff was served with a misbehavior report which charged him with possession of a controlled substance. A Tier III disciplinary hearing [FN3] was commenced on November 3, 1995 before defendant Lanfear as the hearing officer. During the hearing, plaintiff claimed that defendant Greene failed to corroborate the reliability of the confidential informant, the search was improperly supervised, he did not receive the requisite contraband slip, defendants did not remove any contraband item from plaintiff's cell, and defendants failed to sign the misbehavior report. Plaintiff also objected when witnesses were not called in the order he had requested.

> **FN3.** DOCS regulations provide for three tiers of disciplinary hearings depending on the seriousness of the misconduct charged. A Tier III hearing, or superintendent's hearing, is required whenever disciplinary penalties exceeding thirty days may be imposed. N.Y. Comp.Codes R. & Regs. tit. 7, §§ 254.7(iii), 270.3(a) (1995); *Walker v. Bates,* 23 F.3d 652, 654 (2d Cir.1994), *cert. denied,* 515 U.S. 1157, 115 S.Ct. 2608, 132 L.Ed.2d 852 (1995).

At the conclusion of the hearing on November 7, 1995, defendant Lanfear found plaintiff guilty based upon the

statement in the misbehavior report submitted by C.O. Rando endorsed by C.O. Yule. Testimony during hearing by C.O. Yule verified the report and stated the substance

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

was found in Tinsley's cell. Testimony during hearing by Sgt. Sawyer stated he received the item found by C.O. Rando and tested same which proved positive for controlled substance. Testimony was considered during hearing by Tinsley.

Defs.' Statement Pursuant to Rule 7.1(f) (Docket No. 17), Ex. A, p. 16. Plaintiff was sentenced to confinement in keeplock for sixty days and loss of packages, commissary and telephone privileges for sixty days. Shortly after this action was commenced, plaintiff's conviction and sentence were affirmed on administrative appeal.

## II. SUMMARY JUDGMENT

### A. Legal Standard

Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party. *Federal Deposit Ins. Corp. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994); *see also Heyman v. Commerce and Industry Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975). Once the moving party has provided sufficient evidence to support a motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial" and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Fed.R.Civ.P. 56(e); *accord Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525-26 (2d Cir.1994).

**\*3** The trial court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmovant. *American Cas. Co. of Reading Pa. v. Nordic Leasing, Inc.,* 42 F.3d 725, 728 (2d Cir.1994); *see also Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985). The nonmovant may defeat summary judgment by producing specific facts showing that there is a genuine issue of material fact for trial. *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. Discussion

The defendants move for summary judgment on the grounds that (1) plaintiff's due process allegations fail to state a claim, (2) plaintiff's hearing was conducted in accordance with constitutional requirements, (3) the search of plaintiff's cell did not violate any of plaintiff's constitutional rights, and (4) defendants are entitled to qualified immunity.

#### 1. Due Process Liberty Interest

Plaintiff contends that his due process rights were violated because the November 3-7, 1995 disciplinary hearing was improperly executed, and as a result, he was wrongly confined to sixty days keeplock.[FN4] In their motion for summary judgment, defendants contend that under *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), plaintiff lacked any liberty interest protected by the Due Process Clause.

> **FN4.** New York regulations permit placement in keeplock for both disciplinary and administrative reasons. These include, among others, punishment for misconduct and protective custody. N.Y. Comp.Codes R. & Regs. tit. 7, § 301.1-.7 (1995).

A due process claim as alleged by plaintiff will lie under section 1983 only where the alleged violation infringed a cognizable liberty interest. *Allison v. Kyle,* 66 F.3d 71, 74 (5th Cir.1995). Under *Sandin,* a court must first determine whether the deprivation of which an inmate complains merits the protections afforded by the Due Process Clause. A protected liberty interest

will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force. nonetheless imposes *atypical and*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

*significant hardship on the inmate in relation to the ordinary incidents of prison life.*

*Id.* at 2300 (emphasis added). The Court held that confinement of the plaintiff for thirty days in a segregated housing unit infringed no liberty interest protected by the Due Process Clause. *Id.* at 2302.

At first blush *Sandin* appeared to mark a radical change in the litigation of inmates' due process claims. It appeared to suggest that the number of sufficiently stated claims would be drastically reduced. *See Orellana v. Kyle,* 65 F.3d 29, 31-32 (5th Cir.1995), *cert. denied,* 516 U.S. 1059, 116 S.Ct. 736, 133 L.Ed.2d 686 (1996) ("it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional 'liberty' status.... [T]he ambit of [inmates'] due process liberty claims has been dramatically narrowed.").

Indeed, several circuit courts have rejected prisoners' due process claims under *Sandin* where the deprivation complained of was solely confinement in segregated housing. *See, e.g., Pichardo v. Kinker,* 73 F.3d 612, 613 (5th Cir.1996) (indefinite confinement in administrative segregation for affiliation with gang not atypical and significant under *Sandin* ); *Luken v. Scott,* 71 F.3d 192, 193 (5th Cir.1995), *cert. denied,* 517 U.S. 1196, 116 S.Ct. 1690, 134 L.Ed.2d 791 (1996) (segregation without more implicates no liberty interest); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir.1995)(placement in administrative segregation not atypical and significant in context of life sentence).

*4 Several judges in this district have adopted this position. *See Polanco v. Allan,* No. 93-CV-1498, 1996 WL 377074, at *2 (N.D.N.Y. July 5, 1996) (McAvoy, C.J.) (confinement in a special housing unit (SHU) for up to one year not protected by Due Process Clause); *Figueroa v. Selsky,* No. 91-CV-510 (N.D.N.Y. Oct. 5, 1995) (Scullin, J.) (seven and one-half months in SHU not protected); *Delaney v. Selsky,* 899 F.Supp. 923, 927 (N.D.N.Y.1995) (McAvoy, C.J.) (197 days in SHU not protected); *Ocasio v. Coughlin,* No. 94-CV-530 (N.D.N.Y. Feb. 5, 1996) (Scullin, J.) (180 days in SHU not protected); *Gonzalez v. Coughlin,* No. 94-CV-1119

(N.D.N.Y. Jan. 10, 1996) (Report-Recommendation of M.J. Hurd) (163 days in keeplock not protected), *adopted,* (N.D.N.Y. May 6, 1996) (Cholakis, J.), *appeal docketed,* No. 96-2494 (2d Cir. June 10, 1996); *Taylor v. Mitchell,* No. 91-CV-1445 (N.D.N.Y. Feb. 5, 1996) (Cholakis, J.) (sixty days in SHU not protected); *Cargill v. Casey,* No. 95-CV-1620, 1996 WL 227859, at *2 (N.D.N.Y. May 2, 1996) (Pooler, J.) (dismissing as frivolous complaint alleging due process violation resulting in keeplock confinement for thirty days). Under these cases, based solely on its duration, plaintiff's confinement in keeplock for sixty days would not constitute a cognizable liberty interest under *Sandin.*

Other circuits, however, have viewed *Sandin* less as a durational, bright line bar to statement of a claim than as an additional issue of fact for litigation. *See, e.g., Bryan v. Duckworth,* 88 F.3d 431, 433-34 (7th Cir.1996) (question of fact whether disciplinary segregation was atypical and significant under *Sandin* ); *Williams v. Fountain,* 77 F.3d 372, 374 n. 3 (11th Cir.1996) (noting *Sandin* decided by only 5-4 majority and holding that segregation for one year provided basis for assuming atypical and significant deprivation under *Sandin* ); *Gotcher v. Wood,* 66 F.3d 1097, 1101 (9th Cir.1995) (placement in disciplinary segregation presents issue of fact whether it constitutes an atypical and significant deprivation under *Sandin* ).

The Second Circuit appears generally to be following the Seventh, Ninth and Eleventh Circuits. The Second Circuit has not yet definitively addressed the effect of *Sandin* on its prior holdings. *See Rodriguez v. Phillips,* 66 F.3d 470, 480 (2d Cir.1995). It has recently held, however, that *Sandin* does apply retroactively and, it appears, that a plaintiff bears the burden of proving that the deprivation in question imposed an atypical and significant hardship. *See Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996); *Samuels v. Mockry,* 77 F.3d 34, 37-38 (2d Cir.1996); *see also Giakoumelos v. Coughlin,* 88 F.3d 56, 62 (2d Cir.1996) (dicta that whether confinement in SHU is "atypical and significant" under *Sandin* presents question of fact). One judge in this district has concluded from these cases that fact-finding is required to resolve whether a deprivation is atypical and significant. *Compare Silas v. Coughlin,* No. 95-CV-1526, 1996 WL 227857, at *1 (N.D.N.Y. April 29, 1996) (Pooler, J.) (denying motion to dismiss due process claim where plaintiff was confined in SHU for 182 days, holding that Second Circuit's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

interpretation of *Sandin* mandated further fact-finding as to nature of plaintiff's alleged deprivation from confinement), *with Cargill v. Casey, supra* (due process claim based on confinement in keeplock for thirty days dismissed as frivolous).

**\*5** Under these cases, consideration must be given to whether a plaintiff has established, or raised, a genuine question of fact concerning his disciplinary confinement. Here, plaintiff has raised no question of fact concerning his confinement in keeplock. Plaintiff has not alleged rare, unique or unusual hardships of the kind cited in *Sandin* as examples of atypical and significant deprivations. 515 U.S. at ----, 115 S.Ct. at 2300 (transfer to a mental hospital and involuntary administration of psychotropic drugs), or that detention in keeplock imposed a hardship on plaintiff because of his special, unique or unusual condition while incarcerated. *See Delaney v. Selsky,* 899 F.Supp. at 927-28 (question of fact whether confinement in SHU created atypical and significant deprivation for inmate who alleged such confinement caused back problems because of his unusual height of nearly seven feet).

Segregated confinement is a known and usual aspect of incarceration in the New York prison system. *See Sandin v. Conner,* 515 U.S. at ----, 115 S.Ct. at 2301 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). The existence of keeplock has been authorized by statute, N.Y. Correct. Law § 112(1) (McKinney 1987), and implemented by DOCS regulations. N.Y. Comp.Codes R. & Regs. tit. 7, § 301.6 (1995). Those regulations describe the conditions and restrictions of confinement in keeplock. *Id.* at pts. 302-05. The deprivations are, therefore, part of the New York prison "regime ... to be normally expected" by one serving a sentence in that system. *Sandin v. Conner,* 515 U.S. at ----, 115 S. Ct. at 2302.

Moreover, confinement in keeplock or SHU may result not only from the imposition of discipline, as here. Inmates may also be placed in keeplock or SHU for reasons of administration, N.Y. Comp.Codes R. & Regs. tit. 7, § 301.4(b) (1995); protection, *id.* at § 301.5; detention, *id.* at § 301.3; reception, diagnosis and treatment, *id.* at pt. 306; or for any other reason. *Id.* at 301.7(a). The conditions for inmates confined in keeplock,

including plaintiff, are the same regardless of the reason for placement there. *Id.* at pts. 302-05.[FN5]

> FN5. Inmates confined for reasons of protection receive somewhat greater privileges. *See, e.g.,* N.Y. Comp.Codes R. & Regs. tit. 7, § 330.4 (1995) (three hours per day outside cell).

Inmates in the New York system have no right to be incarcerated in any particular institution, cell or block of cells, nor do they enjoy a right to be housed in the general prison population or to participate in any particular program offered at an institution. *Cf. Meachum v. Fano,* 427 U.S. 215, 226, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (no right to remain in particular prison created by state law); *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (right to good time credits created by state statute). Such matters are committed to the discretion of prison authorities. This grant of broad discretion to prison authorities comports with a principle rationale of *Sandin* that

federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment.... Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life, a common subject of prisoner claims....

**\*6** 515 U.S. at ---- - ----, 115 S.Ct. at 2299-2300.

Here, plaintiff contends at best that his keeplock confinement was "atypical and significant" under *Sandin* because it subjected him to retaliation, caused closer monitoring by DOCS, affected his transfer to other institutions, and impaired his eligibility for certain prison programs. Pl. Mem. of Law at p. 21. These contentions are conclusory and unsupported in any way. They are also unsworn and unsigned. For these reasons alone, plaintiff's contentions should be rejected as failing to raise any issue of fact under *Sandin.*

On their merits as well, however, these contentions should be rejected. While there may be cases where confinement in keeplock might subject an inmate to retaliation from

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

other inmates or guards such that keeplock confinement imposed "atypical and significant" hardships, no such hardship has been demonstrated here by the non-specific, conclusory assertions of plaintiff. As to the contentions regarding plaintiff's monitoring status and his eligibility for transfer and prison programs, all concern matters for which plaintiff has no special rights or interests, all were known to follow from disciplinary confinement as a regular part of DOCS' regime, and plaintiff has asserted no hardship atypical or significant as to him concerning these matters.

For these reasons plaintiff has failed to meet his burden of demonstrating the existence of any factual issue under *Sandin.* Accordingly, defendants' motion on this ground should be granted.

2. Due Process

Defendants assert that, notwithstanding *Sandin,* plaintiff was not denied due process.

The Due Process Clause requires that an inmate faced with disciplinary confinement has a right to at least twenty-four hours advance notice of the charges against him and to be informed of the reasons for the action taken and the evidence relied upon by the hearing officer. In addition, an inmate has the right to call witnesses and present evidence in his defense "when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell,* 418 U.S. 539, 564-66, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *McCann v. Coughlin,* 698 F.2d 112, 121-22 (2d Cir.1983). These rights implicitly include the right to make a statement in the inmate's defense and the right to marshal the facts. *See Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *see also Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986).

Where an inmate is illiterate or where the charges are unusually complex, the inmate is entitled to seek the assistance of another inmate or an employee. *Wolff v. McDonnell,* 418 U.S. at 570. The Second Circuit has extended this right, and directed that inmates who are

confined pending a hearing be provided with some form of assistance. *Eng v. Coughlin,* 858 F.2d 889, 897-98 (2d Cir.1988). Corrections officials are required only to provide inmates with the opportunity to exercise these due process rights. *See, e.g., Maiid v. Henderson,* 533 F.Supp. 1257, 1273 (N.D.N.Y.), *aff'd,* 714 F.2d 115 (2d Cir.1982) ("although [the inmate] had the right to call witnesses at his hearing, there is no evidence in the record that he ever invoked this right").

**\*7** Here, plaintiff argues first that the hearing officer failed to call witnesses in the requested order. However, due process does not mandate that plaintiff be permitted to call his witnesses in a particular order.

Second, plaintiff alleges that the hearing officer failed to conduct an in camera inquiry into the original source of information on which the search was authorized to determine if that source was reliable. However, the issues at the hearing were the results of the search, not the reasons why the search was initiated. The hearing officer's decision did not rest in any part on the information from the confidential informant. Due process thus did not require inquiry into the reliability of the original information.

Third, plaintiff contends that although the original misbehavior report contains the signatures of both defendant Yule and Officer Rando, his copy reflects only defendant Yule's signature. However, an inmate has no right to receive a statement of charges signed by any particular official.[FN6]

> FN6. A misbehavior report is to be made by the employee who has observed the incident. Where another employee has personal knowledge of the facts, he shall, where appropriate, endorse his name on the other employee's report. N.Y. Comp.Codes R. & Regs. tit. 7, § 251-3.1(b) (1995). The misbehavior report here was signed by J. Rando and endorsed by G. Yules as an employee witness, and it is endorsed by the area supervisor. *See* Defs.' Statement Pursuant to Rule 7.1(f), Ex. A, p. 1, Inmate Misbehavior Report.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

Fourth, plaintiff claims that defendant Roberts failed to provide him with various documents plaintiff requested pursuant to New York's Freedom of Information Law after the disciplinary hearing concluded. This claim as well falls outside the scope of the Due Process Clause as described by the cases discussed above. Defendants' failure to provide the requested documents did not violate plaintiff's constitutional right.

Accordingly, defendants' motion should be granted on this ground as well. FN7

> FN7. Throughout his complaint and pleadings, plaintiff refers jointly to his right to due process/equal protection. The facts and arguments in plaintiff's complaint and pleadings point only to a due process claim. No facts or arguments relating to the Equal Protection Clause are asserted. Nevertheless, to the extent plaintiff's complaint is deemed to assert a claim for violation of the Equal Protection Clause, defendants' motion for summary judgment should be granted as to that claim as well.

3. Cell Search

Plaintiff alleges that the search of his cell on October 30, 1995 violated his Fourth Amendment protection against unreasonable searches and seizures. FN8 In *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Id.* at 526. Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights. *DeMaio v. Mann,* 877 F.Supp. 89, 95 (N.D.N.Y.1995) (Kaplan, J.). Plaintiff thus may assert no cause of action here based on an alleged violation of his Fourth Amendment rights. FN9 Defendants' motion for summary judgment as to claims regarding the search of plaintiff's cell should be granted.

> FN8. In his complaint plaintiff also appears to allege that the search violated his Fourteenth Amendment right to due process because he received a receipt for the seizure of the

marijuana five hours after the search was conducted and never received any report of the search. To the extent plaintiff asserts such a claim, summary judgment should be granted to the defendants for the reasons set forth in subsections 1 and 2 above.

> FN9. Nor can an inmate recover under section 1983 for intentional destruction of his personal property by a state employee, as long as the state provides a meaningful post-deprivation remedy. *Hudson v. Palmer,* 468 U.S. at 533. New York provides such a remedy in section 9 of the New York Court of Claims Act. *Smith v. O'Connor,* 901 F.Supp. 644, 647 (S.D.N.Y.1995). Plaintiff may pursue any claim regarding destruction of his personal property in state court.

4. Qualified Immunity

Defendants argue in the alternative that they are entitled to summary judgment on the ground of qualified immunity.

A government official is entitled to qualified immunity if his or her conduct did not violate "a clearly established" constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Wright v. Smith,* 21 F.3d 496, 500 (2d Cir.1994). The contours of the right must be established to the extent that a reasonable official would recognize his acts violated that right. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The following factors must be considered to determine whether a right is clearly established:

**8** (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question, and (3) whether under pre-existing law a reasonable defendant official would have understood that his or her acts were unlawful.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). A determination in favor of a public officer based on qualified immunity is appropriate when, at the time the officer was acting, the right in question was not clearly established or, even if the right was established, it was not objectively reasonable for the official to recognize that his conduct violated the right. *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993); *Ying Jing Gan v. City of New York,* 996 F.2d 522 (2d Cir.1993).

Here, among other reasons, the defendants could not reasonably have known that the search of plaintiff's cell violated any of his Fourth Amendment rights or that plaintiff's due process rights were violated by the failure to call witnesses in the order requested by plaintiff. *Cf. Walker v. Bates,* 23 F.3d 652, 656-57 (2d Cir.1994), *cert. denied,* 515 U.S. 1157, 115 S.Ct. 2608, 132 L.Ed.2d 852 (1995) (prison disciplinary hearing officer entitled to qualified immunity in suit claiming violation of due process from denial of prisoner's right to call witnesses in disciplinary hearing); *Cookish v. Powell,* 945 F.2d 441, 449 (1st Cir.1991) (prison official entitled to qualified immunity from charge of violating prisoner's Fourth Amendment rights by conducting body cavity search in view of prison guards of opposite sex). Therefore, the defendants' motion on this ground should be granted.

### III. APPOINTMENT OF COUNSEL

Also pending is a renewed application by plaintiff for appointment of counsel (Docket No. 21). A review of the file in this matter reveals that the issues in dispute in this case are not overly complex. Further, there has been no indication that plaintiff has been unable to investigate the critical facts of this case. Finally, no special reason appears why appointment of counsel at this time would be more likely to lead to a just determination of this litigation. Therefore, based upon the existing record in this case, appointment of counsel is unwarranted.[FN10]

> **FN10.** Also pending is plaintiff's motion for a pre-trial conference and evidentiary hearing (Docket No. 23). This motion is untimely and is hereby denied. Plaintiff has also moved for summary judgment by default (Docket No. 11) in

response to defendants' request for an extension of time to answer the complaint. This extension was granted by order dated March 15, 1996 and defendants have answered. Accordingly, it is recommended that this motion be denied as moot.

### IV. CONCLUSION

WHEREFORE, for the reasons stated above, it is

RECOMMENDED that defendants' motion for summary judgment be GRANTED; and it is further

RECOMMENDED that plaintiff's motion for summary judgment by default be DENIED; and it is hereby

ORDERED that plaintiff's renewed motion for appointment of counsel is DENIED without prejudice; and it is further

ORDERED that plaintiff's motion for a pre-trial conference and an evidentiary hearing is DENIED; and it is further

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon the parties to this action.

**\*9** Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1997.
Tinsley v. Greene

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.


--- F.3d ----, 2014 WL 3360615 (C.A.2 (N.Y.))
**(Cite as: 2014 WL 3360615 (C.A.2 (N.Y.)))**

H

Only the Westlaw citation is currently available.

United States Court of Appeals,
Second Circuit.
Darryl HOLLAND, Plaintiff–Appellant,
v.
Glenn S. GOORD, in his individual capacity, An-
thony J. Annuci, in his official capacity as Acting
Commissioner of the Department of Corrections
and Community Supervision, Anthony F. Zon, in
his individual capacity and official capacity as
Former Superintendent, Wende Correctional Facil-
ity, Thomas Schoellkopf, in his individual capacity
and official capacity as Hearing Officer, Wende
Correctional Facility, John Barbera, in his individu-
al capacity and official capacity as Correctional Of-
ficer, Wende Correctional Facility, Martin Kearney,
in his individual capacity and official capacity as
Captain, Wende Correctional Facility, Defend-
ants–Appellees,
Jay Wynkoop, in his individual capacity and offi-
cial capacity as the Watch Commander and/or
Keeplock Review Officer, Wende Correctional Fa-
cility, Defendant.FN*

No. 13–2694–PR.
Argued: April 10, 2014.
Decided: July 10, 2014.

**Background:** State inmate filed § 1983 action al-
leging that prison officials burdened his religious
exercise, in violation of Free Exercise Clause and
Religious Land Use and Institutionalized Persons
Act (RLUIPA), when they ordered him to provide
urine sample while he fasted in observance of Ra-
madan, breached his due process rights, and retali-
ated against him. The United States District Court
for the Western District of New York, Telesca, J.,
2013 WL 3148324, entered summary judgment in
officials' favor, and inmate appealed.

**Holdings:** The Court of Appeals, Debra Ann Liv-
ingston, Circuit Judge, held that:

(1) officials substantially burdened Muslim in-
mate's free exercise rights;

(2) inmate's claim for injunctive relief was moot;

(3) RLUIPA did not authorize monetary damages;

(4) official did not violate inmate's right to due pro-
cess; and

(5) officials did not take any disciplinary action
against inmate because of his religion.

Affirmed in part, vacated in part, and re-
manded.

West Headnotes

**[1] Constitutional Law 92 ⟐1425**

92 Constitutional Law
　92XIII Freedom of Religion and Conscience
　　92XIII(B) Particular Issues and Applications
　　　92k1421 Prisons and Pretrial Detention
　　　　92k1425 k. Diet; Meals. Most Cited
Cases

**Prisons 310 ⟐154**

310 Prisons
　310II Prisoners and Inmates
　　310II(B) Care, Custody, Confinement, and
Control
　　　310k151 Religious Practices and Materi-
als
　　　　310k154 k. Diet and Meals. Most
Cited Cases

State prison officials substantially burdened
Muslim inmate's free exercise rights, in violation of
First Amendment, when they ordered him to drink
water in order to provide urine sample while he fas-
ted in observance of Ramadan; breaking his fast
prior to sunset would have been grave sin, regard-
less whether atonement was possible. U.S.C.A.
Const.Amend. 1.

**[2] Constitutional Law 92 ⟐1422**

92 Constitutional Law

92XIII Freedom of Religion and Conscience

92XIII(B) Particular Issues and Applications

92k1421 Prisons and Pretrial Detention

92k1422 k. In General. Most Cited Cases

In determining whether generally applicable prison policy that burdens inmate's right to free exercise of religion is reasonably related to legitimate penological interests, and thus is permissible under First Amendment, court must consider: whether challenged regulation or official action has valid, rational connection to legitimate governmental objective; whether prisoners have alternative means of exercising burdened right; impact on guards, inmates, and prison resources of accommodating right; and existence of alternative means of facilitating exercise of right that have only de minimis adverse effect on valid penological interests. U.S.C.A. Const.Amend. 1.

**[3] Civil Rights 78 ⟜1376(2)**

78 Civil Rights

78III Federal Remedies in General

78k1372 Privilege or Immunity; Good Faith and Probable Cause

78k1376 Government Agencies and Officers

78k1376(2) k. Good Faith and Reasonableness; Knowledge and Clarity of Law; Motive and Intent, in General. Most Cited Cases

To assess defendant's entitlement to qualified immunity, court must consider both clarity of law establishing right allegedly violated as well as whether reasonable person, acting under circumstances then confronting defendant, would have understood that his actions were unlawful. 42 U.S.C.A. § 1983.

**[4] Injunction 212 ⟜1066**

212 Injunction

212I Injunctions in General; Permanent Injunctions in General

212I(B) Factors Considered in General

212k1066 k. Mootness and Ripeness; In-

effectual Remedy. Most Cited Cases

While defendant's voluntary cessation of challenged practice does not deprive federal court of its power to determine practice's legality, it is nonetheless important factor bearing on question whether court should exercise its power to entertain request for injunctive relief or declare it moot.

**[5] Federal Courts 170B ⟜2201**

170B Federal Courts

170BIII Case or Controversy Requirement

170BIII(C) Objections, Proceedings, and Determination

170Bk2199 Evidence; Affidavits

170Bk2201 k. Presumptions and Burden of Proof. Most Cited Cases

Defendant claiming that its voluntary compliance moots case bears formidable burden of showing that it is absolutely clear allegedly wrongful behavior could not reasonably be expected to recur.

**[6] Civil Rights 78 ⟜1454**

78 Civil Rights

78III Federal Remedies in General

78k1449 Injunction

78k1454 k. Criminal Law Enforcement; Prisons. Most Cited Cases

State inmate's claim for injunctive relief prohibiting prison officials from ordering Muslim inmates to drink water while he fasted in observance of Ramadan in order to provide urine sample was rendered moot by department of corrections adoption of directive prohibiting such orders, where directive was adopted in response to inmate's complaint, inmate succeeded in his administrative appeal, and officials abandoned on appeal their argument that conduct at issue was constitutional.

**[7] Civil Rights 78 ⟜1354**

78 Civil Rights

78III Federal Remedies in General

78k1353 Liability of Public Officials

78k1354 k. In General. Most Cited Cases

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Religious Land Use and Institutionalized Persons Act (RLUIPA) does not authorize claims for monetary damages against state officers in either their official or individual capacities. Religious Land Use and Institutionalized Persons Act of 2000, § 3(a), 42 U.S.C.A. § 2000cc–1(a).

**[8]** Prisons 310 ⟶289(3)

310 Prisons
   310II Prisoners and Inmates
    310II(H) Proceedings
     310k279 Requisites, Course, and Conduct of Proceedings
      310k289 Evidence and Witnesses
       310k289(3) k. Right to Present Evidence and Witnesses. Most Cited Cases

Inmate facing disciplinary proceedings should ordinarily be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.

**[9]** Prisons 310 ⟶289(3)

310 Prisons
   310II Prisoners and Inmates
    310II(H) Proceedings
     310k279 Requisites, Course, and Conduct of Proceedings
      310k289 Evidence and Witnesses
       310k289(3) k. Right to Present Evidence and Witnesses. Most Cited Cases

Right to call witnesses is limited in prison context by penological need to provide swift discipline in individual cases, and by very real dangers in prison life that may result from violence or intimidation directed at either other inmates or staff.

**[10]** Prisons 310 ⟶285

310 Prisons
   310II Prisoners and Inmates
    310II(H) Proceedings
     310k279 Requisites, Course, and Conduct of Proceedings

      310k285 k. Disclosure and Discovery. Most Cited Cases

**Prisons 310 ⟶289(3)**

310 Prisons
   310II Prisoners and Inmates
    310II(H) Proceedings
     310k279 Requisites, Course, and Conduct of Proceedings
      310k289 Evidence and Witnesses
       310k289(3) k. Right to Present Evidence and Witnesses. Most Cited Cases

Prison officials must have necessary discretion to keep inmate disciplinary hearing within reasonable limits and to refuse to call witnesses that may create risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence.

**[11]** Constitutional Law 92 ⟶4824

92 Constitutional Law
   92XXVII Due Process
    92XXVII(H) Criminal Law
     92XXVII(H)11 Imprisonment and Incidents Thereof
      92k4824 k. Discipline and Classification. Most Cited Cases

Prison officials' refusal to call witnesses at inmate disciplinary hearing whose testimony would be redundant is not violation of any established due process right. U.S.C.A. Const.Amend. 14.

**[12]** Constitutional Law 92 ⟶4824

92 Constitutional Law
   92XXVII Due Process
    92XXVII(H) Criminal Law
     92XXVII(H)11 Imprisonment and Incidents Thereof
      92k4824 k. Discipline and Classification. Most Cited Cases

**Prisons 310 ⟶291(3)**

310 Prisons
   310II Prisoners and Inmates
     310II(H) Proceedings
       310k279 Requisites, Course, and Conduct of Proceedings
         310k291 Weight and Sufficiency of Evidence
           310k291(3) k. Discipline and Misconduct. Most Cited Cases

Hearing officer at prison disciplinary hearing did not violate inmate's right to due process when he refused to permit inmate to call his imam as witness to establish that, as practicing Muslim, inmate was unable to drink water at time he was ordered to provide urine sample, where inmate had already testified to that fact and hearing officer did not discredit his statement. U.S.C.A. Const.Amend. 14.

**[13] Constitutional Law 92 ⇛2279**

92 Constitutional Law
   92XVIII Freedom of Speech, Expression, and Press
     92XVIII(Z) Prisons and Pretrial Detention
     92k2278 Retaliation in General
       92k2279 k. In General. Most Cited Cases

To prevail on First Amendment retaliation claim, inmate must establish that: (1) speech or conduct at issue was protected, (2) defendant took adverse action against plaintiff, and (3) there was causal connection between protected conduct and adverse action. U.S.C.A. Const.Amend. 1.

**[14] Constitutional Law 92 ⇛1036**

92 Constitutional Law
   92VI Enforcement of Constitutional Provisions
     92VI(C) Determination of Constitutional Questions
     92VI(C)4 Burden of Proof
       92k1032 Particular Issues and Applications
         92k1036 k. First Amendment in General. Most Cited Cases

**Constitutional Law 92 ⇛1196**

92 Constitutional Law
   92X First Amendment in General
     92X(B) Particular Issues and Applications
     92k1193 Prisons
       92k1196 k. Retaliation. Most Cited Cases

Inmate asserting First Amendment retaliation claim bears burden of showing that protected conduct was substantial or motivating factor in prison officials' disciplinary decision, and official then bears burden of establishing that disciplinary action would have occurred even absent retaliatory motivation, which he may satisfy by showing that inmate committed prohibited conduct charged in misbehavior report. U.S.C.A. Const.Amend. 1.

**[15] Constitutional Law 92 ⇛1422**

92 Constitutional Law
   92XIII Freedom of Religion and Conscience
     92XIII(B) Particular Issues and Applications
     92k1421 Prisons and Pretrial Detention
       92k1422 k. In General. Most Cited Cases

**Prisons 310 ⇛152**

310 Prisons
   310II Prisoners and Inmates
     310II(B) Care, Custody, Confinement, and Control
     310k151 Religious Practices and Materials
       310k152 k. In General. Most Cited Cases

State prison officials did not take any disciplinary action against Muslim inmate because of his religion, in violation of First Amendment, even though inmate's religious observation of Ramadan caused him to decline to provide urine sample, which in turn prompted disciplinary action, where officials would not have acted differently if he had declined to comply for reasons other than religion. U.S.C.A. Const.Amend. 1.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Appeal from the judgment of the United States District Court for the Western District of New York (Telesca, J.), granting the defendants' motion for summary judgment and denying the plaintiff's cross-motion for summary judgment as to the plaintiff's free exercise, retaliation, and due process claims brought pursuant to 42 U.S.C. § 1983, and his claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* Even assuming *arguendo* that the substantial burden requirement remains a necessary component of a plaintiff's free exercise claim, we conclude that the defendants' conduct placed such a burden on the plaintiff's free exercise rights. Accordingly, we vacate the district court's grant of summary judgment in the defendants' favor, based on its conclusion that the burden imposed here was *de minimis,* and we remand the plaintiff's § 1983 claim for damages under the First Amendment for further consideration of this claim. Because we also conclude that the plaintiff's claim for damages under RLUIPA is barred, that his claims for injunctive relief under RLUIPA and the First Amendment are moot, and that he has failed to state a claim for either a denial of due process or First Amendment retaliation, we affirm the grant of summary judgment in the defendants' favor on those claims.Jeffrey A. Wadsworth (Candace M. Curran, on the brief), Harter Secrest & Emery LLP, Rochester, N.Y., for Plaintiff–Appellant.

Kate H. Nepveu, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, and Andrew D. Bing, Deputy Solicitor General, on the brief), for Eric T. Schneiderman, Attorney General of the State of New York, New York, N.Y., for Defendants–Appellees.

Before JACOBS, CALABRESI, and LIVINGSTON, Circuit Judges.

DEBRA ANN LIVINGSTON, Circuit Judge:

**\*1** Plaintiff–Appellant Darryl Holland ("Holland"), an inmate and practicing Muslim, asserts that defendant prison officials Glenn Goord, Anthony J. Annuci, Anthony F. Zon, Thomas Schoellkopf, John Barbera, and Martin Kearney collectively, "Appellees") FN1 unconstitutionally burdened his religious exercise when they ordered him to provide a urine sample within a three-hour window—the time limit then permitted by prison regulations—while Holland fasted in observance of Ramadan, the holy month during which Muslims refrain from ingesting food and drink during daylight hours. Though Holland cited his fast to explain why he could not comply with the order or drink water to aid his compliance, Appellees did not permit Holland an opportunity to provide a urine sample after sunset when his fast had ended. Instead, when Holland failed timely to produce a sample, he was ordered confined in keeplock.FN2 In this ensuing lawsuit, Holland asserts that Appellees' order and disciplinary action infringed his rights under the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* Holland also asserts that his inability to call a witness during a subsequent disciplinary hearing resulted in a denial of due process under the Fourteenth Amendment, and that his confinement in keeplock amounted to First Amendment retaliation. Holland seeks damages and injunctive relief.

Following cross-motions for summary judgment, the district court (Telesca, *J.*) entered judgment in favor of Appellees. Significantly, the district court held that Holland could not prevail on his First Amendment free exercise and RLUIPA claims because Appellees' conduct had placed only a *de minimis* burden on Holland's religious exercise. *See Holland v. Goord,* No. 05 Civ. 6295(MAT), 2013 WL 3148324, at \*11–12 (W.D.N.Y. June 19, 2013). The district court also ruled that, in the alternative, Appellees were entitled to qualified immunity as to Holland's free exercise claims because Holland's right to an exception from the three-hour limit had not been clearly established at the time the order was given. *Id.* at \*8–10. Further, the district court

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

noted that RLUIPA does not support Holland's claim for money damages, *id.* at *7; it dismissed Holland's due process claim on the ground that Holland lacked a liberty interest in avoiding keeplock, *id.* at *5–6; and, finally, the court concluded that Holland's First Amendment retaliation claim was properly dismissed because Holland failed to raise any issue as to a retaliatory motive underlying his keeplock confinement, *id.* at *13–14.

On appeal, we conclude that the choice either to provide a urine sample by drinking water during his fast or to face disciplinary action placed a substantial burden on Holland's religious exercise. Accordingly, we vacate the district court's judgment insofar as it concerns Holland's claim for damages under the First Amendment's Free Exercise Clause and remand for further consideration of this claim. We affirm the remainder of the judgment, albeit largely on alternate grounds.

## BACKGROUND

**A. Facts**

**\*2** Holland was incarcerated in Wende Correctional Facility ("Wende") from 1999 until 2005, during which time he converted to Islam. On November 20, 2003, Martin Kearney, a captain at Wende, purportedly received information that Holland was using drugs and directed John Barbera, a correctional officer at Wende, to obtain a urine sample from him. At the time, New York State Department of Correctional Services ("DOCS") Directive 4937 required that inmates provide a urine sample within three hours of being ordered to do so, without exception. The Directive also provided that inmates could be given up to eight ounces of water per hour during the three-hour time span to assist in their production. On Kearney's order, Barbera directed Holland to provide a urine sample. However, Holland stated that he was unable to do so, citing his fast in observance of Ramadan. Holland also refused water on those grounds. Though Holland offered to drink water and provide a sample after sunset, when his fast had ended, Barbera declined to permit an exception to the Dir-

ective. After three hours had elapsed and Holland had failed to comply with the order, Barbera issued a misbehavior report charging Holland with violating the urinalysis guidelines and defying a direct order. Holland was then placed in keeplock pending a disciplinary hearing on the matter.

At that hearing, Holland testified that he had been unable to provide a sample when he was ordered to do so because he could not drink water prior to sunset during Ramadan. Holland also requested that his imam be permitted to attest to these beliefs; however, Thomas Schoellkopf, a hearing officer at Wende, refused to permit the witness, stating that it was unnecessary to call the imam given that he had not been present at the incident and that his testimony regarding the practice of Muslims observing the Ramadan fast would be duplicative of Holland's. Following this exchange, Schoellkopf found Holland guilty of violating the urinalysis guidelines, stating that he was "not aware of any religious exceptions such as Ramadan that excuse[ ] ... participation in drug testing." Schoellkopf also found Holland not guilty of the charge that he failed to comply with a direct order, stating that his "more lenient disposition" was an attempt to "encourage [Holland] to follow the urinalysis guidelines in the future." In light of the guilty disposition on the urinalysis charge, Schoellkopf sentenced Holland to 90 days in keeplock, as well as 90 days of lost privileges.

Holland initiated several administrative appeals of the verdict from keeplock and sent a letter to Anthony F. Zon, the then-Superintendent of Wende, informing him of the sentence. Holland's imam also sent a memorandum to Kearney, reaffirming Holland's beliefs, questioning why Holland had not been permitted to provide a sample after sunset, and asking Kearney to "look into" the matter. While Holland's initial appeals were resolved in his favor—with Zon determining on January 21, 2004 that "[u]rinalysis testing could be taken after sunset"—Holland was not immediately released from keeplock. Instead, Holland further appealed his

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

claims until, on February 5, 2004, the Director of Special Housing/Inmate Discipline working under then-DOCS Commissioner Glenn Goord reversed and expunged the disciplinary action, citing Schoellkopf's failure to elicit relevant testimony from Holland's imam. Holland was released from keeplock that day, after serving 77 days in detention. While in keeplock, Holland was confined to his cell for 23 hours each day, was barred from attending Islamic services, including the Eid ul-Fitr feast celebrating the end of Ramadan, allegedly received "punishment trays" containing meager portions, and lost his seniority and higher wage job at Wende.

**B. Procedural History**

**\*3** Holland filed the underlying action *pro se* in June 2005. After his complaint survived two motions to dismiss, *see Holland v. Goord,* No. 05 Civ. 6295(CJS), 2007 WL 2789837 (W.D.N.Y. Sept.24,2007); *Holland v. Goord,* No. 05 Civ. 6295(CJS), 2006 WL 1983382 (W.D.N.Y. July 13, 2006), Holland was appointed counsel and filed a second amended complaint, asserting under 42 U.S.C. § 1983 and RLUIPA that the order to provide a urine sample and his resultant confinement in keeplock violated his right to free exercise of religion. Holland also asserted under 42 U.S.C. $4f 11983 that Schoellkopf's refusal to call his imam as a witness denied him due process under the Fourteenth Amendment, and that his confinement in keeplock amounted to retaliation for his religious beliefs in violation of the First Amendment. As relevant here, Holland sought damages and injunctive relief. As part of Holland's requested injunctive relief, he sought an order requiring DOCS to amend Directive 4937 to "include express protection" for inmates fasting during Ramadan.

In June and July 2010, the parties cross-moved for summary judgment. In May 2012, after seven years of litigation and while the parties' motions were fully briefed, DOCS added a "Note" to Directive 4937 advising that

[i]nmates participating in an approved religious fast should not be required to provide a urine sample during fasting periods since consumption of water may be necessary. Sample requests should be scheduled during other periods of the day and normal urinalysis testing procedures should then apply, including offering water to those inmates unable to provide a urine sample.

Appellees did not notify either the district court or Holland that this note had been added.

On June 18, 2013, the district court granted Appellees' motion for summary judgment and denied Holland's cross-motion. In its decision, the district court held that the order to provide a urine sample placed only a "*de minimis*" Amendment free exercise and RLUIPA claims. *Holland,* 2013 WL 3148324, at \*12. In reaching that conclusion, the court credited Holland's imam's testimony that Holland could have fasted for one additional day to atone for taking a drink of water to aid compliance with the order. *Id.* In addition, the district court held that Appellees were entitled to qualified immunity from Holland's free exercise claims because the right to an exception from Directive 4937 had not been clearly established in November 2003. *Id.* at \*8–10. The court also noted that RLUIPA did not support Holland's claim for money damages. *Id.* at \*7. Finally, the district court concluded that Holland lacked a protected liberty interest in remaining free from keeplock, precluding his due process claim, and that Holland had not drawn a causal connection between his religious exercise and Appellees' disciplinary action, precluding the First Amendment retaliation claim. *Id.* at \*5–6, \*13–14. Holland appealed.

**DISCUSSION**

**\*4** We review a district court's grant of summary judgment *de novo,* construing all facts in favor of the nonmoving party. *See Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005). Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Jeffreys,* 426 F.3d at 553.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

## A. First Amendment Free Exercise Claim

It has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a "prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord,* 467 F.3d 263, 274–75 (2d Cir.2006); *see Ford v. McGinnis,* 352 F.3d 582, 592 (2d Cir.2003) (assuming without deciding that substantial burden requirement applies). Holland challenges the continued viability of the "substantial burden" test in light of the Supreme Court's statement in *Employment Division v. Smith* that application of the test embroils courts in "the unacceptable business of evaluating the relative merits of differing religious claims." *Ford,* 352 F.3d at 592 (quoting *Emp't Div. v. Smith,* 494 U.S. 872, 887, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990)) (internal quotation marks omitted); *see also Williams v. Morton,* 343 F.3d 212, 217 (3d Cir.2003) (declining to apply the substantial burden test to a § 1983 claim regarding the availability of meals conforming to religious dictates in prison). However, we need not decide the issue here, as even assuming the continued vitality of the substantial burden requirement, our precedent squarely dictates that Holland's religious exercise was unconstitutionally burdened—a point, moreover, that Appellees do not contest on appeal. *See Salahuddin,* 467 F.3d at 275 n. 5 (declining to address continued viability of substantial burden test when the defendants failed to argue that the inmate's burdened religious practice was "peripheral or tangential to [his] religion"); *see also Jolly v. Coughlin,* 76 F.3d 468, 477 (2d Cir.1996) (noting that a "substantial burden" exists when "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs" (internal quotation marks and alterations omitted)).

In one of several cases concerning this issue, we held in *Ford v. McGinnis* that a Muslim inmate's free exercise rights would be substantially burdened if prison officials denied his request for a meal to celebrate the Eid ul-Fitr feast. 352 F.3d at

593–94. Though a question of fact remained as to whether the meal had, in fact, been denied, in vacating summary judgment in favor of the defendants, we emphasized both that the inmate had credibly claimed that the meal was "critical to his observance as a practicing Muslim" and that inmates have a "clearly established" right "to a diet consistent with [their] religious scruples." *Id.* at 594, 597 (internal quotation marks omitted). Then, in *McEachin v. McGuinnis,* we cited this language to hold that an inmate stated a free exercise claim based on his assertion that prison officials had denied him "properly blessed food" to break his fasts during Ramadan. 357 F.3d 197, 201–03 (2d Cir.2004). Though the Court declined to address the substantial burden standard on a motion to dismiss, we emphasized that "courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights," noting that this Court had recognized such a principle since "at least as early as 1975." *Id.* at 203 (citing *Kahane v. Carlson,* 527 F.2d 492, 495 (2d Cir.1975) (determining that Orthodox Jewish inmate had right to provision of kosher meals)). Finally, in *Jolly v. Coughlin,* we held that forcing an inmate to choose between his religious beliefs—which forbade the medical testing prison officials attempted to impose upon him—or confinement in keeplock "itself constitute[d] a substantial burden." 76 F.3d at 477.

**\*5** [1] Taken together, these cases clearly support the conclusion that ordering Holland to provide a urine sample—and drink water in violation of his fast—or face confinement in keeplock substantially burdened Holland's free exercise right. First, it is undisputed that Holland is a practicing Muslim and that fasting in observance of Ramadan is a core tenet of his faith. *See Holland,* 2013 WL 3148324, at *11. Thus, there can be no debate that directly ordering Holland to drink water in violation of his fast would substantially burden his free exercise rights. As we stated in *Ford* and reiterated in *McEachin,* inmates "have a 'clearly established'

right 'to a diet consistent with their religious scruples.' " *See McEachin,* 357 F.3d at 203 (quoting *Ford,* 352 F.3d at 597) (brackets omitted). The difference between the denial of a meal and the imposition of a drink is of no constitutional significance. *See id.* at 204–05 (stating, in light of the inmate's claim that an officer deliberately ordered him to act in contravention of his beliefs, that "[p]recedent suggests that inmates have a right not to be disciplined for refusing to perform tasks that violate their religious beliefs"). By contrast, the district court's conclusion that the order to provide a urine sample placed only a "*de minimis* " burden on Holland's free exercise because he could "make up" a premature drink of water with "one extra day of fasting," *see Holland,* 2013 WL 3148324, at *11–12 (quoting Holland's and his imam's testimony), finds no support in our case law. While this Court has suggested that "[t]here may be inconveniences so trivial that they are most properly ignored," *McEachin,* 357 F.3d at 203 n. 6, the uncontradicted evidence submitted by Holland that breaking his fast prior to sunset would have been a "grave sin"—regardless whether atonement was possible—prevented such a conclusion in this case.

The closer question identified but not determined by the district court is whether, in the district court's words, an "issue as to causation" barred Holland's claim. *See Holland,* 2013 WL 3148324, at *10. That is, while the denial of a religious meal plainly burdens the inmate's right to eat that meal, as in *Ford* and *McEachin,* it is not self-evident that an inmate's inability or refusal to provide a urine sample followed from his fast-related forbearance from drinking water. However, no such question of fact exists in this case. Holland explained to Schoellkopf at his disciplinary hearing that he had not complied with the order because he was fasting during Ramadan and, as a result, "was not able to go to the bathroom due to [his] not being able to drink any water." And, in his deposition, Schoellkopf stated that he "believed" Holland's statement, though he nonetheless sentenced him to 90 days in keeplock because there was no exception

to the DOCS rule.

If Appellees were able to counter these facts, they have failed to do so. Instead, Appellees argued broadly below that Holland could not establish a link between his fast and failure to comply with the order, while neglecting to cite record evidence countering the foregoing material. *See, e.g.,* Mem. in Support of Summary Judgment, *Holland v. Goord,* No. 05 Civ. 6295, Doc. No. 75, at 19 (W.D.N.Y. June 16, 2010) ("It is common knowledge that people that do not eat or drink for a day are still able to produce urine."). But no such argument has been advanced on appeal. Thus, it is now uncontested that Holland, a practicing Muslim, was unable to comply with the order to provide a urine sample within three hours because he was fasting in observance of Ramadan. While Appellees permitted Holland a choice between prematurely breaking his fast or facing confinement in keeplock, that choice—as has been clearly established by our precedent for decades—placed a substantial burden on the free exercise of his religion. *See Jolly,* 76 F.3d at 477.

**\*6** [2] Of course, this conclusion does not end the inquiry into Holland's First Amendment free exercise claim. Given the "difficult judgments" attendant to prison operation, *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), "a generally applicable policy"—even one that burdens an inmate's free exercise—"will not be held to violate a plaintiff's right to free exercise of religion if that policy 'is reasonably related to legitimate penological interests,' " *Redd v. Wright,* 597 F.3d 532, 536 (2d Cir.2010) (quoting *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987)). To make this determination, a court must consider:

whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating the right;

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Salahuddin,* 467 F.3d at 274 (footnote omitted) (citing *Turner,* 482 U.S. at 90–91). Zon's determination that the urinalysis could have been conducted after sunset and DOCS's subsequent amendment of Directive 4937 (not to mention Appellees' failure to address these points on appeal) give us pause as to whether Appellees can demonstrate a valid penological interest pursuant to this standard. Nevertheless, because the district court did not reach this question below, we decline to address it for the first time on appeal. *See Dardana Ltd. v. Yuganskneftegaz,* 317 F.3d 202, 208 (2d Cir.2003) ("It is this Court's usual practice to allow the district court to address arguments in the first instance.").

[3] In addition, we decline to address in the first instance the issue of qualified immunity as regards the state's penological interest in the previous policy. To assess a defendant's entitlement to qualified immunity, a court must consider "both the clarity of the law establishing the right allegedly violated as well as whether a reasonable person, acting under the circumstances then confronting a defendant, would have understood that his actions were unlawful." *Hanrahan v. Doling,* 331 F.3d 93, 98 (2d Cir.2003) (per curiam) (internal quotation marks omitted). The district court ruled that it had not been clearly established at the time of the order that "Directive # 4937, or a substantially equivalent policy, placed a substantial burden on an inmate's religious liberty," *Holland,* 2013 WL 3148324, at *9, a conclusion that we reject by our holding today. *See Ford,* 352 F.3d at 597 ("[C]ourts need not have ruled in favor of a prisoner under precisely the same factual circumstance in order for [a] right to be clearly established."). However, the district court did not address other aspects of Appellees' qualified immunity claim, including the question whether a reasonable officer might have believed

that the challenged order was lawful in light of legitimate penological interests supporting Directive 4937, as it existed at the time. Nor has the district court examined whether certain Appellees should be dismissed from this suit for a lack of personal involvement in the claimed constitutional deprivations. *See Grullon v. City of New Haven,* 720 F.3d 133,138 (2d Cir.2013). We leave these issues to the district court for consideration on remand.

**7** [4][5] We do not, however, require that the district court assess Holland's entitlement to all of the relief he seeks on remand. In his second amended complaint, Holland sought both damages and injunctive relief pursuant to his free exercise claim. Since the filing of that complaint, DOCS has amended Directive 4937 to include the "express protection" for inmates fasting during Ramadan that Holland's complaint seeks. While a defendant's "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice," it is nonetheless "an important factor bearing on the question whether a court should exercise its power" to entertain a request for injunctive relief or declare it moot. *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982). Of course, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.,* ––– U.S. ––––, ––––, 133 S.Ct. 721, 727, 184 L.Ed.2d 553 (2013) (internal quotation marks omitted).

[6] We conclude that Appellees have satisfied that burden here. First, DOCS has amended Directive 4937 specifically to prohibit the conduct of which Holland complains, an act meriting some deference. *See Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo,* 981 F.2d 50, 59 (2d Cir.1992) (dismissing as moot an appeal concerning a minority set-aside program after the state administratively suspended the program, in part, because "[s]ome deference must be accorded to a state's rep-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

resentations that certain conduct has been discontinued"); *see also Massachusetts v. Oakes,* 491 U.S. 576,582 (1989) (deeming overbreadth challenge moot due to the state's amendment of the challenged statute). Moreover, Holland succeeded in his administrative appeal—eliciting a determination from Zon that Holland should have been permitted to provide a urine sample after sunset in light of his religious fast—and Appellees have abandoned on appeal their argument that the conduct at issue was constitutional. *Cf. Nike,* 133 S.Ct. at 728 ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." (quoting *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895) (internal quotation marks and brackets omitted)). Given these circumstances (as well as the further assurance provided by our decision today) we deem it clear that the allegedly wrongful policy is not likely to be reinstated. Accordingly, we dismiss as moot Holland's request for injunctive relief pursuant to his First Amendment free exercise claim, and remand only his request for damages.

## B. RLUIPA Claim

[7] RLUIPA provides a more stringent standard than does the First Amendment, barring the government from imposing a substantial burden on a prisoner's free exercise unless the challenged conduct or regulation "further [s] a compelling governmental interest and [is] the least restrictive means of furthering that interest." *Redd,* 597 F.3d at 536 (citing RLUIPA, 42 U.S.C. § 2000cc–1(a)). Under the foregoing analysis, Holland would likely prevail on the substance of his RLUIPA claim. Nevertheless, Holland is not entitled to either damages or injunctive relief under the statute. First, as the district court held below and Holland concedes on appeal, RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities. *See Washington v. Gonyea,*

731 F.3d 143, 145–46 (2d Cir.2013) (per curiam) (citing *Sossamon v. Texas,* ——U.S. ——, ——, 131 S.Ct. 1651, 1663, 179 L.Ed.2d 700 (2011)). Thus, Holland's claim for damages against Appellees is barred. Second, we deem Holland's claim for injunctive relief under RLUIPA moot for the same reasons discussed above regarding the injunctive relief requested as part of his free exercise claim. Thus, we affirm the district court's judgment in favor of Appellees on Holland's RLUIPA claims.

## C. Fourteenth Amendment Due Process Claim

**\*8** [8][9][10][11] Ordinarily, an "inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell,* 418 U.S. 539, 566, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The right to call witnesses is limited in the prison context, however, "by the penological need to provide swift discipline in individual cases" and "by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." *Ponte v. Real,* 471 U.S. 491, 495, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985). Thus, "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Id.* at 496 (quoting *Wolff,* 418 U.S. at 566). Citing *Ponte,* we have stated that "[t]he Supreme Court ... has suggested that a prisoner's request for a witness can be denied on the basis of irrelevance or lack of necessity." *Kingsley v. Bureau of Prisons,* 937 F.2d 26, 30–31 (2d Cir.1991) (citing *Ponte,* 471 U.S. at 496). The refusal to call witnesses whose testimony would be redundant is not a violation of any established due process right. *See Russell v. Selsky,* 35 F.3d 55, 58–59 (2d Cir.1994) (holding that a prison hearing officer "did not violate any clearly established constitutional or statutory right" for refusing to call inmate's suggested witnesses, who would

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

have given "duplicative or non-probative" testimony).

[12] Holland sought to call his imam as a witness at his disciplinary hearing to establish that, as a practicing Muslim, Holland was unable to drink water at the time he was ordered to provide a urine sample. However, Holland had already testified to this fact and Schoellkopf did not discredit his statement. Instead, Schoellkopf determined that there were no "religious exceptions such as Ramadan" to excuse Holland's noncompliance with Directive 4937. Because Holland's imam would have corroborated an established fact, and any additional testimony that he might have given did not go to the basis of Schoellkopf's decision, Schoellkopf did not err in characterizing the imam's proposed testimony as unnecessary and redundant. While Holland asserts that he should have nonetheless been permitted to call his imam because there was no risk that his five-minute disciplinary hearing would drag on "*ad infinitum,*" *Russell,* 35 F.3d at 59, this Court has never announced such a limitation on prison officials' discretion. Accordingly, we conclude that Schoellkopf acted within his discretion when he refused to call Holland's imam as a witness, and we affirm the entry of judgment in Appellees' favor on this claim. FN3

**D. First Amendment Retaliation Claim**

[13][14] To prevail on a First Amendment retaliation claim, an inmate must establish "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected [conduct] and the adverse action." *Espinal v. Goord,* 558 F.3d 119, 128 (2d Cir.2009) (internal quotation marks omitted). An inmate bears the burden of showing that "the protected conduct was a substantial or motivating factor" in the prison officials' disciplinary decision. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). The defendant official then bears the burden of establishing that the disciplinary action would have occurred "even absent the retaliatory

motivation," which he may satisfy by showing that the inmate "committed the ... prohibited conduct charged in the misbehavior report." *Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir.2002) (internal quotation marks omitted).

***9** [15] Holland has not proffered any evidence supporting his claim that Appellees took disciplinary action against him because of his religion. While Holland's religious observation caused him to decline to provide a urine sample, which in turn prompted the disciplinary action, Holland cites no case law holding that such an attenuated link can constitute a "substantial or motivating factor" for retaliation. Nor has Holland rebutted Appellees' evidence that they would not have acted differently if he had declined to comply for reasons other than religion, given that Directive 4937 did not permit exceptions for religious exercise at the time of the order. Though Holland notes that other exceptions to the Directive had been permitted, those exceptions went to inmates with a medically recognized inability to provide a sample, such as inmates on dialysis. Holland cites no other exceptions to support his otherwise conclusory assertion that Appellees disciplined him because of his religion. Thus, the district court's judgment in favor of Appellees on this claim is affirmed.

**CONCLUSION**

For the foregoing reasons, we vacate the judgment on Holland's free exercise claim and remand for further proceedings as to this claim, to the extent that Holland seeks damages. We affirm the judgment in favor of Appellees on Holland's RLUIPA claim, his Fourteenth Amendment claim, his First Amendment retaliation claim, and his free exercise claim for an injunction. Therefore, the judgment of the district court entered June 18, 2013, is VACATED AND REMANDED IN PART AND AFFIRMED IN PART.

FN* Acting Commissioner Anthony J. Annuci has been substituted in place of former Commissioner Brian Fischer, pur-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2014 WL 3360615 (C.A.2 (N.Y.))
**(Cite as: 2014 WL 3360615 (C.A.2 (N.Y.)))**

suant to Federal Rule of Appellate Procedure 43(c)(2). The Clerk of the Court is directed to amend the caption to reflect the alterations set out above.

FN1. Holland also named Lieutenant Jay Wynkoop in his second amended complaint, but the record reflects that he was never served, is not represented by counsel, and is not a party to this appeal.

FN2. "Keeplock is a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Peralta v. Vasquez,* 467 F.3d 98, 103 n. 6 (2d Cir.2006) (internal quotation marks omitted). We note the specifics of Holland's keeplock status below.

FN3. While the Director of Special Housing/Inmate Discipline reversed Holland's keeplock sentence on the procedural ground that Schoellkopf had erred in failing to call the imam, as our earlier discussion indicates, that keeplock reversal was correct on the merits.

C.A.2 (N.Y.),2014.
Holland v. Goord
--- F.3d ----, 2014 WL 3360615 (C.A.2 (N.Y.))

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.