**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

LEROME HILSON,

                 **Plaintiff,**

v.                                            9:13-cv-0606 (BKS/DEP)


S. BEAURY, *Correctional Officer, Great Meadow*
*Correctional Facility, et al,*

                 **Defendants.**
_____

**APPEARANCES:**

Lerome Hilson
05-A-1881
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821
Pro se Plaintiff

Hon. Eric T. Schneiderman
New York State Attorney General
Adrienne J. Kerwin, Esq., Assistant Attorney General
The Capitol
Albany, NY 12224
For Defendants


**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.       INTRODUCTION**

      Plaintiff Lerome Hilson, commenced this pro se civil rights action under 42 U.S.C. §

1983, alleging violations of his constitutional rights while he was confined at the Great Meadow

Correctional Facility.  Dkt. No. 1.  Plaintiff alleged that defendant correctional officer S. Beaury

retaliated against plaintiff for having written a grievance by, *inter alia*, issuing a false misbehavior report and, for four days, turning off the electrical power in plaintiff's cell and not allowing him to eat, in violation of plaintiff's First and Eighth Amendment rights. Dkt. 1, pp. 3-4. Plaintiff alleged that defendants Payne and Ely denied plaintiff the right to freely practice his religion, in violation of the First Amendment. *Id.* at 5-9. On June 5, 2015, defendants filed a motion for summary judgment seeking dismissal of all claims. Dkt. No. 38. Defendants attached a "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion" to their notice of motion. Dkt. No. 38, p. 3. The notification set forth the requirements in NDNY Local Rule 7.1(a) for a proper response to the motion and contained a warning regarding the consequences of failing to submit a proper response. *Id.*

On June 8, 2015, the Clerk of the Court mailed a letter to plaintiff notifying him that his response to the motion for summary judgment was due on or before June 22, 2015. Dkt. No. 39. The Court attached a copy of the same "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion," in its letter to plaintiff. Dkt. No. 39, p. 2. Plaintiff did not file a response to defendants' motion for summary judgment.

On February 17, 2016, United States Magistrate Judge David E. Peebles issued a Report and Recommendation recommending that defendants' motion for summary judgment be granted and that plaintiff's complaint be dismissed in its entirety. Dkt. No. 42. Magistrate Judge Peebles advised the parties that, under 28 U.S.C. § 636(b)(1), the failure to file written objections within fourteen days will preclude appellate review. Dkt. No. 42, p. 34. No objections to the Report-Recommendation have been filed.

## II.    APPLICABLE STANDARDS

### A.  Review of Report and Recommendation

Since no objections to the Report and Recommendation have been filed, and the time for filing objections has expired, the Court has reviewed the Report and Recommendation for clear error. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to the 1983 addition. Under this standard, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* A report is clearly erroneous only if the Court, upon reviewing the entire record, is "left with the definite and firm conviction that a mistake has been committed." *Mateo v. Bristow*, 12-cv-5052, 2015 WL 925933, at *2, 2015 U.S. Dist. LEXIS 26761, at *6 (S.D.N.Y. Mar. 4, 2015) (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)).[1]

**B. Consideration of an Unopposed Motion for Summary Judgment**

Plaintiff failed to respond to defendants' motion after plaintiff had been twice notified of the requirements of the Local Rules of the Northern District of New York and the consequences of failing to respond to the motion. Dkt. No. 38, p 3; Dkt. Nos. 39, p. 2. As Magistrate Judge Peebles noted, under Local Rule 7.1(b)(3), "[w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting . . . of the motion . . . unless good cause is shown." Dkt. No. 42, pp. 9-11. And, under Local Rule 7.1(a)(3), the Court "shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."

---

[1] The Court has appended copies of all unreported decisions cited in this Decision for the convenience of the pro se plaintiff.

As Magistrate Judge Peebles further noted, however, "[t]he fact that there has been no response to a summary judgment motion does not . . . mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); *see* Dkt. No. 42, p. 10; *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014) (holding that "before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production," and "determine whether the legal theory of the motion is sound"). Summary judgment may only be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering whether there are material issues of fact "[a] verified complaint is to be treated as an affidavit for summary judgment purposes . . . provided that it meets the other requirements for an affidavit" under Rule 56. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).[2] "[T]he court may rely on other evidence in the record even if uncited." *Jackson*, 766 F.3d at 194 (citing Fed. R. Civ. P. 56(c)(3)).

In this case, Magistrate Judge Peebles considered the deposition of plaintiff, which was attached as an exhibit to the defendants' summary judgment motion, Dkt. No. 38-1, in assessing whether there are genuine disputes as to material facts. *See* Dkt. No. 42, p. 16. Pursuant to Local Rule 7.1(a)(3) and Fed. R. Civ. P. 56(e)(2), the Court deems all of the properly-supported

---

[2] Courts in this district have considered facts in a verified complaint in determining whether there are material issues of fact, and whether facts are controverted for the purposes of deeming admitted the defendant's statement of facts, under Local Rule 7.1(a)(3), when a plaintiff has failed to respond to a summary judgment motion. *See, e.g.*, *Jones v. Fischer*, No. 9:11-cv-774, 2013 WL 4039377, at *4, 2013 U.S. Dist. LEXIS 111319, at *3 (N.D.N.Y. Mar. 21, 2013); *Rivera v. Dianardo*, No. 10-cv-1500, 2013 WL 1975437, at *1, 2013 U.S. Dist. LEXIS 68051, at *3 (N.D.N.Y. Apr. 16, 2013), report-recommendation adopted by 2013 WL 1975435, 2013 U.S. Dist. LEXIS 68051 (N.D.N.Y. May 13, 2013); *c.f. Jamison v. Metz*, 541 F. App'x 15, 18-19 (2d Cir. 2013) (summary order) (noting that "the verified complaint . . . [was] properly before the district court" and created an issue of fact in a case in which the plaintiff had failed to comply with the requirements in N.D.N.Y. Local Rule 7.1 for a responsive Statement of Material Facts).

facts in the defendants' statement of material facts which are not controverted by the allegations in the verified complaint and in the plaintiff's deposition to be undisputed for the purposes of this motion.

## III.  DISCUSSION

### A.  Plaintiff's Claims Against Defendants Ely and Payne

In the Report and Recommendation Magistrate Judge Peebles recommended that the plaintiff's free exercise of religion claims against defendants Ely and Payne be dismissed.  Dkt. No. 42, pp. 25-34.  Magistrate Judge Peebles concluded that there are no genuine disputes of material fact with respect to plaintiff's free exercise of religion claim against defendant Ely and that, while there are disputes of material fact regarding plaintiff's claim against defendant Payne, "even assuming plaintiff's allegations [against Payne] are true, [Payne] is entitled to qualified immunity from suit."  Dkt. No. 42, p. 34.  The Court has reviewed the Report and Recommendation regarding the claims against defendants Ely and Payne for clear error and found none.  The Court therefore adopts Magistrate Judge Peebles' recommendation that the defendants' motion for summary judgment be granted as to defendants Ely and Payne for the reasons stated in the Report and Recommendation.

### B.  Plaintiff's Retaliation Claim Against Defendant Beaury

To establish a First Amendment retaliation claim under § 1983, a plaintiff must show that "(1) the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2013) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).  As Magistrate Judge Peebles found, plaintiff's

filing of a grievance against Corrections Officers Collins and Roberts[3] satisfies the first element and plaintiff has raised a genuine issue of material fact regarding whether defendant Beaury took an adverse action against plaintiff.  Dkt. No. 42, pp. 16-17.

Magistrate Judge Peebles concluded that plaintiff has failed to adduce record evidence to raise a triable issue of fact regarding whether there was a causal connection between the protected activity and the alleged adverse action.  Dkt. No. 42, pp. 17-42.  As Magistrate Judge Peebles noted, defendant Beaury submitted a sworn affidavit, in which he denied being aware that plaintiff had written a grievance against Corrections Officers Collins or Roberts, and stated that he did not work with Officer Roberts' husband and the two had never been social friends. Dkt. No. 42, pp. 17-18.  Magistrate Judge Peebles further noted that plaintiff had speculated, during his deposition, that Officer Roberts "manipulated Officer Beaury to do his dirty work . . . [because it] is a common thing in Great Meadows or any other facility; all colleagues work together."  Dkt. No. 42, pp. 18-19 (citing plaintiff's deposition at Dkt. No. 38-1, pp 18-19). Magistrate Judge Peebles concluded that "plaintiff's vague belief that corrections officers 'work together' to retaliate against inmates is not sufficient to give rise to a genuine dispute of material fact as to whether there exists a causal connection between plaintiff's protected activity and defendant Beaury's alleged adverse activity," and recommended granting the defendants' motion as to defendant Beaury.  Dkt. No. 42, p. 21.  The Court agrees that this speculative testimony is insufficient to raise a triable issue of fact regarding a causal connection between the protected activity and the alleged adverse action.  However, in both plaintiff's deposition and in his verified complaint plaintiff alleged that Beaury told plaintiff, "I will get you for the grievance

---

[3] Plaintiff originally identified this corrections officer as "C.O. H. Robinson."  *See* Complaint, Dkt. No. 1, p. 3.  At his deposition, however, plaintiff clarified that this individual's last name is actually "Roberts."  Dkt No. 38-1, p. 9

you wrote" on Corrections Officer Roberts. Dkt. No. 1, p. 3; Dkt. No. 38-1, p. 20-21. Plaintiff

testified that Beaury said this on June 19, 2012, the day of the incident resulting in Beaury's

alleged false misbehavior report. Dkt. No. 38-1, p. 20-21; Dkt. No. 1, pp. 3-4. Although this

contradicts Beaury's sworn statement that he was unaware of the grievance at the time he issued

the misbehavior report, it is sufficient to raise a triable issue of fact. The Court therefore rejects

the recommendation that the summary judgment be granted as to Beaury.

### C. Exhaustion of Plaintiff's Claim Regarding Beaury's Alleged Deprivation of Electricity and Food From June 22, 2012 until June 26, 2012

In their motion for summary judgment, defendants argue that plaintiff's claim regarding

Beaury's alleged deprivation of electricity and food for four days in June 2012[4] should be

dismissed because plaintiff failed to exhaust that claim. Dkt. No. 38-10, pp. 4-6.[5]

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires an inmate to exhaust

all available administrative remedies prior to bringing a federal civil rights action. *See Espinal*,

558 F.3d at 123-24. To properly exhaust his administrative remedies an inmate must complete

the administrative review process in accord with the applicable state procedural rules. *Jones v.*

---

[4] As defendants note, "the First Cause of Action in the complaint states that defendant's Beaury's conduct violated plaintiff's First *and Eighth Amendment* rights." Dkt. No. 38-10, p. 6 n.1. Defendants argue that "the writing of a misbehavior report and loss of a prison job are not deprivations actionable under the Eighth Amendment." *Id*. Defendants, however, have not addressed whether plaintiff's testimony at his deposition that defendant Beaury denied plaintiff meals and electricity for four days in June 2012, (Dkt. No. 38-1, p. 42), raises a triable issue of fact with respect to plaintiff's Eighth Amendment claim. *See, e.g., Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("[P]rison officials violate the Constitution when they deprive an inmate of his 'basic human needs' such as food, clothing, medical care, and safe and sanitary living conditions."). Because the Court concludes that there is a material issue of fact as to whether plaintiff exhausted his claim regarding defendant Beaury's alleged deprivation of food and electricity, and defendants have not addressed these allegations in the context of the Eighth Amendment, to the extent defendants' seek summary judgment as to plaintiff's Eighth Amendment claims, their motion is denied.

[5] Magistrate Judge Peebles did not analyze the exhaustion issue, in light of his recommendation that the retaliation claim be dismissed on the merits. Dkt. No. 42, p. 21, n.9. *Id*.

*Bock*, 549 U.S. 199, 218-19 (2007). The completion of the administrative review process includes receiving the decision on the final appeal of grievance prior to filing the federal action. *Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002).

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). 7 N.Y.C.R.R. §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id.* § 701.5(d).

In this case, plaintiff alleges that he did grieve his claim; that he did appeal the decision; and that his appeal was denied by CORC. Dkt. No. 1, p. 5. Plaintiff attached the records of various grievances and appeals to his complaint. Dkt. No. 1-1. One of these grievances, which plaintiff labeled "Ex. A, Item # 4," is dated June 22, 2012, and states that "on the above date CO Beaury . . . turned my electricity power off, so there-fore [sic] I've not had power for it-less [sic] #4 days and none feed in upon his request of other C.O." Dkt. No. 1-1, p. 14. This exhibit includes the Superintendent's denial of grievance number GM-54-256-12, plaintiff's "appeal statement," and a notification that the appeal was received by CORC. *Id.* at 15-16.

In the statement of material facts, defendants state that plaintiff "did not appeal a grievance to CORC alleging that defendant Beaury retaliated against him for utilizing the grievance process by causing him to lose his prison job, by turning power off in cell or by refusing to feed him for four days from June 22, 2012-June 26, 2012." Dkt. No. 38-9, ¶ 23. Defendants cited to an affidavit from Jeffrey Hale, the Assistant Director of the Inmate

Grievance Program for the New York State Department of Corrections and Community Supervision, stating that plaintiff did not appeal any grievance alleging that Beaury "retaliated against him for using the grievance process by causing him to lose his prison job, by turning power off in cell or by refusing to feed him for four days from June 22, 2012-June 26, 2012." Dkt. No. 38-6, p.3. Hale attached, "as evidence," the computer printout from the CORC database, reflecting a search of grievances "denied at the facility level." Dkt. No. 38-6, ¶¶ 10-11. That document includes grievance number GM-54-256-12, which is characterized as "harassment by staff." Hale did not discuss plaintiff's allegation that he had properly grieved his claim, or the exhibits attached to the complaint as "Ex. A, Item #4," Dkt. No. 1-1, pp. 14-16. In light of the allegations in plaintiff's verified complaint, the attached exhibits and the defendants' failure to address the attached exhibits which include a grievance regarding the alleged deprivation of electricity and food, followed by the receipt of an appeal to CORC in grievance number GM-54-256-12, the Court declines to deem as undisputed the defendants' statement of material fact regarding the absence of an appeal of a grievance. The Court therefore denies defendants' motion for summary judgment as to plaintiff's First Amendment and Eighth Amendment claims against defendant Beaury.

IV.     **CONCLUSION**

    For these reasons, it is

    **ORDERED** that the Report-Recommendation (Dkt. No. 42) is **ADOPTED** insofar as it recommends that defendants' motion for summary judgment (Dkt. No. 38) be granted as to defendants Eric Payne and E. Ely; and **REJECTED** only insofar as it recommends that summary judgment be granted as to defendant S. Beaury; and it is further

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 38) is **GRANTED** as to defendants Eric Payne and E. Ely; and it is further

**ORDERED** that plaintiff's complaint (Dkt. No. 1) is **DISMISSED** as to defendants Eric Payne and E. Ely; and it is further

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 38) is **DENIED** as to defendant S. Beaury; and it is further

**ORDERED** that the Clerk serve a copy of this Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**Dated:  March 18, 2016**

Brenda K. Sannes
U.S. District Judge

2013 WL 4039377
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Robert JONES, Plaintiff,

v.

Brian FISCHER et al., Defendants.

No. 9:11–cv–774 (GLS/CFH).
|
Aug. 7, 2013.

**Attorneys and Law Firms**

Robert Jones, East Elmhurst, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney General, Richard Lombardo, Assistant Attorney General, of Counsel, Albany, NY, for the Defendants.

*MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, Chief Judge.

### I. *Introduction*

**\*1** Plaintiff *pro se* Robert Jones commenced this action against defendants Brian Fisher, Kenneth S. Perlman, Mr. Phillips, Joseph Smith, William R. Steinhaus, Osbourne McKay, and various John and Jane Does pursuant to 42 U.S.C. § 1983, the Americans withe Disabilities Act (ADA),[1] the Rehabilitation Act,[2] New York State Department of Corrections and Community Services (DOCCS) Directive 2614, and the Religious Land Use and Institutionalized Persons Act.[3] (*See* Am. Compl. ¶ 12, Dkt. No. 7.) Jones' six enumerated claims pertain to: discrimination under the ADA, Rehabilitation Act, and DOCCS Directive 2614; the conditions of his confinement; wrongful segregation; deliberate indifference to serious medical needs; interference with the right of free exercise of religion; and retaliation. (*See id.* ¶¶ 45–71.) He expressly seeks a declaration that defendants violated his civil rights, and compensatory and punitive damages; implicit in his Amended Complaint is his pursuit of injunctive relief requiring reasonable accommodations for his alleged disability at a DOCCS facility. (*See id.* ¶ 30, at 11–12.)

After Steinhaus was dismissed as a party by the court *sua sponte*, (*see* Dkt. No. 8), the remaining defendants interposed an answer, and, eventually, moved for summary judgment, (*see* Dkt. Nos. 27, 53.) Jones subsequently requested an extension of time to file his response, which motion was granted by text only order dated January 24, 2013; however, he failed to timely file a response. (*See* Dkt. No. 56.) In a Report–Recommendation and Order (R & R) dated March 21, 2013, Magistrate Judge Christian F. Hummel recommended that defendants' motion be granted and Jones' Amended Complaint be dismissed. (*See* Dkt. No. 57.) For the reasons that follow, the R & R is adopted in its entirety.

1    42 U.S.C. §§ 12101–12300.

2    29 U.S.C. §§ 701–796*l*.

3    42 U.S.C. §§ 2000cc–1 to 2000cc–5.

### II. *Background*

Jones is an inmate in the custody of DOCCS. (*See* Defs.' Statement of Material Facts (SMF) § 3, Dkt. No. 53, Attach. 6.) On February 24, 2011, Jones alleges that he was transferred from Marcy Correctional to Wallkill Correctional for the purpose of receiving vocational training in the "Corcraft DSS/D[O]CCS Eyeglass Project Optical Lens Laboratories," and for housing. (Am. Compl. ¶ 26; *see* Defs.' SMF ¶ 6.) Jones further claims that, upon intake at Wallkill, DOCCS officials noted that he needed the assistance of crutches to ambulate, which rendered him ineligible for housing given certain architectural limitations at that facility. (*See* Defs.' SMF ¶ 7; Am. Compl. ¶¶ 27–31.) Because of his "disability," Jones "was immediately transferred to Shawangunk" Correctional. (Am. Compl. ¶ 32; *see* Defs.' SMF ¶ 7.)

Once at Shawangunk, Jones claims that he was quarantined in the infirmary from February 21, 2011 to April 2011, and that while therein, he was not provided adequate heating or clean water, which rendered the conditions of his confinement "unfit for human habitation." (Am. Compl. ¶¶ 34–35; *see* Defs.' SMF § 8.) In early April 2011,[4] Jones alleges that he was transferred back to Marcy in retaliation for filing a grievance "demanding a[r]easonable [a]ccomodation or to be transferred to a suitable handicapped accessible facility within five working days." (Am.Compl.¶¶ 41–42.) Jones commenced this action in July 2011. (*See* Dkt. No. 1.) Soon

thereafter, he filed the operative Amended Complaint. (*See* Am. Compl.)

4   The court appreciates that Jones' Amended Complaint states that his transfer back to Marcy occurred "in early April 2001"; it is clear, given Jones' other allegations, that he intended to specify 2011, as opposed to 2001, as the year in which the transfer to Marcy occurred. (Am.Compl.¶ 42.)

### III. *Standard of Review*

 **\*2** Before entering final judgment, this court routinely reviews all report and recommendation orders in cases it has referred to a magistrate judge. If a party has objected to specific elements of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations *de novo.See Almonte v. N.Y. State Div. of Parole,* No. 04–cv–484, 2006 WL 149049, at *6–7 (N.D.N.Y. Jan. 18, 2006). In those cases where no party has filed an objection, or only a vague or general objection has been filed, this court reviews the findings and recommendations of the magistrate judge for clear error. [5] *See id.*

5   "[A] report is clearly erroneous if the court determines that there is a mistake of fact or law which is obvious and affects substantial rights." *Almonte,* 2006 W L 149049, at *6.

### IV. *Discussion*

As a threshold matter, the court must determine what to make of the document filed by Jones titled "Plaintiff[']s Objection to Report & Recommendation" (hereinafter "the objections"), and his late-filed response to defendants' summary judgment motion. (*See* Dkt. Nos. 58, 59.) In the objections, Jones takes issue with the R & R because, according to him, his claims were "dismissed [f]or failure to respond" by February 5, 2013. (Dkt. No 58 ¶ 4.) Jones claims that he placed three copies of his response in a mailbox at the facility in which he is housed on February 5, 2013, and that, because of his indigence and "an unwritten [prison] rule," his mail was delayed. (*Id.* at 1–2.) [6] The objections also include a separate letter, the subject of which is "Mail Box Rule," that reiterates Jones' contentions and provides legal argument about the prisoner mailbox rule. (*See* Dkt. No. 58, Attach. 1.)

6   Jones attempts to allege several new claims related to the supposed delay of his mail in the objections. (*See* Dkt. No. 58 ¶¶ 7–9.) Because the discovery deadlines have expired and Jones' new allegations have nothing whatsoever to do with claims that were asserted in the Amended Complaint, the court disregards Jones' references to any new claims. *See Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 219–20 (N.D.N.Y.2008); *see also Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir.1998).

The objections offer no other critique of the R & R, and can be summarily rejected because Jones' only relevant attack on the R & R—that his failure to respond was the basis for dismissing his Amended Complaint, (*see* Dkt. No 58 ¶ 4)—is entirely mistaken. Indeed, the R & R acknowledged that Jones failed to timely respond despite requesting and receiving an extension of time, but, nonetheless, explained that "[e]ven in the absence of a response, defendants [would be] entitled to judgment only if the material facts demonstrate[d] their entitlement to judgment as a matter of law." (Dkt. No. 57 at 3.)

Jones' response to defendants' summary judgment motion is a more complicated matter. The cover letter to that submission, which is dated January 5, 2013, is the same letter regarding the prisoner mailbox rule that was filed as part of the objections. (*Compare* Dkt. No. 59, *with* Dkt. No. 58, Attach. 1.) The affidavit of service included with Jones' memorandum of law in response to defendants' summary judgment motion, indicates that, on February 5, 2013, Jones placed three copies of his response papers in a mailbox at the facility where he is housed. (*See* Dkt. No. 59, Attach. 1 at 26.) While the court has some doubts about the authenticity of the affidavit of service, [7] in an abundance of caution, it will treat Jones' response as properly filed objections to the R & R. [8] In light thereof, given the content of the response, the court conducts a *de novo* review of the issues. *See Almonte,* 2006 WL 149049, at *6.

7   The affidavits of service accompanying Jones' memorandum of law, (*see* Dkt. No. 59, Attach. 1 at 26), affidavit, (*see* Dkt. No. 59, Attach. 2 at 4), and response to defendants' Statement of Material Facts, (*see* Dkt. No. 59, Attach. 3 at 6), are clearly photocopies of the same document, with the sole difference between them being that the affidavit of service to the memorandum of law indicates that "3 copies [of] Plaintiffs [ (sic) ] Opposition" were mailed.

8   Notably, in his response, Jones attempts to further augment his Amended Complaint by adding claims

under the First Amendment, and Equal Protection and Due Process Clauses. (*See* Dkt. No. 59, Attach. 1 ¶¶ 34–35, 59.) Because those new allegations are made in response to a summary judgment motion, as opposed to a motion to dismiss, and after discovery has concluded, they do not effectively amend the Amended Complaint, are rejected, and not considered. *See Onondaga Cnty., 549 F.Supp.2d at 220.*

**\*3** After careful consideration of the arguments advanced by Jones in his response to defendants' summary judgment motion, Judge Hummel's conclusion that dismissal is appropriate is correct largely for the reasons stated in the R & R. In addition to the analysis provided therein, two additional points ought be made.

First, as to whether or not Jones can obtain declaratory relief given the prospect that his transfer out of the facilities about which he complains would moot his claim for such relief, " '[t]he Eleventh Amendment and the principles governing the issuance of declaratory judgments prohibit the award of a declaration that state officials' prior conduct violated federal law.' " *La Scalia v. Driscoll,* No. 10–CV–5007, 2012 WL 1041456, at \*8 (E.D.N.Y. Mar. 26, 2012) (quoting *Rothenberg v. Stone,* 234 F.Supp.2d 217, 221 (E.D.N.Y.2002)); *see Ward v. Thomas,* 207 F.3d 114, 120 (2d Cir.2000). Thus, dismissal of that aspect of his Amended Complaint is undoubtedly warranted. Second, the R & R did not specifically address Jones' allegation of discrimination based upon DOCCS Directive 2614. (*See* Am. Compl. ¶¶ 45–51.) That claim, however, must be dismissed because "[v]iolations of state law do not give rise to claims under 42 U.S.C. § 1983[, and, m]ore specifically, a violation of a DOCCS directive does not state a claim for a constitutional violation under § 1983." *Tuitt v. Chase,* No. 9:11–CV–0776, 2013 WL 877439, at \*10 (N.D.N.Y. Jan. 30, 2013).

### V. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Christian F. Hummel's ReportRecommendation and Order (Dkt. No. 57) is **ADOPTED** in its entirety; and it is further

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 53) is **GRANTED;** and it is further

**ORDERED** that Jones' Amended Complaint (Dkt. No. 7) is **DISMISSED;** and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this MemorandumDecision and Order to the parties.

**IT IS SO ORDERED.**

ROBERT JONES,

Plaintiff,

v.

BRIAN FISCHER, Commissioner, DOCCS; KENNETH S. PERLMAN, Deputy Commissioner for Programs; JOSEPH SMITH, Superintendent, Shawangunk Correctional Facility; John Doe # 2–6, Employees of DOCCS; Jane Doe # 1–5, Employees of DOCCS; MR. PHILLIPS, Superintendent, Wallkill Correctional Facility; OSBOURNE McKAY, Deputy Commissioner of Industries/Accreditation Corcraft DSS/DOCCS Eyeglass Project Optical Lens Laboratory; State of New York Department of Corrections and Community Supervision,

Defendants. [1]

[1]  By Decision and Order, "Mr. Phillips, Superintendent, Wallkill Correctional Facility" is a defendant in place of "John Doe # 1," "Osbourne McKay, Deputy Commissioner of Industries/Accreditation Corcraft DSS/DOCCS Eyeglass Project Optical Lens Laboratory, State of New York Department of Corrections and Community Supervision," is a defendant in place of "Corcraft DSS/DOCCS Eyeglass Project Optical Lens Laboratories," and defendant Dutchess County Executive William R. Steinhaus was dismissed without prejudice as a defendant in this action. Dkt. No. 8 at 2–3.

ROBERT JONES

Plaintiff Pro Se

3491201713

George Matchan Detention Center [2]

[2]  The record reflects that the "George Matchan Detention Center" is actually spelled "George Motchan Detention

Center." Dkt. No. 53–5 at 1. The latter spelling is used for this Report–Recommendation.

1515 Hazen Street

East Elmhurst, N.Y. 11370

## REPORT–RECOMMENDATION AND ORDER [3]

[3]    This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

CHRISTIAN F. HUMMEL, United States Magistrate Judge.

Plaintiff pro se Robert Jones ("Jones"), an inmate formerly in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, five DOCCS employees, five Jane Does, four John Does, and DOCCS, violated his constitutional rights under the First, Eighth, and Fourteenth Amendments. Am. Compl. (Dkt. No. 7). Jones also asserts claims pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., the Rehabilitation Act, 29 U.S.C. § 701 et seq., and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc–1 et seq. Id. Presently pending is defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56. Dkt. No. 53. Jones has not opposed the motion. For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

### I. Failure to Respond

**\*4** Jones did not oppose defendants' motion although he was granted an extension of time to do so. *See* Text Order dated 1/24/2013. "Summary judgment should not be entered by default against a pro se plaintiff who has not been given any notice that failure to respond will be deemed a default." *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). Defendants provided notice in their motion papers as required by the Second Circuit and as normally done by the office of defendants' counsel. *Id.;* Dkt. No. 53–1. Further, the Court provided such notice by mail. Dkt. No. 55–1. Despite both the notice and the extension of time, Jones failed to respond.

"The fact that there has been no response to a summary judgment motion does not ... mean that the motion is to be granted automatically." *Champion,* 76 F.3d at 486. Even in the absence of a response, defendants are entitled to judgment only if the material facts demonstrate their entitlement to judgment as a matter of law. *Id.;* FED. R. CIV. P. 56(c). "A verified complaint is to be treated as an affidavit ... and therefore will be considered in determining whether material issues of fact exist...." *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) (citations omitted). The facts set forth in defendants' Rule 7.1 Statement of Material Facts (Dkt. No. 53–6) [hereinafter "Defs.' Statement"] are accepted as true as to those facts that are not disputed in Jones's verified amended complaint. [4] N.D.N.Y .L.R. 7.1(a)(3) ("The Court shall deem admitted any properly supported facts set forth in the Statement of Facts that the opposing party does not specifically controvert.") (emphasis omitted).

[4]    Generally, "[a] party shall not incorporate any portion of its prior pleading into the proposed amended pleading by reference." N.D.N.Y.L.R. 7.1(a)(4). Jones referenced three exhibits in his amended complaint that clearly refer to the exhibits attached to his original complaint. This Court considers his amended complaint as including those original exhibits.

### II. Background

On February 24, 2011, Jones was transferred from Marcy Correctional Facility ("Marcy") to Wallkill Correctional Facility ("Wallkill") for housing and vocational training. Defs.' Statement ¶ 6; Am. Compl. ¶ 26. Jones alleged that Wallkill presented architectural barriers to his alleged disabilities. Defs.' Statement ¶ 7; Am. Compl. ¶¶ 30–31. Jones was then transferred to the Shawangunk Correctional Facility ("Shawangunk"). Defs.' Statement ¶ 7; Am. Compl. ¶ 32. Upon his arrival at Shawangunk, Jones alleged that he was "quarantined" in the infirmary, which lacked adequate heating and clean drinking water from February 24, 2011 through April 2011. Defs.' Statement ¶ 8; Am. Compl. ¶¶ 34–35.

As of December 12, 2012, DOCCS's records show that Jones had filed five grievances, two of which were filed at Marcy in 2010. Defs.' Statement ¶ 16; Hale Aff. (Dkt. No. 53–3) ¶ 4; Dkt. No. 53–4. Jones is currently at the George Motchan Detention Center, which is a New York City facility. Defs.' Statement ¶ 5; Dkt. No. 53–5.

For purposes of § 1983, Jones alleged that defendants acted in their individual and official capacities. Defs.' Statement ¶ 9; Am. Compl. ¶ 21. For the ADA and Rehabilitation Act claims, Jones alleged that defendant Phillips discriminated against him generally and defendant McKay discriminated against him by denying him access to the Optics program for vocational training. Defs.' Statement ¶ 10; Am. Compl. ¶¶ 47, 49.

**\*5** For the conditions of confinement[5] and wrongful segregation claims, Jones listed all defendants in the point-headings but did not make specific allegations as to any defendant. Defs.' Statement ¶¶ 11–12; Am. Compl. ¶¶ 52–60. For the medical indifference claim, Jones alleged that

[5]  Jones labeled this claim as a "failure to protect." Am. Compl. ¶¶ 52–56. However, his allegations surrounding inadequate heating and the unavailability of clean drinking water are more appropriately framed as a "conditions of confinement" claim.

[all defendants] owed a duty of care to [him] and failed in that duty, and were deliberately indifferent to [his] disability and serious medical needs by failing to provide necessary reasonable accommodations for the handicapped at Wallkill [C]orrectional [F]acility, thereby depriving [him] access to the federally funded Optics program for which he was otherwise eligible.

Defs.' Statement ¶ 13; Am. Compl. ¶ 62.

For his RLUIPA claim, Jones asserted "the defendants would not allow him to attend religious services for over thirty days, nor did they provide a Muslim chaplain to see him or conduct services." Defs.' Statement ¶ 14; Am. Compl. ¶ 67. And finally, for his First Amendment retaliation claim, Jones did not make specific allegations against any particular defendant. Defs.' Statement ¶ 15; Am. Compl. ¶¶ 70–71.

Phillips has not been served in this action. Defs.' Statement ¶ 10; Dkt. No. 11 (returning summons because Wallkill did not have a superintendent named Phillips).

### III. Service of Summon and Complaint

Defendants, though modestly, argue that since Phillips has not been served with process, he should be dismissed from this action. Defs.' Mem. of Law (Dkt. No. 7) at 4. Where a defendant has not been served with process within 120 days after the complaint is filed, the Court must, on motion or

*sua sponte* after notifying the plaintiff, dismiss the complaint without prejudice as to that defendant or "order that service be made within a specified time." FED. R. CIV. P. 4(m). If, however, the plaintiff demonstrates good cause for service failures, the Court must also extend the time to serve. *Id.* Additionally, the Second Circuit has held that "district courts have discretion to grant extensions even in the absence of good cause." *Zapata v. City of New York,* 502 F.3d 192, 196 (2d Cir.2007).

In this case, more than one year had passed since Jones filed his amended complaint on October 25, 2011, naming Phillips a defendant. Am. Compl. Even though Jones had updated the Court with his new addresses (Dkt.Nos.12, 24, 25) and requested and received an extension to respond to this instant motion, Jones has failed to provide the Court with any reasons, let alone good cause, for the service failure with Phillips. Jones failed to both seek assistance with the service failure and oppose defendants' motion. Thus, Phillips should be dismissed from this action.

Accordingly, defendants' motion on this ground should be granted.

### IV. Discussion

Jones contends that his rights were violated under the First, Eighth, and Fourteenth Amendments, the ADA, Rehabilitation Act, and RLUIPA. Defendants move for summary judgment on the issues of mootness, exhaustion, Eleventh Amendment immunity, personal involvement, and Jones's failure to state an ADA claim.

### A. Mootness

**\*6** Article III, Section 2, Clause 1 of the United States Constitution limits the jurisdiction of federal courts to resolve "cases" or "controversies." U.S. CONST. art. III, § 2, cl.1. In order "[t]o sustain ... jurisdiction in the present case, it is not enough that a dispute [be] very much alive when suit was filed, or when review was obtained...." *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477 (1990). Thus, "throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.' " *Spencer v. Kemna,* 523 U.S. 1, 7 (1998) (*quoting Lewis,* 494 U.S. at 477 (1990)).

In this case, although not expressly stated, the nature of Jones's claims makes out a request for injunctive relief. *See, e.g.,* Am. Compl. ¶ 30 (enumerating Wallkill's architectural barriers for inmates with disabilities, including *inter alia* the lack of handrails in the showers, wheelchair ramps, and low level sinks), ¶¶ 34–35 (alleging Shawangunk's failure to provide adequate heating and clean water when quarantined at Shawangunk). Jones expressly seeks declaratory relief. Am. Compl. at 12. Jones was previously incarcerated at Marcy, Wallkill, and Shawangunk. Jones's transfer from these correctional facilities to George Motchan moots any claims for injunctive or declaratory relief. Therefore, there is no live controversy and the Court no longer has jurisdiction over these potential claims for relief. *See, e.g., Salahuddin v. Goord,* 467 F.3d 263, 272 (2d Cir.2006) (holding that all injunctive and declaratory claims were mooted by the plaintiff's transfer from prison facility); *Prins v. Coughlin,* 76 F.3d 504, 506 (2d Cir.1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility").

Accordingly, defendants' motion on this ground should be granted.

### B. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "Conclusory allegations or unsubstantiated speculation" may not be relied upon. *Jeffreys v. City of New York,* 426 F.3d

549, 554 (2d Cir.2005) (citations omitted). The non-movant "must offer some hard evidence showing that its version of the events is not wholly fanciful." *Id.* (citing *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir.1998)) (internal quotation marks omitted). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.* 22 F.3d 1219, 1223–24 (2d Cir.1994); *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988).

**\*7** When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," ... that a pro se litigant's submissions must be construed "liberally,"... and that such submissions must be read to raise the strongest arguments that they "suggest,".... At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants," ... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law...."

*Id.* (citations and footnote omitted); *see also Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191–92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.' " (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact. *Anderson,* 477 U.S. at 247–48.

### C. Exhaustion

Under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S .C. § 1997e(a), an inmate must exhaust all administrative remedies prior to bringing any suits challenging prison conditions, including federal civil rights cases. *Porter v. Nussle,* 534 U.S. 516, 524 (2002); *see also Woodford v. Ngo,* 548 U.S. 81, 83 (2006). This exhaustion requirement applies to all prison condition claims. *Porter,* 534

U.S. at 532. "[A]ny deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement." *Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir.1999). The exhaustion requirement also applies even if the administrative grievance process does not provide for all the relief requested by the inmate. *Nussle,* 534 U.S. at 524.

Exhaustion for an inmate in DOCCS custody is generally achieved through the Inmate Grievance Program ("IGP"). *See* N.Y. COMP.CODES R. & REGS. tit. 7, § 701.1, *et seq.* (2012).

> The IGP has a regular three-tiered process for adjudicating inmate complaints: (1) the prisoner files a grievance with the Inmate Grievance Resolution Committee ("IGRC") [;] (2) the prisoner may appeal an adverse decision by the IGRC to the superintendent of the facility[;] and (3) the prisoner then may appeal an adverse decision by the superintendent to the Central Officer Review Committee ("CORC").

**\*8** *Espinal v. Goord,* 588 F.3d 119, 125 (2d Cir.2009) (citing in footnote, the current N.Y. COMP.CODES R. & REGS. tit. 7, § 701.5 (2012)). Exhaustion must precede filing a lawsuit. *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001) ("Subsequent exhaustion after suit is filed therefore is insufficient."), *abrogated in part on other grounds by Porter,* 534 U.S. 516.

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." *Ruggiero v. Cnty. of Orange,* 467 F.3d 170, 175 (2d Cir.2006) (citing *Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004)). The failure to exhaust may be excused in limited circumstances.

> In determining whether such an exception is applicable, a district court must apply a three-part test: First, the court must determine whether administrative remedies in fact were available to the prisoner. Second, if such remedies were available, the court must determine whether the defendants' own actions inhibited the inmate's exhaustion of administrative

remedies, thereby requiring that one or more of them be equitably estopped from raising the failure to exhaust as a defense. Finally, if administrative remedies were available and the defendants are not estopped, the court must determine whether any special circumstances justify the prisoner's failure to comply with administrative procedural requirements.

*Gayle v. Benware,* 716 F.Supp.2d 293, 298 (S.D.N.Y.2010) (internal citations omitted); *see generally Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004) (articulating above test as the appropriate method for excusing failure to exhaust given the present state of all Second Circuit opinions). "Unavailability of administrative remedies ... is an objective [test]: that is, would a similarly situated individual of ordinary firmness have deemed them unavailable." *Kasiem v. Switz,* 756 F.Supp.2d 570, 576–77 (S.D.N.Y.2010) (internal quotation marks and citations omitted). Estoppel occurs when "an inmate reasonably understands that pursuing a grievance through the administrative process will be futile or impossible ... [as evidenced by] prison officials' threats, beatings, ... denials of grievance forms, or by other misconduct deterring [the inmate] from fulfilling the requisite procedure." *Id.* at 577 (internal quotation marks and citations omitted). If an inmate claims estoppel and continues to file complaints and grievances, the exception is inapplicable. *Id.* Special circumstances exist when an inmate's failure to comply can be justified. *Id.* (citations omitted). Justification is found "by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." *Giano v. Goord,* 380 F.3d 670, 678 (2d Cir.2004) (citations omitted).

In this case, a question of fact remains with respect to whether a special circumstance justifies Jones's failure to comply with exhaustion requirements. DOCCS's records show that no grievances were filed or appealed in 2011 and none of Jones's documented grievances involved inadequate heating and water, access to programming, or participation in religious activities. On the other hand, Jones submitted a grievance dated April 12, 2011 addressed to Wallkill while he was housed at Marcy, complaining of the confinement conditions and lack of accommodations at Wallkill and Shawangunk. [6] Dkt. No. 1–1 at 3. Non-party and Wallkill employee P. Henn responded that pursuant to Directive # 4040, Jones must file the grievance at Marcy, where Jones was housed, even though

the grievance was filed against Wallkill's employees. *Id.* at 9. Per these instructions, Jones submitted a grievance letter to Marcy, which was unanswered.[7] Am. Compl. ¶¶ 10, 17–18, 44. Jones explained that the silence to his complaints compelled him to file this lawsuit. *Id.* ¶ 20. Exhaustion is an affirmative defense that defendants bear the burden of raising and proving. *Jones v. Bock,* 549 U.S. 199, 211–17 (2007). Defendants' reliance on DOCCS's records to contest Jones's allegations is insufficient to show an absence of a factual dispute because an unanswered grievance, presumably, would not be documented in DOCCS's records. Thus, based on the evidence before the Court, there remains a question of fact as to whether Jones should be excused from the exhaustion requirement.[8]

[6] Jones also alleged that he filed two more grievances. Jones submitted a letter dated March 13, 2011 requesting Wallkill to send his legal papers to him at Shawangunk. Dkt. No. 1–1 at 1. Jones confirmed that he received his legal work and referenced an attached exhibit containing a March 13, 2011 grievance. *Id.* However, the exhibit is a grievance dated April 12, 2011, not March 13. *Id.* at 2. The second grievance was filed on March 28, 2011, but Shawangunk did not respond, Am. Compl. ¶ 16, nor did Jones present it to the Court.

[7] Jones alleged that he wrote a letter to non-party Bellnier, Marcy's superintendent, which was left unanswered. Am. Compl. ¶ 19. However, this letter was not submitted to the Court.

[8] For the first part of the test, Jones does not contend that the grievance procedure was unavailable to him. As for the second part, Jones's unanswered grievance addressed to Marcy did not concern Marcy's employees, who are also not parties to this action. Therefore, those two steps do not present an issue of fact for the exhaustion analysis.

**\*9** Accordingly, defendants' motion on this ground should be denied.

### D. Eleventh Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen

against his [or her] own State ." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98 (1984) (citing *Hans v. Louisiana,* 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Halderman,* 465 U.S. at 100. Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. *See Quern v. Jordan,* 440 U.S. 332, 340–41 (1979).

A suit against a state official in his or her official capacity is a suit against the entity that employs the official. *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) (*citing Edelman v. Jordan,* 415 U.S. 651, 663 (1974)). "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though it was asserted against the individual officer. *Kentucky v. Graham,* 473 U.S. 159, 166 (1985). Here, Jones seeks monetary damages against defendants in their official capacities for acts occurring within the scope of their duties with DOCCS. Thus, the Eleventh Amendment bar applies and serves to prohibit Jones's claims for monetary damages against defendants in their official capacities.

Accordingly, defendants' motion on this ground should be granted.

### E. Personal Involvement

Defendants contend that, Jones failed to establish their personal involvement in the alleged constitutional violations. Defs.' Mem. of Law at 12–13. " '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. *Id.; Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). However, supervisory personnel may be considered "personally involved" if:

(1) [T]he defendant participated directly in the alleged constitutional violation;

(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the

wrong; the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

**\*10** (3) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citing

*Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)).[9]

[9]     Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision affected the five *Colon* factors which were traditionally used to determine personal involvement. *Pearce v. Estate of Longo,* 766 F.Supp.2d 367, 376 (N.D.N.Y.2011), *rev'd* in part on *other grounds* sub *nom., Pearce v. Labella,* 473 F. App'x 16 (2d Cir.2012) (recognizing that several district courts in the Second Circuit have debated *Iqbal's* impact on the five *Colon* factors); *Kleehammer v. Monroe Cnty.,* 743 F.Supp.2d 175 (W.D.N.Y.2010) (holding that "[o]nly the first and part of the third *Colon* categories pass *Iqbal's* muster...."); *D'Olimpio v. Crisafi,* 718 F.Supp.2d 340, 347 (S.D.N.Y.2010) (disagreeing that Iqbal eliminated *Colon's* personal involvement standard).

Jones essentially alleged that all defendants were directly involved in the alleged constitutional violations that occurred at Wallkill and Shawangunk. However, only two defendants allegedly worked at either facility—Superintendent Phillips at Wallkill, who was not served with process in this action, and Superintendent Smith at Shawangunk. Further, Jones's conclusory allegations with respect to defendants' direct involvement are unsubstantiated by any facts or evidence. *Jeffreys,* 426 F.3d at 554. Moreover, liberally construing Jones's amended complaint, aside for the unnamed defendants, the gravamen of Jones's complaints against the individual defendants is that they were in a position of power, thus always involved with anything occurring in conjunction with Jones's incarceration. Nevertheless, attempts to establish personal involvement based upon the supervisory role these defendants occupied is inappropriate. *Wright,* 21 F.3d at 501 (holding that a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement).

To the extent that Jones seeks to establish Phillips's knowledge of his complaints through Henn's response to his grievance, such an attempt must also fail. Merely writing letters and grievances to a defendant is insufficient to establish notice and personal involvement. *Smart v. Goord,* 441 F.Supp.2d 631, 643 (S.D.N.Y.2006) ("Commissioner ... cannot be held liable on the sole basis that he did not act in response to letters of protest sent by [plaintiff]...."). Similarly, receipt of a letter or grievance, without personally investigating or acting on the letter or grievance, is insufficient to establish personal involvement. *See, e.g., Rivera v. Fischer,* 655 F.Supp.2d 235, 238 (W.D.N.Y.2009) (citing cases); *Boddie v. Morgenthau,* 342 F.Supp.2d 193, 203 (S.D.N.Y.2004) ("While mere receipt of a letter from a prisoner is insufficient to establish individual liability ... [p]ersonal involvement will be found ... where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint."). There is neither record evidence indicating that Jones wrote a letter or grievance to Phillips nor that Phillips investigated or acted on any of Jones's complaints. Furthermore, there is also nothing in the record indicating that any of the defendants created a policy or custom under which unconstitutional practices occurred, were grossly negligent in their supervision of subordinates, or exhibited deliberate indifference to Jones's rights.

**\*11** Accordingly, defendants' motion on this ground should be granted.

### F. ADA and Rehabilitation Act Claims

In order to state an ADA claim, 42 U.S.C. § 12132 requires an inmate to demonstrate that:

> (1) he or she is a 'qualified individual with a disability'; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) the entity [that] provides the service, program, or activity is a public entity.

*Id.; see also Pennsylvania Dep't of Corr.,* 524 U.S. at 209.

As to the first element, a person is an individual with a qualified disability if "(A) a physical or mental impairment ... substantially limits one or more of the major life activities of

such individual, (B) [there is] a record of such an impairment, or (C) [the individual is] being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C).

> To determine if an individual meets any of the above criteria, courts apply a three part test ... First, a plaintiff must show that [he or] she suffers from a physical or mental impairment. Second, the plaintiff must establish that the activity [he or] she alleges to be impaired constitutes a "major life activity." Third, the plaintiff must show that [his or] her impairment "substantially limits" the major life activity previously identified.

Smith v. Masterson, 538 F.Supp.2d 653, 657 (S.D.N.Y.2008) (internal citations omitted). Major life activities are defined as "walking, standing, sitting...." 29 C.F.R. § 1630.2(i)(1).

In this case, Jones is barred from bringing an ADA claim. First, under the ADA, Jones is barred from suing the individual defendants in their individual and official capacities for monetary damages. Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir.2001). Second, Jones may seek monetary relief against the state if the alleged violation "was motivated by discriminatory animus or ill will based on the plaintiff's disability." Id. at 111. However, Jones does not allege any discriminatory animus on the part of the defendants. Thus, Jones is barred from seeking monetary relief from the state defendant. Third, as discussed above in subsection IV(A), injunctive and declaratory relief claims are mooted by Jones's transfer out of the allegedly offending prison facilities. Because Jones cannot obtain any sort of judicial relief under an ADA claim, Jones cannot proceed with the claim. Therefore, Jones's ADA claim should be dismissed.

To the extent that Jones has asserted Rehabilitation Act claims, they too, should be dismissed. The Rehabilitation Act protects any "qualified individual with a disability ... [from] be[ing] excluded from the participation in, ... [or] denied the benefits of," any federally funded program "solely by reason of his or her disability...." 29 U.S.C. § 794(a); see also Clarkson v. Coughlin, 898 F.Supp. 1019, 1037–38 (S.D.N.Y.1995) ("The requirements for stating a claim under the ADA are virtually identical to those under § 504 of the Rehabilitation Act."). Since Jones is barred from obtaining judicial relief under the ADA and the requirements for stating

a claim are the same for the ADA and the Rehabilitation Act, Jones is also barred from obtaining judicial relief under the Rehabilitation Act claim.

**\*12** Accordingly, defendants' motion on these grounds should be granted.

### G. RLUIPA Claims

Defendants do not discuss Jones's RLUIPA claim in their motion for summary judgment. However, the Court *sua sponte* addresses the claim pursuant to 28 U.S.C. § 1915(e), which directs that when a plaintiff seeks to proceed *in forma pauperis,* [10] "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

[10] By Decision and Order dated September 23, 2011, Jones was granted in *forma pauperis* status to proceed in this action. Dkt. No. 4.

The RLUIPA provides that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a); *see also Salahuddin v. Goord,* 467 F.3d 263, 273–74 (2d Cir.2006); *Pugh v. Goord,* 571 F.Supp.2d 477, 503 (S.D.N.Y.2008). In a RLUIPA claim,

> [i]f a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of section 2000cc of this title, the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law

(including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion.

42 U.S.C. § 2000cc–2(b); *Pugh,* 571 F.Supp.2d at 504. "The prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs. The defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." *Salahuddin,* 467 F.3d at 274–75.

Here, Jones's RLUIPA claim must fail as a matter of law. First, Jones does not proffer any evidence to support his allegations that he was denied opportunities to attend religious services nor to visit a Muslim chaplain. 42 U.S.C. § 2000cc–2(b); *Jeffreys,* 426 F.3d at 554. The exhibits attached to his original complaint do not refer to these allegations and Jones has provided no other evidence to the Court. Thus, Jones has failed to establish a prima facie case of RLUIPA. Second, the Eleventh Amendment also serves to protect state defendants in both their official and individual capacities from RLUIPA claims for monetary damages. *See Pilgrim v.. Artus,* No. 07–CV–1001 (GLS/RFT), 2010 WL 3724883, at *15–16 (N.D.N.Y. Mar. 18, 2010) (discussing Eleventh Amendment immunity and RLUIPA decisions in this Circuit); [11] *see also Pugh v. Goord,* 571 F.Supp.2d 477, 509 (S.D.N.Y.2008). As such, defendants are immune from monetary relief. 28 U.S.C. § 1915(e)(2) (B). Third, as discussed above in subsection IV(A), claims of injunctive and declaratory relief are now moot. For these reasons, Jones cannot proceed with his RLUIPA claim.

[11] All unpublished opinions cited to by the Court in this Report–Recommendation are, unless otherwise noted, attached to this Recommendation.

**\*13** Accordingly, Jones's RLUIPA claim should be dismissed.

### V. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 53) be **GRANTED** as to all claims against all defendants and Jones's amended complaint be **DISMISSED** (Dkt. No. 7) with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.***Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

### All Citations

Slip Copy, 2013 WL 4039377

---

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 925933
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Cesar MATEO, Plaintiff,

v.

C.O. C. BRISTOW, et al., Defendants.

No. 12–cv–5052 (RJS)(GWG).
|
Signed March 4, 2015.

*OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION*

RICHARD J. SULLIVAN, District Judge.

**\*1** Plaintiff Cesar Mateo ("Plaintiff"), proceeding *pro se,* brings this action pursuant to 42 U.S.C. § 1983 against various corrections officers at the Sing Sing Correctional Facility ("Sing Sing"), in Ossining, New York, asserting claims for First Amendment retaliation, deprivation of property, wrongful confinement, and harassment. (*See* Doc. No. 1 ("Compl.")) Now before the Court is the Report and Recommendation of the Honorable Gabriel W. Gorenstein, Magistrate Judge, recommending that the Court grant Defendants' motion for summary judgment as to the sole remaining claim—the First Amendment retaliation claim—for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). (Doc. No. 54 ("Report" or "Rep.").) For the reasons set forth below, the Court adopts the Report in its entirety.

A. Background

The Court assumes the parties' familiarity with the facts of this case, which are set forth thoroughly in the Report. (Rep. at 3–9.) Plaintiff filed this action on June 26, 2012, alleging constitutional violations stemming from incidents that occurred during his incarceration at Sing Sing. (*See* Compl.) Plaintiff alleges that on June 36, 2012, when he was getting ready for his wedding—scheduled to take place later that day at the facility—corrections officers Dean and Maldonado, in retaliation for Plaintiff having previously filed grievances and lawsuits against other corrections officers, searched his cell, deprived him of his property, and confined him to his cell in "keeplock."[1] (Rep. at 3–4.) Plaintiff also claims that the day after his wedding, which occurred as planned, he was served with an incident report written by corrections officer Bristow and co-signed by corrections officer Ramos, alleging that Plaintiff had played his radio without headphones and refused to turn the radio over upon request. (*Id.* at 6–7.) Plaintiff asserts that the incident itself never took place, and that the report, which was later dismissed, was filed by Defendants to retaliate against him. (*Id.* at 7.)

[1] "Keeplock is a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Holland v. Goord,* 758 F.3d 215, 218 n. 2 (2d Cir.2014) (citation and internal quotation marks omitted).

On July 16, 2013, the Court issued an Order dismissing Plaintiff's claims for deprivation of property, wrongful confinement, and harassment pursuant to Federal Rule of Civil Procedure 12(b)(6), but holding that Plaintiff had stated a claim for retaliation. (Doc. No. 22.) The Court also noted that Plaintiff had not pursued any administrative avenue of relief prior to filing the lawsuit, but concluded that nonexhaustion was not clear from the face of the Complaint because the Complaint alleged "facts that, if true, could establish that administrative remedies were functionally unavailable to him." (*Id.* at 4.) On August 2, 2013, the Court referred this action to Judge Gorenstein for general pretrial supervision and dispositive motions requiring a report and recommendation. (Doc. No. 24.) On March 28, 2014, Defendants filed the instant motion (Doc. No. 40), arguing that summary judgment should be granted in their favor because (1) Plaintiff has not demonstrated that he is excused from the exhaustion requirement; (2) there is no genuine dispute of material fact as to the retaliation claim; and (3) Dean and Maldonado are entitled to qualified immunity. (Rep. at 12; Doc. No. 41.) Defendants' motion was fully briefed following Defendants' reply on May 23, 2014 (Doc. No. 51.) On September 16, 2014, Judge Gorenstein issued the Report, which recommends that the Court grant Defendants' motion for summary judgment based on Plaintiff's failure to exhaust. The Report thoroughly examines the record and the law of exhaustion under the PLRA and concludes that Plaintiff's admitted failure to exhaust is not excused by any of the three exceptions recognized in this Circuit. *See Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004); (Rep. at 15–21). On October 2, 2014, Plaintiff timely filed objections to

the Report, asserting that, in fact, all three of the *Hemphill* exceptions apply in this case, and that he is entitled to a trial on his claims. (Doc. No. 56 ("Objections" or "Objs.").) On October 14, 2014, Defendants filed their response to Plaintiff's Objections. (Doc. No. 57.)


B. Legal Standard

**\*2** Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, and to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst,* 101 F.3d 845, 854 (2d Cir.1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.,* 132 F.3d 145, 149 (2d Cir.1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart,* 481 F.3d 141, 148 (2d Cir.2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson,* 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party " 'show[s]'—that is, point[s] out ...—that there is an absence of evidence [in

the record] to support the nonmoving party's [position]," *see Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

The standard for reviewing a magistrate judge's report and recommendation is well settled. When no party objects, the Court may adopt the report if there is no clear error on the face of the record. *See Adee Motor Cars, LLC v. Amato,* 388 F.Supp.2d 250, 253 (S.D.N.Y.2005). A magistrate judge's decision is "clearly erroneous" only if the district court is "left with the definite and firm conviction that a mistake has been committed." *Easley v.. Cromartie,* 532 U.S. 234, 242 (2001) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948)). When a party objects, the objections "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *Harden v. LaClaire,* No. 07–cv–4592 (LTS)(JCF), 2008 WL 4735231, at \*1 (S .D.N.Y. Oct. 27, 2008). "[I]f the party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Dawson v. Phillips,* No. 03–CV–8632 (RJS)(THK), 2008 WL 818539, at \*1 (S.D.N.Y. Mar. 25, 2008) (internal quotation marks omitted); *see also Forsberg v. Always Consulting, Inc.,* No. 06–cv–13488 (CS), 2008 WL 5449003, at \*4 (S.D.N.Y. Dec. 31, 2008) ("[E]ven a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument."). However, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed.R.Civ.P. 72(b)(3); 28 U.S.C. § 636(b)(1); *see also Grassia v. Scully,* 892 F.2d 16, 19 (2d Cir.1989) (explaining that § 636(b)(1) "affords the district court broad latitude" in reviewing the magistrate judge's recommendation).


C. Discussion

**\*3** For the most part, Plaintiff's Objections are generalized assertions not aimed at specific findings in the Report, and simply reiterate the arguments previously made to Judge Gorenstein. These purported objections are thus improper, merely seeking a "second bite at the apple." *Thomas v. Astrue,* 674 F.Supp.2d 507, 511 (S.D.N.Y.2009). The sole possible exception—construed liberally—is Plaintiff's contention that the Report "underestimate[d] the special circumstances of the day of the events," insofar as a person of "ordinary firmness" would be more shaken by being badly mistreated on his or her wedding day than on an ordinary day, and would find the

ability to file grievances subsequently foreclosed. (Objs.¶¶ 9–11.) Accordingly, the Court reviews the Report only for clear error, with the exception of Judge Gorenstein's conclusion that no reasonable factfinder could determine that a person of "ordinary firmness" in Plaintiff's position would have found the Sing Sing grievance procedures unavailable. As to this conclusion, the Court has little difficulty concluding on *de novo* review that Judge Gorenstein's recommendation was correct, for substantially the reasons set forth in the Report. (*See* Rep. at 15–19.)

In order for the exhaustion requirement to be relieved on grounds of unavailability, Plaintiff's "fear that disciplinary actions will be taken against him if he proceeds with a grievance process must, at a minimum, be reasonable." *Contino v. City of New York,* No. 11–cv–8537 (DLC), 2013 WL 4015816, at *6 (S.D.N.Y. Aug. 7, 2013). Here, Plaintiff has offered nothing more than "conclusory assertion[s] that he feared retaliation if he completed the grievance process," which is insufficient as a matter of law. *Id* . Specifically, Plaintiff does not allege that he was, at any point, threatened or warned about future grievances. Rather, he simply argues that Defendants Dean and Maldonado told him they would prevent him from attending his wedding—a threat that, within hours, Plaintiff learned to be empty—in retaliation for *past* grievances, and that Dean said he would "feed this guy some crap." However, Plaintiffs "generalized fear" of retribution is "insufficient to render the grievance process unavailable." *Carlson v. Parry,* No. 06–cv–6621, WL 5354517, at *9 (W.D.N.Y. Sept. 24, 2013); *cf. Mateo v. O'Connor,* No. 10–cv–8426 (LAP), 2012 WL 1075830, at *8 (S.D.N.Y. Mar. 29, 2012) ("If every plaintiff bringing a retaliation claim could have the exhaustion requirement excused by alleging a fear of further retaliation, it would create a general exception to exhaustion for retaliation claims." (quoting *Harrison v. Stallone,* No. 9:06–cv–902 (LEK) (GJD), 2007 WL 2789473, at *6 (N.D.N.Y. Sept. 24, 2007))).

As to the conduct of Defendants Ramos and Bristow, Plaintiff asserts that the second incident alleged in his Complaint —the false report filed by those corrections officers—was also retaliation for his previous grievances, and has made him unable to file further grievances. But once again, this allegation is nothing more than a "conclusory assertion that he feared retaliation if he completed the grievance process," and is thus insufficient. *Contino,* 2013 WL 4015816, at *6. Indeed, nowhere does Plaintiff allege that Ramos or Bristow ever even *mentioned* grievances or said anything suggestive of retaliation. Plaintiff even acknowledges that he had *never*

*interacted* with either Ramos or Bristow prior to the allegedly false report, had never filed a grievance against either, and had never seen Ramos or Bristow with Dean or Maldonado. (*See* Deposition of Cesar Mateo, dated Jan. 16, 2014 (attached as Ex. A to Declaration of Kruti D. Dharia, filed Mar. 28, (Doc. No. 43)) ("Mateo Dep,"), at 43–44, 18–19, 31.) Clearly, such "speculation and conjecture" does not create a triable issue of fact as to whether a reasonable juror could find that a person of ordinary firmness in Plaintiff's position could find the grievance procedures unavailable to him. *Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir.2001).

**\*4** Finally, Plaintiff's contention that the grievance procedures were unavailable to him due to his reasonable fear of retaliation is further undermined by his conduct after the incidents in question. Plaintiff testified during his deposition that after he wrote letters complaining to prison officials about Maldonado and Dean, he had a face-to-face meeting with an official at which both Maldonado and Dean were present, and that he "spoke about the incident in [their] presence"—but that he nonetheless *still* did not file a grievance afterwards. (Mateo Dep. at 64:11–65:11.) Plaintiff's assertion that he was chilled from filing a grievance against the corrections officers even though he was willing to complain through official channels while in the presence of the very officers about whom he was complaining strains credulity. Accordingly, the Court has little difficulty concluding that no reasonable factfinder could find that the grievance procedure was unavailable to Defendant in light of this conduct. *See Snyder v. Whittier,* 428 F. App'x 89, 91 (2d Cir.2011) (affirming grant of summary judgment) ("[W]hile Snyder's subjective fear is ... not dispositive, it is nonetheless relevant that two hours after the assault, Snyder complained to Corrections Officer Funnye, who Snyder testified was friendly with [the alleged assaulting officer]."). In fact, even after *filing this very lawsuit,* Plaintiff never attempted to file a grievance, and was apparently unable to "bring [himself] to do it." (Mateo Dep. at 53:3–11.) Surely the grievance process cannot be said to be unavailable because of a reasonable threat of retaliation where Plaintiff filed a lawsuit regarding the very same conduct. *See Mateo v. O'Connor,* 2012 WL 1075830, at *8 ("Mateo's argument is again undermined by his continued filing of grievances and lawsuits during and after the period in question."). Thus, upon a *de novo* review of Plaintiff's claims concerning the unavailability of administrative procedures, the Court concludes that no reasonable juror could find that a person of ordinary firmness in Plaintiff's position would find the grievance procedure unavailable.

Finally, the Court has reviewed the rest of Judge Gorenstein's recommendation and the record, and concludes that the Report is not otherwise clearly erroneous. To the contrary, the Court finds the Report to be thorough and well-reasoned, and would adopt it even upon a *de novo* review. Accordingly, the Court adopts the remainder of the Report in its entirety.

### D. Conclusion

For the foregoing reasons, the Court adopts the Report in its entirety, and HEREBY ORDERS THAT Defendants' motion for summary judgment is GRANTED. Additionally, for the reasons set forth above, the Court certifies pursuant to 28

U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. Accordingly, IT IS FURTHER ORDERED THAT *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962). The Clerk of the Court is respectfully directed to terminate the motion pending at docket entry number 40 and close this case.

**\*5** SO ORDERED.

**All Citations**

Slip Copy, 2015 WL 925933

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 1975437
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Danny RIVERA, Plaintiff,

v.

C.O. P. DIANARDO, Defendant.

No. 10–CV–1500 (NAM/CFH).
|
April 16, 2013.

**Attorneys and Law Firms**

Danny Rivera, Auburn, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State of New York, DAvid L. Cochran, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendant.

**REPORT–RECOMMENDATION AND ORDER** [1]

[1]     This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

CHRISTIAN F. HUMMEL, United States Magistrate Judge.

**\*1** Plaintiff pro se Danny Rivera ("Rivera"), an inmate currently in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action against Dianardo, a DOCCS employee, alleging violations of the Civil Rights Act, 42 U.S.C. § 1983. Compl. (Dkt. No. 1). Rivera contends that Dianardo deprived him of his constitutional rights under the Fourteenth Amendment. *Id.* Presently pending is defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56. Dkt. No. 27. Rivera does not oppose this motion. For the reasons which follow, it is recommended that Dianardo's motion be granted.

**I. Failure to Respond**

Rivera did not oppose defendant's motion although the Court notified him of his response deadline then *sua sponte* granted him an extension to file a response. Dkt. Nos. 28, 30. "Summary judgment should not be entered by default against a pro se plaintiff who has not been given any notice that failure to respond will be deemed a default." *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). Dianardo provided notice in his motion papers as required by the Second Circuit and as normally done by the office of defendants' counsel. *Id.;* Dkt. No. 27–1. Further, the Court provided such notice by mail. Dkt. No. 30. Despite the notices and the extension of time, Rivera failed to respond.

"The fact that there has been no response to a summary judgment motion does not ... mean that the motion is to be granted automatically." *Champion,* 76 F.3d at 486. Even in the absence of a response, defendants are entitled to judgment only if the material facts demonstrate their entitlement to judgment as a matter of law. *Id.;* FED. R. CIV. P. 56(c). "A verified complaint is to be treated as an affidavit ... and therefore will be considered in determining whether material issues of fact exist...." *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) (citations omitted). The facts set forth in defendant's Rule 7.1 Statement of Material Facts (Dkt. No. 18–2) [hereinafter "Def.'s Statement"] are accepted as true as to those facts that are not disputed in Rivera's complaint. N.D.N.Y.L.R. 7.1(a)(3) ("The Court shall deem admitted any properly supported facts set forth in the Statement of Facts that the opposing party does not specifically controvert.") (emphasis omitted).

**II. Background**

At all relevant times, Rivera was an inmate at the Auburn Correctional Facility ("Auburn"). Def.'s Statement ¶¶ 2–3; Compl. at 2–3.

On November 29, 2010, Rivera filed the complaint to this action, alleging that defendant Dianardo, a correction officer, has "racist issue[s]" with the fact that Rivera is Muslim. Compl. at 4; see Def.'s Statement ¶¶ 1, 3. Rivera alleged that because of his religion, Dianardo (1) "all the time" called him by inappropriate names, (2) denied him three meals, and (3) denied him programs. Compl. at 4.; see Def.'s Statement ¶ 1. Rivera claims that he filed two grievances against Dianardo as well as written complaints to a Superintendent. Compl. at 2. As of October 16, 2012, DOCCS's Inmate Grievance Program records show that Rivera never appealed any grievances. Def.'s Statement ¶ 4; Hale Aff. (Dkt. No. 27–3) ¶¶ 3–4; Dkt. No. 27–4.

**\*2** By Decision and Order, Rivera's Eighth Amendment claim regarding denied meals was dismissed without prejudice and Fourteenth Amendment claim regarding denied programming was dismissed with prejudice. Def.'s Statement ¶ 3; Dkt. No. 5 at 7. The only remaining claim is Rivera's Fourteenth Amendment equal protection claim alleging that Dianardo discriminated against him on account of his religion by calling him names and denying him meals and programming. Dkt. No. 5 at 4.

### III. Discussion

Rivera contends that Dianardo violated his equal protection rights under the Fourteenth Amendment. Dianardo seeks dismissal of Rivera's complaint for Rivera's failure to exhaust his administrative remedies.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223–24 (2d Cir.1994); *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988).

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006). As the Second Circuit has stated,

[t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," ... that a pro se litigant's submissions must be construed "liberally,"... and that such submissions must be read to raise the strongest arguments that they "suggest,".... At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants," ... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law...."

**\*3** *Id.* (citations and footnote omitted); *see also Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191–92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se,* ... a court is obliged to construe his pleadings liberally.' " (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact. *Anderson,* 477 U.S. at 247–48.

### B. Failure to Exhaust

Under 42 U.S.C. § 1997e(a), an inmate must exhaust all administrative remedies prior to bringing any suits challenging prison conditions, including federal civil rights cases. *Porter v.. Nussle,* 534 U.S. 516, 524 (2002); *see also Woodford v. Ngo,* 548 U.S. 81, 83 (2006). This exhaustion requirement applies to all prison condition claims. *Porter,* 534 U.S. at 532. "[A]ny deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement." *Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir.1999). The exhaustion requirement also applies even if the administrative grievance process does not provide for all the relief requested by the inmate. *Porter,* 534 U.S. at 524.

Exhaustion for an inmate in DOCCS custody is generally achieved through the Inmate Grievance Program ("IGP"). *See* N.Y. COMP. CODES R. & REGS. tit. 7, § 701.1, et seq. (2012). Allegations of staff harassment are subject to an expedited procedure whereupon the complaint is first reviewed by the Superintendent and only if it is not a bona fide claim will it be returned to the IGP for normal processing. N.Y. COMP. CODES. R & REGS. tit. 7, § 701.8 (2012). Included within the IGP's exhaustion requirement is the

prerequisite that the inmate file an appeal with Central Office Review Committee ("CORC") and receive a response from CORC prior to filing a federal lawsuit. *Torres v. Carry,* 672 F.Supp.2d 338, 344 (S.D.N.Y.2009); *see also* N.Y. COMP. CODES R. & REGS. tit. 7 § 701.5(d)(2)(ii) (2012) ("The CORC shall review each appeal, render a decision on the grievance, and transmit its decision ... within 30 calendar days"). Disagreement with the superintendent's decision in the expedited review also requires an appeal to CORC. N.Y. COMP. CODES. R & REGS. tit. 7, § 701.8(g)-(h); *see also Espinal v. Goord,* 588 F.3d 119, 125 (2d Cir.2009) (explaining IGP and the expedited procedure for harassment claims and its appeal mechanism through CORC). Exhaustion must precede filing a lawsuit. *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001) ("Subsequent exhaustion after suit is filed therefore is insufficient."), *abrogated* in part on *other grounds* by *Porter,* 534 U.S. 516.

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." *Ruggiero v. Cnty. of Orange,* 467 F.3d 170, 175 (2d Cir.2006) (citing *Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004)). The failure to exhaust may be excused in limited circumstances.

    **\*4** In determining whether such an exception is applicable, a district court must apply a three-part test: First, the court must determine whether administrative remedies in fact were available to the prisoner. Second, if such remedies were available, the court must determine whether the defendants' own actions inhibited the inmate's exhaustion of administrative remedies, thereby requiring that one or more of them be equitably estopped from raising the failure to exhaust as a defense. Finally, if administrative remedies were available and the defendants are not estopped, the court must determine whether any special circumstances justify the prisoner's failure to comply with administrative procedural requirements.

*Gayle v. Benware,* 716 F.Supp.2d 293, 298 (S.D.N.Y.2010) (internal citations omitted); *see generally Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004) (articulating above test as the appropriate method for excusing failure to exhaust

given the present state of all Second Circuit opinions). "Unavailability of administrative remedies ... is an objective [test]: that is, would a similarly situated individual of ordinary firmness have deemed them unavailable." *Kasiem v. Switz,* 756 F.Supp.2d 570, 576–77 (S.D.N.Y.2010) (internal quotation marks and citations omitted). Estoppel occurs when "an inmate reasonably understands that pursuing a grievance through the administrative process will be futile or impossible ... [as evidenced by] prison officials' threats, beatings, ... denials of grievance forms, or by other misconduct deterring [the inmate] from fulfilling the requisite procedure." *Id.* at 577 (internal quotation marks and citations omitted). If an inmate claims estoppel and continues to file complaints and grievances, the exception is inapplicable. *Id.* Special circumstances exist when an inmate's failure to comply can be justified. *Id.* (citations omitted). Justification is found "by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." *Giano v. Goord,* 380 F.3d 670, 678 (2d Cir.2004) (citations omitted).

In this case, DOCCS records do not show any grievances which were appealed regarding Rivera's meals and programming or complaints surrounding Dianardo's alleged discriminatory conduct. In Rivera's complaint, he contends that he filed grievances against Dianardo and a written complaint to the Superintendent. However, Rivera fails to respond to Dianardo's affirmative defense of exhaustion or originally include a copy of the complaint, grievance, or subsequent appeals. Rivera also fails to proffer that he ever attempted to engage in administrative appeals. Thus, Rivera's conclusory and unsupported claims are insufficient to defeat the computer print outs generated by the grievance program. Further, Rivera fails to contend that he was unaware of the grievance procedures, that they were unavailable to him, or that special circumstances existed to excuse his failure to exhaust. Rivera has therefore failed to exhaust his administrative remedies.

    **\*5** "[W]here a prisoner has failed to satisfy the exhaustion requirement ... [t]he Second Circuit has held ... that dismissal with prejudice, when remedies are no longer available, is required in the absence of any justification for not pursuing such remedies." *Bridgeforth v. Barlett,* 686 F.Supp.2d 238, 239–40 (W.D.N.Y.2010) (internal quotation marks omitted) (citing *Giano v. Goord,* 380 F.3d 670, 675 (2d Cir.2004) (quoting *Berry v. Kerik,* 366 F.3d 85, 87–88 (2d Cir.2004)). Rivera had twenty-one calendar days from the alleged wrongful occurrence to file a grievance, N.Y.

COMP. CODES. R & REGS. tit. 7, §§ 701.5(a), 701.8(a) (2012), and seven calendar days from receiving either the Inmate Grievance Resolution Committee's ("IGRC") or the superintendent's response to appeal that decision, *id.* §§ 701.5(c), 701.8(h). The lapse in time between Rivera filing the complaint on November 29, 2010 and the IGP records evidencing the lack of any appealed grievances as of October 16, 2012, shows that administrative remedies are no longer available to Rivera. Moreover, as previously discussed, Rivera has not alleged any facts excusing his failure to exhaust. *Rodriguez v. Westchester Cnty. Jail Corr. Dep't,* 372 F.3d 485, 487 (2d Cir.2004) ("a prisoner's complaint should be dismissed with prejudice where administrative remedies were available for a reasonable length of time and were not exhausted 'in the absence of any justification.' " (citing *Berry,* 366 F.3d at 88)). As such, Rivera's suit should be dismissed with prejudice.

Accordingly, Dianardo's motion on this ground should be granted.

### IV. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that Dianardo's motion for summary judgment (Dkt. No. 27) be **GRANTED** and judgment be entered in favor of Dianardo and the complaint (Dkt. No. 1) be **DISMISSED** with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 1975437

---

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 1975435
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Danny RIVERA, Plaintiff,

v.

C.O. P. DIANARDO, Defendant.

No. 9:10–CV–1500 (NAM/CFH).
|
May 13, 2013.

**Attorneys and Law Firms**

Danny Rivera, Auburn, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the Assistant Attorney General, State of New York, The capitol, David L. Cochran, Esq., of Counsel, Albany, NY, for Defendant.

*ORDER*

NORMAN A. MORDUE, District Judge.

**\*1** The above matter comes to me following a Report–Recommendation by Magistrate Judge Christian F. Hummel duly filed on the 16th day of April 2013. Following fourteen (14) days from the service thereof, the Clerk has sent me the file, including any and all objections filed by the parties herein.

After careful review of all of the papers herein, including the Magistrate Judge's ReportRecommendation, and no objections submitted thereto, it is

**ORDERED** that:

1. The Report–Recommendation is hereby adopted in its entirety.

2. The defendants' motion for summary judgment (Dkt. No. 27) is granted, and this entire action is dismissed with prejudice.

3. The Clerk of the Court shall serve a copy of this Order upon all parties and the Magistrate Judge assigned to this case.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 1975435

---

 © 2016 Thomson Reuters. No claim to original U.S. Government Works.

 © 2016 Thomson Reuters. No claim to original U.S. Government Works.